The Honorable Edward F. Shea

Thomas D. Adams
Celeste Mountain Monroe
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98101-3028
(206) 223-1313
Attorneys for Defendant North Central Regional Library District

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## AT SPOKANE

| | |
|---|---|
| SARAH BRADBURN, PEARL CHERRINGTON, CHARLES HEINLEN, and THE SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> NORTH CENTRAL REGIONAL LIBRARY DISTRICT, <br><br> Defendant. | NO. CV-06-327-EFS <br><br> DEFENDANT NORTH CENTRAL LIBRARY DISTRICT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

The mission of the North Central Regional Library District ("NCRL") is

to promote reading and lifelong learning." (NCRL Statement, ¶24). Pursuant

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 1
CV-06-327-EFS
#658036 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Dockets.Justia.com

to its mission and Internet Use Policy, filters internet access on computers made available for public use. NCRL does not disable the filter upon the request of an adult patron. Plaintiffs contend that NCRL's Policy infringes upon rights guaranteed by the First Amendment of the United States Constitution and Article I, § 5 of the Washington State Constitution. In making these claims, Plaintiffs ignore NCRL's legal duties and discretion in fulfilling its essential mission and complying with the objectives for which it was formed. For the reasons that follow, NCRL seeks summary judgment on all claims alleged by Plaintiffs. In the alternative, NCRL requests an order certifying to the Washington Supreme Court the issue of the validity of NCRL's Policy under Article I, § 5 of the Washington State Constitution.[1]

## II. ISSUES PRESENTED

Whether this Court should grant summary judgment dismissing Plaintiffs' claims that NCRL's practice of offering only filtered internet access violates Article 1, § 5 of the Washington State Constitution and the First Amendment to the United States Constitution;    or

Whether this Court should certify to the Washington Supreme Court the question of the validity of NCRL's internet filtering policy under Article 1, § 5 of the Washington State Constitution.

---

[1] See NCRL's *Motion for Certification of Question of State Constitutional Law.*

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 2
CV-06-327-EFS
#658036 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

## II. EVIDENCE RELIED UPON

NCRL's *Statement of Facts in Support of Defendant NCRL' Motion for Summary Judgment* ("NCRL Statement"), with attached and accompanying Declarations, and all pleadings and records on file.

## III. LEGAL ARGUMENT

### A. Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). Summary judgment is proper if the evidence, viewed most favorable to the non-moving parties, permits only one conclusion. After a moving party has met its initial burden, the non-moving party must respond with admissible evidence sufficient to establish a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-255 (1986); *Stevens County v. United States Dept. of Interior*, 507 S. Supp.2d 1127, 1130-1131 (E. D. Wash. 2007).

### B. Plaintiffs' Claims Should Be Decided Under Washington Law.

Federal courts do not reach claims alleging infringement of rights arising from the United States Constitution if the claims can be resolved on other

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 3
CV-06-327-EFS
#658036 v1 / 42703-001

grounds, including state constitutional grounds. In *Barnes-Wallace v. City of San Diego*, 471 F.3d 1038, 1046-1047 (9th Cir. 2006) the Court recognized that it is "bound to resolve state constitutional questions before reaching federal challenges." Because the state constitutional issues in *Barnes-Ellis* had not been clearly determined, the Court certified the controlling issues to the California Supreme Court. *Id.*

This Court should follow the approach of *Barnes-Wallace* and certify the state constitutional issues to the Washington Supreme Court under RCW 2.60.020. Plaintiffs have alleged identical challenges to NCRL's Policy under the Article I, § 5 of the Washington State Constitution and the First Amendment. Washington courts have not addressed issues associated with internet filtering in a public library and free speech rights guaranteed by the Washington State Constitution. It is clear, however, that Article I, § 5 and the First Amendment are co-extensive. See *Fine Arts Guild v. the City of Seattle*, 74 Wn.2d 503, 512 (1968)(Free speech rights under the state and federal constitutions are "inferentially interchangeable.") In a few contexts, Article I, § 5 has been held to extend even beyond the First Amendment in its protection of individual rights. See generally *Ino Ino Ino v. City of Bellevue*, 132 Wn.2d 103, 114-122 (1997) modified 133 Wn.2d 229 (1978). NCRL's Policy is subject to an

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 4
CV-06-327-EFS
#658036 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

analysis under Article I, § 5 that is at least as protective of free speech rights as any potentially applicable First Amendment analysis.[2]  Accordingly, this Court should decline to address Plaintiffs' First Amendment challenge and either address Plaintiffs' claims solely under Washington constitutional law or certify the issue to the Washington Supreme Court.

