The Honorable Edward F. Shea

Thomas D. Adams
Celeste Mountain Monroe
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98101-3028
(206) 223-1313
Attorneys for North Central Regional Library District

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## AT SPOKANE

| | |
|---|---|
| SARAH BRADBURN, PEARL CHERRINGTON, CHARLES HEINLEN, and THE SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> NORTH CENTRAL REGIONAL LIBRARY DISTRICT, <br><br> Defendant. | NO. CV-06-327-EFS <br><br> DEFENDANT NORTH CENTRAL REGIONAL LIBRARY DISTRICT'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 1
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

## A. The North Central Regional Library

1. North Central Regional Library ("NCRL" or "District") is an inter-county rural library district and municipal corporation established in 1960. Declaration of Dean Marney ("Marney Decl.") at ¶ 3.

2. NCRL is organized and operated pursuant to RCW 27.12 et. seq. Id at ¶4.

3. NCRL provides public library services to over 220,000 people in the areas of Chelan, Douglas, Ferry, Grant and Okanogan counties. Id at ¶5., **Ex. A**.

4. The District is funded by local property taxes, federal money, private grants and endowments. Id. at ¶6.

5. Management and control of NCRL is vested in a board of trustees ("the Board") composed of two trustees from each of Chelan and Grant counties and one trustee each from Douglas, Ferry, and Okanogan counties. Id. at ¶7.

6. The Board is responsible for issuing all policies for the District. Id. ¶8.

7. The Board appoints a Director, who manages the library and directs the employees. The Director serves as the liaison between the Board and library

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 2
CV-06-327-EFS
#657989 v1 / 42703-001

staff. Id. at ¶9.

8.     The current Director, Dean Marney, was appointed to the position in 1990, and has been employed by NCRL since 1977. Id. at ¶10.

9.     NCRL maintains a collection over 675,000 books and other materials which are available through twenty-eight (28) community libraries and NCRL's web site. Id. at ¶ 11.

10.    NCRL provides mail order service to rural patrons.  NCRL's service in this respect is one of the few remaining mail  order services in the country.  Id. at ¶12.

11.    NCRL's twenty-eight branches vary in size.  The largest is the Wenatchee branch which covers approximately 12,000 square feet of public area.  Id.  The smallest is the Twisp branch which has approximately 701 square feet of public space.  Id. at ¶13.

12.    The average size of an NCRL branch is approximately 2865 feet.  Id.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 3
CV-06-327-EFS
#657989 v1 / 42703-001

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

13.     There is a designated children's area in every NCRL branch but only one branch has a wall or other partition physically separating the children's section from the rest of the library. Id. at ¶14.

14.     Twenty NCRL branches are staffed by one librarian. Id. at ¶15.

15.     NCRL is committed to, and responsible for, working cooperatively with public schools in its territory. In 14 of the 26 school districts in NCRL territory, NCRL branch libraries actually serve as the de facto school library for school age children. Id. at ¶16.

16.     Internet access is provided in all NCRL branches. Id. at ¶17.

17.     Fifty-seven (57%) of NCRL branches have only one or two public use computers. Id at ¶18.

18.     Only three branches have more than four public use computers. Id.

19.     In order to qualify for federal LSAT ("Library Services and Technology") and E-rate funds, NCRL is required to operate "a technology protection measure with respect to any of its computers with Internet access that protects against

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 4
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

access through such computers to visual depictions that are obscene, child pornography, or harmful to minors." Id at ¶19, **Ex. B**.

20.     The "E-Rate program" allows qualifying libraries to purchase internet access at discounted rates. The Library Services and Technology Act ("LSTA") provides grants to states to support the telecommunications and computer network initiatives of public libraries.   Id. at ¶20.

21.     CIPA defines the "technology protection measure" to include an internet filtering device. Id. at ¶22.

22.     CIPA gives librarians the option of disabling these filters if an adult patron specifically requests they be turned off under specific circumstances, but the statute does not require such requests be granted. Id. at ¶23, **Ex. B**.

23.     Consistent with NCRL's broad discretion to decide what material to provide to its patrons in fulfillment of its mission, NCRL's obligation to create a safe environment for its patrons and employees, as well as NCRL's duty to comply with the Children's Internet Protection Act, all Internet use on NCRL

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 5
CV-06-327-EFS
#657989 v1 / 42703-001

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

library computers is filtered.  NCRL will not disable the filter upon the request of an adult patron.  Id. at ¶24, **Ex. B**; Id. at ¶60.