**C.    Plaintiffs' Claims under 42 U.S.C. § 1983 must be dismissed.**

Plaintiffs' claims under 42 U.S.C. § 1983 arise from their view that NCRL's Policy and filtering practice infringe upon their First Amendment rights.  Since this Court must avoid adjudication of the First Amendment claims claims in light of the state law challenge, there will be no determination of federal law to support Plaintiffs' claims under 42 U.S.C. §1983.  Only violations of federal law or the United States Constitution are actionable under 42 U.S.C. § 1983.  See *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990); *Furfaro v. City of Seattle*, 144 Wn.2d 363, 375-76 (2001).   Consequently, Plaintiff's claims alleging violations of 42 U.S.C. § 1983 must be dismissed.

---

[2] Whether a state constitutional provision is broader than a corresponding federal constitutional provision requires the Court to evaluate the *Gunwall* factors and determine whether the provision extends greater protections to Washington citizens. See *Voters Educ. Comm. v. Public Disclosure Comm.*, 161 Wn.2d 470, 494 n.16 (2007).

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 5
CV-06-327-EFS
#658036 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

**D. NCRL's Internet Use Policy does not violate Article 1, § 5 of the Washington State Constitution.**

Article 1, § 5 of the Washington State Constitution states, "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." The right of free speech is a "fundamental counterpart" of the right to receive information. *Fritz v. Gordon*, 83 Wn.2d 275, 296-97 (1974). Plaintiffs contend that NCRL's Policy infringes upon rights established by Article I, § 5 both on its face and as applied to adult patrons who wish to have unfiltered internet access on NCRL's computers. Plaintiffs are mistaken.

1. <u>NCRL's Policy is constitutionally valid on its face.</u>

Plaintiffs allege that NCRL's Policy is constitutionally invalid "on its face..." but do not allege why. (Ct. Rec. 1) Plaintiffs cannot prevail on a facial challenge to NCRL's Policy because the Policy is neither overbroad nor vague.

NCRL's Internet Use Policy states in part:

> *The mission of the North Central Regional Library is to promote reading and lifelong learning. Internet access is offered as one of many information resources supporting that mission.*
> . . . . .
> *All Internet access on NCRL library computers is filtered.*
>
> *The library district does not host customer e-mail accounts or provide access to chat rooms.*

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 6
CV-06-327-EFS
#658036 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

. . . . .

*Hacking and other unlawful online activities are prohibited.*

*The District's director is responsible for establishing procedures to carry out this policy.*

(NCRL Statement, ¶ 26)

NCRL's Policy conforms to the selection criteria in NCRL's Collection Development Policy which requires materials to be "selected and retained in the library on the basis of their value for the interest, information, and enlightenment of all the people in the community in conformance with the District's mission." (NCRL Statement, ¶25)

NCRL's Policy cannot be deemed overbroad unless it sweeps within its prohibitions a "substantial amount" of constitutionally-protected speech. Cf. *City of Seattle v. Huff*, 111 Wn.2d 923, 925-26 (1989).[3] NCRL's internet filter is configured to block only certain categories of web sites: Hacking, Proxy Avoidance, Phishing, Malware, Spyware, Web Chat, Instant Messaging,

---

[3] Washington courts appear to apply the federal standard in resolving claims of overbreadth and vagueness in free speech cases unless the regulation at issue amounts to a prior restraint. *Voter Educ. Comm. v. Public Disc. Comm.*, 161 Wn.2d 470, 496 (2007)(vagueness). A prior restraint prohibits future speech as opposed to punishing past speech See *Soundgarden v. Eikenberry*, 123 Wn.2d 750, 764-65 (1994).