**B.    NCRL's Relevant Policies**

24.    The mission of the North Central Regional Library is to promote reading and lifelong learning.  Id. at ¶25.

25.    NCRL's Collection Development Policy states:

> The North Central Regional Library District's Board of Trustees recognizes that the library was created to serve all of the people within the District's service area, regardless of race, age, creed, or political persuasions. The Board of Trustees further recognizes that within the District's service area there are individuals and groups with widely disparate and diverse interests, cultural backgrounds, and needs. The Board of Trustees, therefore, declares as a matter of policy that:
>
> 1.    The Collection Development Policy is based on and reflects the District's mission, goals, and values as stated in the current Strategic Plan.
>
> 2.    Library materials shall be selected and retained in the library on the basis of their value for the interest, information, and enlightenment of all the people of the community in conformance with the District's mission. Some of the factors which will be considered in adding

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 6
CV-06-327-EFS
#657989 v1 / 42703-001

to or removing materials from the library collection shall include: present collection composition, collection development objectives, interest, demand, timeliness, audience, significance of subject, diversity of viewpoint, effective expression, and limitation of budget and facilities.

No library materials shall be excluded because of the race, nationality, political, religious, or social views of the author. Not all materials will be suitable for all members of the community.

The District shall be responsive to public suggestion of titles and subjects to be included in the library collection. Gifts of materials may be accepted with the understanding that the same standards of selection are applied to gifts as to materials acquired by purchase, and that any gifts may be discarded at the District's discretion.

To ensure a vital collection of continuing value to the community, materials that are not well used may be withdrawn.

The Director is responsible to the Board of Trustees for collection development. The Director may delegate collection development activities to members of the staff who are qualified by reason of education and training.

3. The Board of Trustees believes that reading, listening to, and viewing library materials are individual, private matters. While individuals are free to select or to reject materials for themselves, they

DEFENDANT NORTH CENTRAL REGIONAL LIBRARY DISTRICT'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 7
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

cannot restrict the freedom of others to read, view, or inquire. The Board of Trustees recognizes that parents have the primary responsibility to guide and direct the reading and viewing of their own minor children.

The Board of Trustees recognizes the right of individuals to question materials in the District collection. A library customer questioning material in the collection is encouraged to talk with designated members of the staff concerning such material. To formally state his or her opinion and receive a written response, a customer may submit the form provided for that purpose.

Marney Decl. at ¶26, **Ex. C.**

26.    NCRL's Internet Public Use Policy states:

The mission of the North Central Regional Library is to promote reading and lifelong learning.  Internet access is offered as one of many information resources supporting that mission.

The Internet is currently an unregulated medium. While the Internet offers access to materials that are enriching to users of all ages, the Internet also enables access to some materials that may be offensive, disturbing, or illegal.  There is no guarantee that information obtained through the Internet is accurate or that individuals are who they represent themselves to be.  The library district recognizes that it cannot fully control the amount of material accessible through the Internet but will take reasonable steps to apply to

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 8
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

the Internet the selection criteria stated in the Collection Development Guidelines and Procedures.

All Internet access on NCRL library computers is filtered.

The library district does not host customer e-mail accounts or provide access to chat rooms.

The library district cannot guarantee privacy for individuals using library public access computers to search the Internet and computer screens may be visible to people of all ages, backgrounds, and sensibilities. Customers are requested to exercise appropriate discretion in viewing materials or submitting sensitive personal information. Minors, in particular, are discouraged from sharing personal information online.

Hacking and other unlawful online activities are prohibited.

The District's director is responsible for establishing procedures to carry out this policy.

Marney Decl. at ¶27, **Ex. D**.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 9
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

## C. NCRL's Filtering Technology

27. NCRL originally implemented internet filtering in December 2000. Declaration of Barbara Walters ("Walters Decl.) at ¶3.

28. The original filter was referred to as "BESS." Id. at ¶4.

29. Washington State library statistics for 2005, indicate that 16 out of 47 library systems with filters reported they were using a version of BESS. Id. at ¶5, **Ex. A**.

30. BESS was NCRL's operative filter at the time of the incidents giving rise to the current litigation. Walters at ¶6.

31. During the time BESS was the operative filter, NCRL recalls only one instance when a patron asked for the filter to be disabled. Marney Decl. at ¶58.

32. The request to disable the BESS filter was made by Plaintiff Charles Heinlen. Id.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 10
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

33.    In October 2006, BESS was replaced with a new filter system known as the FortiGuard Web Filtering Service. Fortiguard is part of the suite of products and services developed by Fortinet, Inc. (hereinafter "FortiGuard"). Walters Decl. at ¶6.

34.    The replacement of BESS by FortiGuard was part of a comprehensive IT upgrade to the computer cataloguing system. Walters Decl. at ¶8.

**D.    The FortiGuard Filter**

35.    FortiGuard and Fortinet maintain a database of websites. Fortinet reports that it includes more than 30 million sites, covering more than two billion individual pages, or URLs (Universal Resource Locators). Declaration of Paul Resnick ("Resnick Decl") at ¶.  Additional information on Fortiguard Web Filtering Service is discussed in Declaration of Liam Chasteen.