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 7
CV-06-327-EFS
#658036 v1 / 42703-001

Gambling, Image Search, Video Search, Adult Materials, Nudity/Risque, and Pornography. (NCRL Statement, ¶54). To the extent these categories reach constitutionally-protected speech at all, they are properly and necessarily blocked pursuant to requirements of the *Children's Internet Protection Act* ("CIPA"), 20 U.S.C. § 9134(f); 47 U.S.C. § 254(h), for purposes of network security, and other legitimate reasons detailed below. ( NCRL Statement,¶23)

CIPA requires public libraries seeking eligibility for federal "E-rate" and LSTA funds[4] to install a "technology protection measure"[5] on public computers with internet capability to block visual depictions deemed to be obscene, child pornography, or otherwise "harmful to minors."

CIPA was upheld against a facial challenge in *United States v. American Library Association, 539 U.S. 194 (2003).* In *American Library Ass'n.* a plurality of the Court found that CIPA did not violate First Amendment rights

---

[4] The "E-Rate program" allows qualifying libraries to purchase internet access at discounted rates. The Library Services and Technology Act ("LSTA") provides grants to states to support the telecommunications and computer network initiatives of public libraries. See *United States v. American Library Association*, 539 U.S. 194, 199 (2003).

[5] Public libraries "may" disable the "technology protection measure" at the request of an adult patron for bona fide research or other lawful purpose. See 20 U.S.C.§ 9134(f)(3);47 U.S.C. § 254(h)(6)(D).

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

by conditioning the receipt of federal funds upon libraries' installation of filtering software or other "technology protection measure." Justice Kennedy concurred with the plurality due to the possibility that filters can be disabled, specific web sites can be unblocked, and because of the "legitimate, even compelling" government interest in protecting young library users. 539 U.S. at 214-215. Since CIPA is constitutionally valid on its face and Plaintiffs cannot prevail absent evidence that its Policy results in the blocking of a substantial amount of constitutionally-protected speech. There is no such evidence.

Likewise, NCRL's Policy is not subject to a facial challenge on grounds of vagueness. A regulation is unconstitutionally vague only if a person of common intelligence cannot reasonably determine its meaning and understand what conduct is proscribed. See *Spokane v. Douglass*, 115 Wn.2d 171, 178-179(1990). It is not necessary that a person be able to predict the exact moment that his actions become prohibited conduct. See *City of Seattle v. Eze*, 111 Wn.2d 22, 27 (1988). NCRL's Policy easily meets test. It advises library patrons that "all internet use is filtered" and warns that "hacking and other unlawful online activities are prohibited" among other provisions. There is no ambiguity in NCRL's Policy that would render it constitutionally vague.

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 9
CV-06-327-EFS
#658036 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

2.   <u>NCRL's Internet Use Policy, as-applied, infringes no Free Speech rights.</u>

NCRL's Policy also withstands scrutiny on an "as applied" basis whether viewed as an implementation of CIPA or an exercise of its mandate to "do all acts necessary for the orderly and efficient management and control of the library." RCW 27.12.210(10). NCRL offers the following as context for the legal issues associated with Plaintiffs' claims.

### A. NCRL's Internet Filter

NCRL computers operate through the FortiGuard Web Filtering Service offered by Fortinet, Inc. (NCRL Statement, ¶33) FortiNet maintains a database of websites, including more than 30 million sites, covering more than two billion individual pages (URLs). (NCRL Statement, ¶35). FortiNet assigns each web page to one of 76 categories based on its dominant content, or to none of those categories. (NCRL Statement, ¶32) Some pages are additionally assigned one of seven classes (Id.) FortiGuard users such as NCRL select classes or categories to block or leave unblocked. (NCRL Statement, ¶38).

NCRL blocks the following categories: malware, spyware, hacking, proxy avoidance, phishing, gambling, adult materials, nudity/risqué, pornography, web chat, instant messaging, and personal relationships. (NCRL Statement, ¶54). NCRL does not disable the FortiGuard filter, even if requested

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 10
CV-06-327-EFS
#658036 v1 / 42703-001

by an adult patron. (NCRL Statement, ¶140). FortiGuard allows anyone to check the categorization of a particular site and request that the decision be reviewed. (NCRL Statement, ¶40-42). Similarly, NCRL provides an automated mechanism for patrons to request that particular blocked web site be reviewed and, if appropriate, unblocked. (NCRL Statement, ¶56-58).