36.    FortiNet assigns each web page to one of 76 categories based on its dominant content, or to none of those categories Some pages are additionally assigned one of seven classes. Id. at ¶10.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 11
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

37.     When a web site contains pages having content with different dominant categories, each page is separately categorized. Id. at ¶11.

38.     The customer selects classes or categories to block or leave unblocked. Id. at ¶12.

39.     The Service is certified to comply with the Children's Internet Protection Act. Id. at ¶13, **Ex. F**.

40.     FortiNet provides a short description of the meaning of each category and classification. FortiNet does not provide the details of its procedures. Presumably, FortiNet uses a combination of automated algorithm and human review. Id. at ¶14.

41.     Anyone may immediately find out FortiNet's current classification of any particular web site or page (URL) by entering the URL in a form on the FortiNet web site (http://www.fortiguardcenter.com/webfiltering/webfiltering2.html). Id. at ¶15.

42.     Anyone may request that FortiNet review its classification of a particular web site or page through the same area of the FortiNet web site. Id. at ¶16.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 12
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

43.   To understand how the Fortiguard affects the Internet activity of an NCRL patron, it is helpful to consider the sequence of steps that occur behind the scenes each time a patron tries to visit a web page.  Id. at ¶17.

44.   A visit may be initiated either by directly entering a URL into the toolbar, by selecting a bookmarked favorite from a menu, or by following a link from another page.  Id. at ¶18.

45.   Regardless of how a visit to a website is initiated, the same sequence of events occurs in the background.  Id. at ¶19.

46.   To illustrate, assume an NCRL patron enters the URL http://www.yahoo.com.nfl in the toolbar.  Once the URL address is typed, the patron's computer attempts to establish a connection to the IP address of the destination host (or web server).  It sends a message that it would like to "get" whatever the server provides in response to this URL path, such as an HTML document or an image file.  Id. at ¶20.

47.   Because the patron's computer accesses the Internet through the library's "Fortigate" filtering firewall unit, the patron's computer may not receive the same response had it been connected directly to the Internet.  Id. at ¶21.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 13
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

48.     If http://www.yahoo.com.nfl has been requested recently, by this patron or another in the same branch, the Fortigate unit may have a copy of Fortiguard's rating of the URL or the server's response to that request.  If it does not, the Fortigate unit contacts the destination host (Yahoo) asking for the same URL path the patron's computer requested and the Fortigate unit connects to a Fortiguard Rating Server with the text of the requested URL.  Id. at ¶ at 22.

49.     The Fortiguard Rating Server, which is maintained by Fortiguard, responds to the Fortigate unit with two pieces of information, a "category" and a "classification."    For example, http://www.yahoo.com.nfl is in the category "sports" and its classification is "unclassified."  Id. at ¶23.

50.     Once the Fortigate unit receives the requested contents, it runs a policy evaluator program that evaluates whether the URL is blocked or allowed under the filtering profile in operation.  Id. at ¶24.

51.     The policy evaluator first examines whether the URL is one that is specifically exempt or blocked according to the rules set by NCRL staff and stored as part of the filtering profile.  Id. at ¶25.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 14
CV-06-327-EFS
#657989 v1 / 42703-001

52. If there is no explicit rule, then the evaluator compares the category returned (e.g. "sports") to the set of blocked classifications in the filtering profile. If either the category or classification is blocked, then the policy evaluator determines that the requests access should be blocked. Id. at ¶26.

53. If the Rating Server failed to return a category and classification, NCRL has configured the policy evaluator to allow access to the URL. Id. at ¶27.

**E. NCRL's Current Filtering Profile**

54. The following categories are blocked under NCRL's current filtering profile: (1) hacking; (2) proxy avoidance; (3) phishing; (4) malware; (5) spyware; (6) gambling; (7) adult materials; (8) nudity/risqué; (9) pornography; (10) webchat; (11) instant messaging. The following classifications are also blocked: image search, video search; and spam URL. Walters Decl. at ¶8.

55. The above-referenced categories and classifications are defined by Fortinet as follows:

- **Hacking** – sites that depict illicit activities surrounding the unauthorized modification or access to programs, computers, equipment and websites;
- **Proxy Avoidance** – sites that provide information or tools on how to bypass Internet access controls and browse the Web anonymously, includes anonymous proxy servers

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 15
CV-06-327-EFS
#657989 v1 / 42703-001