NCRL filters internet use because of CIPA and other reasons: <u>first</u>, filtering advances NCRL's mission "to promote reading and lifelong learning" and implement its Collection Development Policy (NCRL Statement, ¶60); <u>second</u>, filtering facilitates NCRL's commitment and duty to work cooperatively with schools (NCRL Statement, ¶ 15); <u>third</u>, filtering minimizes confrontations between NCRL staff and adult patrons using computers for illegal or in appropriate purposes (NCRL Statement, ¶ 74; 90-99); and <u>fourth</u>, filtering helps minimize NCRL's potential liability for employment claims based on hostile work environment. (NCRL Statement, ¶71; 90-99). These justifications are discussed further below.

   B. *Plaintiffs SAF, Bradburn, and Cherrington Lack Standing to Maintain an As-Applied Challenge.*

To prevail on an "as applied" challenge under Article I, § 5, Plaintiffs must have sustained actual injury as a result of NCRL's Policy  A litigant lacks

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 11
CV-06-327-EFS
#658036 v1 / 42703-001

standing to assert a constitutional challenge unless there is harm that goes beyond general dissatisfaction with the state action.[6] The harm must amount to actual damage or injury. See *Kadoranian v. Bellingham Police Dept.,* 119 Wn.2d 178, 191 (1992). A party generally does not have standing to raise a constitutional challenge to vindicate the rights of third-parties. *Ludwig v. Dept. of Retirement Sys.*, 131 Wn. App. 379, 382 (2006).

Plaintiff Second Amendment Foundation ("SAF") is a non-profit organization focused on the fundamental right of citizens to own firearms. SAF alleges that the web site for one of its publications, "Women & Guns," is blocked by NCRL's filter. (Ct. Rec. 1) In fact, www.womenandguns.com is not blocked nor to NCRL's knowledge has it ever been blocked nor does NCRL contend that it should be blocked. (NCRL Statement, ¶119). SAF' lacks first hand knowledge that site was actually blocked. It knows only that an SAF members reported that the site was unavailable on NCRL computers. (NCRL Statement, ¶116). Since SAF cannot demonstrate actual injury, and cannot lawfully challenge the constitutionality of NCRL's Policy on behalf of third-parties, SAF's as applied challenge to NCRL's Policy must be dismissed.

---

[6] NCRL assumes its filtering policy is state action for purposes of this Motion.

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 12
CV-06-327-EFS
#658036 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Plaintiff Sarah Bradburn ("Bradburn") contends she was unable to access internet sources of information relating to youth tobacco usage on an NCRL computer in the Republic branch. (Ct. Rec 1)  Plaintiff Pearl Cherrington ("Cherrington") contends she was unable to access web sites concerning health topics and art galleries at the Twisp branch. (Id.)  Cherrington also unsuccessfully sought access to www.youtube.com (NCRL Statement, ¶131).[7]

Neither Bradburn nor Cherrington can identify specific web sites they could not access (other than www.youtube.com) nor confirm that they were even blocked by NCRL's filter as opposed to a transient technical problem with the network. (NCRL Statement, ¶123-26; 130-35).   In the absence of evidence that Bradburn and Cherrington sustained actual injury as a result of NCRL's policy, they have no standing to challenge it on constitutional grounds.

### C.  Plaintiff Heinlen's Constitutional Challenge Fails.

Plaintiff Charles Heinlen ("Heinlen") contends that internet filtering prevented him from accessing web site relating to firearms, various dating sites, Soldier of Fortune Magazine, his blog at www.myspace.com, and photos embedded in commercial email sent to Hotmail and Yahoo accounts. (Ct. Rec

---

[7] NCRL has unblocked access to www.youtube.com.  (NCRL Statement, ¶127).

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 13
CV-06-327-EFS
#658036 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

1). The sites Heinlen claims were blocked are no longer blocked, including www.myspace.com. Accordingly, even if Heinlen sustained harm from not having had access to certain sites in the past he has such access now.