- **Phishing**- counterfeit web pages that duplicate legitimate business web pages for the purpose of eliciting financial, personal or other private information from the users
- **Malware** – sites that are infected with destructive or malicious software, specifically designed to damage, disrupt, attack or manipulate computer systems without the user's consent, such as a virus or Trojan horse.
- **Spyware** – sites that host software that is covertly downloaded to a user's machine to collect information and monitor user activity, including spyware, adware, etc.
- **Gambling** – sites that cater to gambling activities such as betting, lotteries, casinos, including gaming information, instruction and statistics.
- **Adult Materials** – Mature content sites (18+ and over) that feature or promote sexuality, strip clubs, sex shops, etc....excluding sex education, content without the intent to sexually arouse.
- **Nudity/Risque** – Mature content sites (18+ and over) that depict the human body in full or partial nudity without the intent to sexually arouse.
- **Pornography** – Mature content websites (18+ or older) which present or display sexual acts with the intent to sexually arouse and excite.
- **Webchat** – sites that promote web chat services.
- **Instant Messaging** – sites that allow users to communicate in "real-time" over the Internet.

- **Image Search** – sites providing search of images or photos or the result of image or photo searches
- **Video Search** – sites providing search of video clips or the result of video searches.
- **Spam URL** – sites or web pages whose URLs are found in spam emails. These web pages often advertise sex sites, single clubs and other potentially nuisance or offensive materials.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 16
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Walters Decl. at ¶9, **Ex. C**.

56.     NCRL will evaluate any request to unblock a site that falls within the categories and/or classifications listed above. Marney Decl. at ¶28.

57.     NCRL has implemented a process whereby if a site is blocked, a patron can immediately send an email to NCRL administrators for the review. Id. at ¶29.

58.     NCRL Director, Dean Marney, or NCRL Director of Public Services, Dan Howard, evaluates each request as they would any other collection decision. They consider whether the requested content is consistent with the library's mission. Id.. at ¶30.

**59.**     Of the 81 automated requests NCRL has received since October 2007, 65 have been evaluated within 24 hours. The remaining 16 requests were typically made over a weekend or holiday. Accordingly, decisions could not be made on the same day. Id. at ¶31.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 17
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

**F.   CIPA Compliance**

60.   NCRL's current filtering profile is consistent with its mission to promote reading and lifelong learning, as well as create a safe environment for its patrons and staff.  Marney Decl. at ¶32.

61.   NCRL's current filtering profile also facilitates compliance with the Children's' Internet Protection Act (CIPA).  Id. at ¶33.

62.   As set forth above, CIPA requires a library receiving federal LSTA and E-Rate funds to employ a technology protection measure with respect to any of its computers with Internet access that protects against access through such computers to visual depictions that are obscene, child pornography, or harmful to minors.  Id. at ¶19, **Ex. B**.

63.   CIPA defines the above terms to include depictions of sexual conduct, pornography, lewd exhibitionism, nudity, sexual activity, or simulated sexual activity that have no serious literary, artistic, political or scientific value to minors.  Id. at ¶21.

64.   CIPA emphasizes that determinations regarding what matter is appropriate for minors shall be made locally.  Id. at ¶34, **Ex. B**.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 18
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

65. CIPA authorizes libraries to disable the filter at an adult patrons request to enable access for bona fide research or other lawful purpose. Id. at ¶35, **Ex. B**.

66. NCRL researched the feasibility of disabling the filter for adult patrons but ultimately decided such a policy change would present technological challenges and would be inconsistent with NCRL's mission in addition to presenting other problems. Marney Decl. at ¶36.

67. Without having to purchase additional authentication software or hardware, or purchasing a new filtering solution, NCRL would have to designate one computer at each location for unfiltered access. Id. at ¶37.

68. Thirty-two percent (32%) of NCRL branches currently have only one public use computer. Id. at ¶38.

69. Beyond the technological challenges, complete removal of the filter would allow for the dissemination of unprotected speech, illegal materials, and information that could dismantle NCRL's entire computer network. Id. at ¶39.

70. Complete removal of the filter would also allow patrons to obtain pornography and other inappropriate material NCRL would not otherwise provide to its patrons through other mediums or media. Id. at ¶40.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 19
CV-06-327-EFS
#657989 v1 / 42703-001

71.    NCRL believes access to such materials would create an unacceptable risk for children and could create a hostile atmosphere for families, children and staff in the library, so it elected to continue its policy of providing filtered access to the Internet at all public use computers.   Id. at ¶41.

72.    NCRL's decision to continue providing filtered internet access was informed by the fact that many of its branches are located in facilities that are not conducive segregating children and adults.  Id. at 42.

73.    NCRL's policy of providing filtered internet access also took into account branch library staff levels.  Id. at ¶43.

74.    If an adult patron views child pornography or other inappropriate content, NCRL has determined its employees could be unwelcomingly exposed to, and put in the position of, having to confront patrons.  Id.  at ¶44.

75.    Moreover, NCRL did not want to employ a procedure that involved differing and possibly inconsistent views regarding the appropriateness of what people were accessing on the Internet.  Id. at ¶45.