Heinlen, however, contends that NCRL must do more. Heinlen claims NCRL must disable the filter at the request of an adult patron even for purposes of viewing constitutionally unprotected speech. (NCRL Statement, ¶141). Heinlen's view notwithstanding, neither Article I, § 5 of the Washington State Constitution, nor the First Amendment require NCRL to provide access to obscenity, child pornography or other internet content that is not constitutionally-protected.[8] It is unclear how and to what extent NCRL's Policy limits his access to protected speech but assuming it does occur, NCRL's limitations are well-justified by Article I, § 5 and the First Amendment.

### D. NCRL's Internet Use Policy

Public libraries pursue the worthy missions of facilitating learning and cultural enrichment. Libraries have broad discretion to decide what material they provide to their patrons. Although libraries seek to provide a wealth of diverse information, libraries endeavor primarily to provide materials thought to offer

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

the greatest direct benefit to their community. *American Library Assn., supra,* 539 U.S. at 202. Internet filtering is a form of content selection. It provides internet access to facilitate research, learning, and recreational pursuits by furnishing materials of requisite and appropriate quality. 539 U.S. at 206

NCRL fulfills its traditional role by promoting reading and lifelong learning as mandated by its mission.[9] Its are made with this mission in mind. Certainly, the process involved in developing a collection of traditional library materials is different than providing access to information over the internet. Nevertheless, NCRL exercises professional judgment in deciding what categories to block. It is instructive to consider how limited NCRL's blocking actually is:

**Hacking, Proxy Avoidance, Phishing, Malware, Spyware**: Generally speaking, sites falling into these categories predominately contain information about (or the means) to damage or circumvent computer networks and inflict damage a network. It makes little sense to permit access to sites that

---

[8] Obscene material and child pornography are not protected speech. See *Miller v. California*, 413 U.S. 15, 24 (1973); *New York v. Ferber*, 458 U.S. 747, 764 (1982).

[9] NCRL's mission also advances the State's policy to promote library services as part of its commitment to public education. See RCW 27.12.020

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 15
CV-06-327-EFS
#658036 v1 / 42703-001

theoretically could damage the very network which makes such sites available at all. Consequently, such sites are blocked. A patron is always free to ask NCRL to review a particular site if it is thought to have been wrongly categorized. (NCRL Statement, ¶56-58).

**Web Chat and Instant Messaging.** Facilitating instantaneous online dialogue is not part of NCRL's traditional mission. Moreover, web sites in these categories commonly require users to download software in order to function. As a matter of network safety and maintenance NCRL cannot risk the possibility of software-borne viruses or other malfunctions associated with such software. Patrons are free to access private e-mail accounts through hosted services such as Yahoo, Hotmail, and Google.

**Gambling.** Sites in this category are blocked because online gambling in some circumstances may be considered harmful to minors under CIPA or are otherwise illegal. See, e.g., RCW 9.46.240. NCRL has overridden the filter to allow access to sites that do not offer on line wagering capability and will continue to unblock benign sites as they come to NCRL's attention to the extent access is sought for bona fide research or other lawful purpose. (NCRL Statement, ¶ 56-58).

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

**Image Search and Video Search**. Blocking these categories blocks only images and videos for which access is sought user's query through a web site search engine. If such categories were not blocked, a patron could circumvent the filter by simply entering terms associated with obscene content, for example, and performing a search through http://images.google.com/.

**Adult Materials, Nudity/Risque, and Pornography**. These categories are blocked for multiple reasons: *first*, CIPA requires blocking of visual depictions of material "harmful to minors;" *second*, NCRL's staff is entitled to a workplace that is not tantamount to a "hostile environment;" and *third*, such content is inconsistent with NCRL's mission.

*E. NCRL has a legitimate, compelling interest in filtering internet use.*

Assuming NCRL's Policy limits Heinlen's access to constitutionally-protected speed, the limits are justified. NCRL's Policy is narrowly tailored to meet legitimate, compelling interests in protecting children and NCRL staff.