76.    NCRL administration considered potential options of implementing commonly used privacy measures, such as privacy screens or recessed desks in

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 20
CV-06-327-EFS
#657989 v1 / 42703-001

but rejected them due to concerns from employees who had previously worked with such technology in other library districts, including Dan Howard. Marney Decl. at ¶46.

77. Based on his personal experience at other library districts, Dan Howard, NCRL's Director of Public Services, expressed his concern that the privacy screens were ineffective. Declaration of Dan Howard (Howard Decl.) at ¶18.

78. Mr. Howard believes privacy screens do not effectively block computer monitors from people who are walking behind or seated adjacent to computers. Id. at ¶19.

79. Mr. Howard believes privacy screens also made it difficult for individuals with disabilities to view the monitor. Id.

80. In Mr. Howard's experience, the privacy screens were often removed or vandalized, and were relatively expensive to replace. Id. at ¶20.

81. Mr. Howard also recalled that requests to remove the privacy screens were frequent, causing uncomfortable confrontations between patrons and staff. Id. at ¶21.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 21
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

82.   With respect to recessed desks, Mr. Howard expressed concern about the expense and effectiveness of the technology. Id. at ¶18.

83.   In his experience, Mr. Howard did not find that the recessed configuration prevented people passing by from viewing the screen. Id. at ¶22.

84.   In addition, a recessed desk (currently) retails for approximately $1,000.00. Id. at ¶23.

85.   NCRL has not considered hiring security guards for their branches to ensure individuals were not looking at inappropriate content, as is done in some of Washington's largest libraries, including Seattle Public Library and Spokane Public Library. NCRL believes this measure would be too expensive and would adversely change the environment at NCRL branches.   Id. at ¶24.

## G.   NCRL's Duty to Create a Safe Environment for Patrons and Staff

86.   As Director of Public Services, Dan Howard is responsible for the twenty-eight branch libraries and the Mail Order Library.   He also coordinates collection development activities and administers grants. Howard Decl. at ¶3.

87.   Mr. Howard's responsibilities with respect to the individual branches includes management of personnel, including all branch librarians. Id. at ¶4.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 22
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

88.     Mr. Howard expects NCRL branch librarians to monitor and respond to complaints of inappropriate use of its public computers, particularly to the extent patrons are able to obtain and display materials that are pornographic, obscene or harmful to minors.  Mr. Howard does not expect NCRL librarians to confront patrons engaging in inappropriate behavior facilitated by unrestricted Internet access. Is. at ¶6.

89.     Since NCRL started offering Internet access at its branch locations, there have been instances where patrons have obtained sexually explicit, child pornographic or obscene images.  These incidents were more prevalent before NCRL decided to block the image search function. Id. at ¶6.

90.     In instances where patrons have accessed sexually explicit, child pornographic or obscene images, NCRL librarians and staff have expressed feelings of discomfort, embarrassment and anxiety both in having to view the materials and confronting the patrons. Is. at ¶8.

91.     Sharron Reddick, NCRL's Omak Branch Librarian, recalls specific incidents where patrons where able to obtain explicit, pornographic images prior to NCRL's decision to block Google images.  Ms. Reddick advised Mr. Howard

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 23
CV-06-327-EFS
#657989 v1 / 42703-001

1  she and her staff felt victimized and even a bit scared when they were subjected

2

3  to the material. She reported that she and her staff found the confrontation with

4  the patrons stressful and upsetting. Id. at ¶9.

5  92.  Jennifer Thompson, NCRL's Okanogan Branch Substitute Librarian,

6

7  recalled a specific incident (in approximately March 2007), where a patron was

8  accessing pornography on the Internet. More specifically, he was displaying the

9

10  rear view of a woman's private parts in full screen. Ms. Thompson told Mr.

11  Howard she felt immediately sickened that someone would have the nerve to

12

13  view this material in a place where others could see, including young kids that

14  might be using the computer. Ms. Thompson reported that viewing the image

15

16  made her feel uncomfortable and angry and that she believed the display was a

17  form of harassment. Id. at ¶10.

18  93.  Lucile Ames, NCRL's Okanogan Branch Librarian, reports having seen

19

20  inappropriate pornographic materials both on the computers and at the printers.

21  Ms. Ames told Mr. Howard she felt offended and uncomfortable when she

22  forced to view the material. Id. at¶11.

23

24

25

26  DEFENDANT NORTH CENTRAL
27  REGIONAL LIBRARY DISTRICT'S
   STATEMENT OF FACTS IN SUPPORT
28  OF MOTION FOR SUMMARY
   JUDGMENT - 24
   CV-06-327-EFS
   #657989 v1 / 42703-001

94.    Gailene Hooper, NCRL's Republic Branch Librarian, reported receiving multiple complaints from patrons about a man who, on more than one occasion, was able to access pornography.  Ms. Hooper felt uncomfortable dealing with the patron and discussing the patrons' complaints with him.  Ms. Hooper said she has felt threatened when she is in the library alone and a patron has managed to access an inappropriate site.  Id. at ¶12.