The burden of dealing with unfiltered internet access falls first and foremost upon NCRL branch librarians. They may be called upon to confront patrons viewing sexually-explicit material in circumstances ranging from merely awkward to potentially dangerous. Twenty of NCRL's twenty-eight branches are staffed by a single librarian. (NCRL Statement, ¶14). Space is confined and

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 17
CV-06-327-EFS
#658036 v1 / 42703-001

resources are particularly limited in smaller branches. Librarians have ample, traditional duties to fulfill without also asking them to also maintain library decorum and dignity in the presence of adult patrons whose decisions may diminish the library experience for others or endanger them.[10]

NCRL also has a compelling interest in minimizing conditions that could serve as a basis for claims of hostile work environment, a form of sex discrimination actionable under Washington's Law Against Discrimination, RCW 49.60 et. seq. See *Antonius v. King County*, 153 Wn.2d 256, 261 (2004).[11]

Washington courts also recognize that compelling interests may justify restrictions on speech where the interests of children are at stake, particularly where the speech may result in physical, emotional and psychological harm. See *Bering v. Shane*, 106 Wn. 2d. 212, 244-45 (1986). There is reason to

---

[10] Known encounters within NCRL branches to date have not resulted in physical threats or violence but incidents have occurred where patrons circumvented the filter and obtained sexually explicit, child pornographic, or obscene images. In these situations, NCRL librarians and staff have expressed feeling of discomfort, embarrassment and anxiety both in having to view the material and confront the patron. (NCRL Statement, ¶ 90-99)

[11] In 2003, 12 librarians brought hostile work claims against the Minnesota Public Library due to the proliferation of pornography and other sexually-explicit material accessed by patrons on library computers. NCRL Statement, ¶149.

DEFENDANT NCRL'S MOTION FOR
SUMMARY JUDGMENT - 18
CV-06-327-EFS
#658036 v1 / 42703-001

foresee how unfiltered adult internet use may lead to a dangerous environment for children. Recent reports from Dallas, Texas disclosed that library patrons accessed 5,200 web pages containing pornographic material in a 45 minute period on a single day. (NCRL Statement, ¶150).

NCRL's Policy is configured narrowly and has proven to be reasonably effective at blocking only what is desired. Although a degree of underblocking and overblocking is inevitable, NCRL expert (Professor Paul Resnick) determined that only 20 web pages were incorrectly blocked out of approximately 600,000 web pages accessed across the NCRL network in a recent one week period. (NCRL Statement, ¶110).

## CONCLUSION

NCRL's Policy complies fully with Article I, § of the Washington State Constitution and the First Amendment to United States Constitution. It is narrowly tailored to meet NCRL's legitimate, compelling interests in protected children and employees and advances NCRL's duty to comply with CIPA and fufill its traditional role as a public library. Any burden to adult patrons caused by filter imprecision or restricted access to constitutionally protected speech is outweighed by these considerations.

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

For the foregoing reasons, NCRL requests the entry of summary judgment in its favor on all claims alleged by Plaintiffs. In the alternative, NCRL requests this Court certify to the Washington Supreme Court the question of the validity of NCRL's Internet Use Policy under Article I, § 5 of the Washington State Constitution.

DATED this 4th day of February, 2008.

KARR TUTTLE CAMPBELL

By: /s/ Thomas D. Adams
Thomas D. Adams, WSBA #18470
E-mail – tadams@karrtuttle.com
Celeste Mountain Monroe, WSBA #35843
E-mail – cmonroe@karrtuttle.com
Attorneys for Defendant North Central
Regional Library District
KARR TUTTLE CAMPBELL
1201 Third Ave., Ste. 2900
Seattle, WA 98101
Telephone: 206.233.1313
Facsimile: 206.682.7100

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

# CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

Duncan Manville
1629 2nd Ave. W
Seattle, WA 98119

Aaron Caplan
ACLU of Washington
705 Second Ave., Ste. 300
Seattle, WA 98103

Notice has been delivered by U.S. Mail to:

Catherine Crump
American Civil Liberties Union
Foundation
125 Broad Street, 17th Floor
New York, NY 10004

KARR TUTTLE CAMPBELL

By: _Heather L. White_
Heather L. White
hwhite@karrtuttle.com

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100