95.    Claire Kirkpatrick, NCRL's Grand Coulee librarian, reported a situation occurring before the Fortiguard filter was installed, when a man loaded pornographic photos to a public use computer.  These photos were seen by a 13-year old female student who was using the computer after the adult patron had left.  Ms. Kirkpatrick reported that she felt accosted and did not expect to be exposed to this type of material at work.  Id. at ¶13.

96.    Michelle Orosco, NCRL's Bridgeport Branch Librarian, reported a situation on December 28, 2007 when a male patron was using the Internet and printing pornographic images on the public printers.  Michelle said the pictures were sexual and extremely graphic.  Ms. Orosco said she was offended when she was forced to view them.  Id. at ¶14.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 25
CV-06-327-EFS
#657989 v1 / 42703-001

97.     Carla Loreto, a former branch librarian at NCRL's Wenatchee branch, reported a situation where she was helping a school age child do research on the public computers. Ms. Loreto suggested the child search Google images, prior to the category being blocked by NCRL administration. When Ms. Loreto typed in the subject, she received a sexually explicit photo of a naked man. Ms. Loreto felt embarrassed, confused and nervous, particularly given that the child had viewed the material. Id. at ¶15.

98.     Katy Sessions is the Wenatchee Library Supervisor. Ms. Sessions has reported seeing pornography on the public intent computers to include photographic depictions of sex and oral sex, as well as animated and cartoon depictions of sex acts. Most of the pornography Ms. Session's encountered was shortly after NCRL began offering the Internet (1998-2004). She reports that in the last year there have been fewer instances, particularly since the implementation of the Fortiguard filter. However, during the 1998-2004 period, Ms. Sessions was taking anti-anxiety medication to cope with uncomfortable confrontations with patrons regarding the Internet. Id. at ¶16.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 26
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

99.     NCRL is concerned incidents, such as those described in Paragraphs 91-98 above, could expose NCRL to liability for facilitating a hostile work environment. Id. at ¶17.

**H.     Effectiveness of the Fortiguard Filter**

100.     NCRL retained Professor Paul Resnick, to conduct a study to determine whether the NCRL filter blocks more content than they intend to block with its current filtering profile.  Resnick Decl. at ¶5.

101.     Mr. Resnick is a Professor at the University of Michigan School of Information.  Id. at ¶2., **Ex. A**.

102.     In 2002, Mr. Resnick conducted an assessment of the error rates on health-related websites of several commercial Internet filters.  That study was published in JAMA (Journal of the American Medical Association), the flagship peer reviewed journal of the American Medical Association. Id. at ¶3, **Ex. B**.

103.     A subsequent paper abstracting what Mr. Resnick had learned about the methods for conducting tests of filtering software was published in the Communications of the ACM, the flagship publication distributed to all members of the Association for Computing Machinery. Id. at ¶4., **Ex. C**.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 27
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

104. To estimate the amount of over blocking (blocking of sites that should be allowed under the library's policy), Mr. Resnick conducted a test based on the URLs actually visited at NCRL branch libraries during the week of August 23-29, 2007. Id. at ¶29.

105. Mr. Resnick believed conducting the test based on URLs actually visited was more meaningful than testing a random sample from the universe of all domain names, for several reasons. First, it allows for estimation of the overall impact on patron browsing, because it provides an estimate of how frequently blocks occur, in addition to assessing whether those blocks were in error. Second, patrons tend to visit more popular sites than a random sample of sites would include, and Mr. Resnick expected that FortiNet would make fewer classification errors on more popular sites. Id. at ¶30.

106. The complete test set consisted of 2380 distinct URLs, 2180 that would be blocked under NCRL's current filtering policy. The test set included all 289 URLs for complete web pages that were blocked during the week; the other URLs were for images, movies, or other elements that a web browser would display as part of a web page that it had already displayed. Id. at ¶31.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 28
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

107. In order to assess the reliability of the test, two individuals – referred to as "raters" - evaluated the items on the blocked pages. These raters did not talk to one another at all about each others' ratings. They also had no idea how the Internet filter had categorized the web pages, in order to keep them from being biased. Furthermore, some non-blocked sites were included so the raters did not assume that a site should fit into one of the "blocked" categories. Id. at ¶32.

108. Once all the rating were complete by the two raters, Dr. Derek Hansen, a colleague of Paul Resnick, independently rated all of the webpages where there was a disagreement between the first two raters or where one of the raters had "flagged" the site as difficult to rate. Id. at ¶33.

109. Dr. Hansen was not able to see the other rate's classifications so that his rating would be truly independent. Similarly, Fortinet classifications were not provided to Dr. Hansen, so not to bias him. Id. at ¶34.

110. In the one week period examined by Mr. Resnick, across all NCRL branches, only 20 pages were incorrectly blocked amount more than 60,000 page requests. Id. at ¶35.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 29
CV-06-327-EFS
#657989 v1 / 42703-001

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

111.   The study revealed that less than 1/3000 ($1/30^{th}$ of 1%) of patron request for webpages resulting in incorrect blocks.  Id. at ¶36.

112.   In reviewing the particular web-pages and full-size images that were blocked in error, Mr. Resnick did not detect any pattern that would suggest the errorw were anything but random.  Mr. Resnick did not find any reason to believe particular categories were being blocked, other than those NCRL explicitly chose to block. Id. at ¶37.

113.   Although Fortiguard was not the operative filter at the time Plaintiffs were attempting to access information through NCRL computers, none of the Plaintiffs contacted NCRL administration with their concerns that particular sites or categories of information were being improperly blocked by the operative filter prior to filing suit.  One only Plaintiff contacted NCRL with concerns, and he asked that the filter be completely removed.  Walters Decl. at ¶6; Marney Decl. at ¶47-58.

I.     **The Plaintiffs**

114.   Plaintiff Second Amendment Foundation ("SAF") is a not-for-profit educational, research, publishing and legal action group focusing on the

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 30
CV-06-327-EFS
#657989 v1 / 42703-001

constitutional right to own and possess firearms. See Ct. Rec 1.

115. SAF is headquartered in Bellevue, Washington. SAF maintains one of its publications, "Women & Guns," (www.womenandguns.com) is blocked by NCRL's Internet Filters. Id.

116. SAF's spokesman testified he had no personal knowledge whether the web site was actually blocked, but that an SAF member (or members) reported that the site was unavailable on NCRL computers. Adams Decl. at **Ex. A**.

117. SAF did not speak to NCRL staff or administrators about its concerns prior to filing suit. Marney Decl. at ¶47.

118. NCRL did not have an opportunity to investigate or potentially remedy the concerns. Id. at ¶48.

119. At this time, Women & Guns' website is available to NCRL patrons through the public use computers. Id. at ¶49.

120. Plaintiff Sarah Bradburn is a resident of Republic, Washington. See Ct. Rec 1.

121. Bradburn is a patron of the Republic branch of the NCRL system. Id.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 31
CV-06-327-EFS
#657989 v1 / 42703-001

122. Ms. Bradburn maintains she was unable to access information relating to youth tobacco usage as the information was blocked by NCRL's filter. Id.

123. Ms. Bradburn cannot articulate the specific sites she was attempting to access, nor can she identify the information was blocked as a result of the filter, as opposed to some other technical difficulty. Adams Decl at **Ex. B**.

124. Ms. Bradburn did not speak to NCRL staff or administrators about her concern prior to filing suit. Marney Decl. at ¶50.

125. NCRL did not have an opportunity to investigate or potentially remedy Bradburn's concerns. Id. at ¶51.

126. NCRL was utilizing the BESS filter at the time Ms. Bradburn was conducting her research, so it is not clear whether the sites she was attempting to access would be blocked by NCRL's current filtering profile or the Fortiguard filter. Id. at ¶52.

127. Plaintiff Pearl Cherrington is a resident of Twisp, Washington. Adams Decl, See Ct. Rec 1.

128. Ms. Cherrington is a patron of the Twisp branch of NCRL. Id.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 32
CV-06-327-EFS
#657989 v1 / 42703-001

129. Ms. Cherrington alleges she attempted to use computers maintained by NCRL to conduct research and obtain information regarding art and health topics, but that her attempts were restricted by the NCRL filter. Id.

130. Ms. Cherrington cannot articulate the specific sites she was attempting to access, nor can she identify the information was blocked as the result of the fitler, as opposed to a technical difficulty. Adams Decl. at **Ex. C**.

131. In discovery responses, Ms. Cherrington claims she also attempted to access the website YouTube.com. Id. at **Ex. D**.

132. YouTube.com is not currently blocked under NCRL's filtering profile. Marney Decl. at ¶56.

133. Ms. Cherrington did not speak to any NCRL staff or administrator about her Internet access concerns prior to filing suit. Id. at ¶53.

134. NCRL did not have an opportunity to investigate or potentially remedy Mc. Cherrington's concerns. Id. at ¶54.

135. NCRL was utilizing the BESS filter at the time Ms. Cherrington was conducting her research, so it is not clear whether the sites she was attempting to

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 33
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

access would be blocked by NCRL's current filtering profile or the Fortiguard filter. Id. at ¶55.

136. Plaintiff Charles Heinlen is a resident of Okanogan, Washington. Adams Decl., See Ct. Rec 1.

137. Mr. Heinlen is a patron of the Omak, Okanogan and Wenatchee branches of the NCRL. Id.

138. Mr. Heinlen maintains he attempted to conduct research and obtain information related to firearms which was restricted by NCRL's Internet Filters. He claims he was also denied to various dating sites, Soldier of Fortune Magazine and the Web log ("blog") he maintains at www.myspace.com, as well as photos embedded in commercial emails sent to his Hotmail and Yahoo email accounts. Id.

139. Mr. Heinlen is the only Plaintiff who spoke to NCRL staff and administrators prior to filing suit. However, Mr. Heinlen simply demanded the filter be removed and did not request specific sites be unblocked. Marney Decl. at ¶57.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 34
CV-06-327-EFS
#657989 v1 / 42703-001

140.   Pursuant to its Internet Public Use Policy, NCRL's refuses to completely disable the filter. Id. at ¶ 60.

141.   Mr. Heinlen believes he should have access to pornography, content directed toward illegal activity, and constitutionally-unprotected speech through NCRL computers. Adams Decl. at **Ex. E**.

**J.     Procedural History**

142.   On or around November 20, 2006, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against NCRL in federal court in Washington's Eastern District.   Collectively, Plaintiffs seek remedies under 28 USC §§2201 and 2202, 42 USC §§1983 and 1988 and Federal Rule of Civil Procedure 65.  See Ct. Rec. 1.

143.   In their Prayer for Relief, Plaintiffs ask the Court to declare that NCRL's policy of refusing to disable its Internet filters upon the request of adult who wish to conduct bona fide research or to access the Web for other lawful purposes violates the First Amendment of the United States Constitution and Article I, Section 5 of the Washington State Constitution.  Id.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 35
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

144.  Plaintiffs seek an order directing the NCRL and its officers, agents, servants and employees to disable the filters upon request of adults who wish to use the Internet for these reasons.  Id.

145.  On or around December 26, 2006, NCRL answered Plaintiffs' Complaint. See Ct. Rec 5.

146.  In its answer, NCRL denied that a case or controversy existed on the grounds that: (1) a new filter has been installed and (2) there was no evidence that Plaintiffs' could not now access the sites which they alleged were previously blocked.  Id.

147.  In its answer, NCRL stated Article 1, Section 5 of the Washington Constitution does not require NCRL to completely disable its Internet filter at an adult patrons request.  Id.

148.  In its Answer, NCRL stated the First Amendment of the United States Constitution does not require NCRL to completely disable its Internet filter at an adult patrons request.  Id.

**K.     Additional Documents Referenced in Moving Papers**

149.  In 2003, 12 librarians brought hostile work claims against the Minnesota

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 36
CV-06-327-EFS
#657989 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Public Library due to the proliferation of pornography and other sexually-explicit material accessed by patrons on library computers. The case was discussed in a August 16, 2003 article from Brainerddispatch.com, "Librarians Settle Internet Porn Case," obtained on-line January 30, 2008. Adams Decl. **Ex. G**.

150. Recent reports from Dallas, Texas disclosed that library patrons accessed 5,200 web pages containing pornographic material in a 45 minute period on a single day. This study was discussed in a January 15, 2008 article from The Dallas Morning News, "On Dallas Library Computers, Porn is a Regular Sight," obtained on-line January 22, 2008. Adams Decl., **Ex. F**.

//

//

//

//

//

//

//

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 37
CV-06-327-EFS
#657989 v1 / 42703-001

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

DATED this 4th day of February, 2008.

KARR TUTTLE CAMPBELL

By:*/s/ Thomas D. Adams*
Thomas D. Adams, WSBA #18470
E-mail – tadams@karrtuttle.com
Celeste Mountain Monroe, WSBA #35843
E-mail – cmonroe@karrtuttle.com
Attorneys for Defendant North Central
Regional Library District
KARR TUTTLE CAMPBELL
1201 Third Ave., Ste. 2900
Seattle, WA 98101
Telephone: 206.233.1313
Facsimile: 206.682.7100

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 38
CV-06-327-EFS
#657989 v1 / 42703-001

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

Duncan Manville
1629 2nd Ave. W
Seattle, WA 98119

Aaron Caplan
ACLU of Washington
705 Second Ave., Ste. 300
Seattle, WA 98103

Notice has been delivered by U.S. Mail to:

Catherine Crump
American Civil Liberties Union Foundation
125 Broad Street, 17th Floor
New York, NY 10004

KARR TUTTLE CAMPBELL

By: _____
     Heather L. White
     hwhite@karrtuttle.com

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF FACTS IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT - 39
CV-06-327-EFS
#657989 v1 / 42703-001