# Exhibit G

Thomas D. Adams, WSBA #18470
tom.adams@bullivant.com
Bullivant Houser Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930
Facsimile: 206.386.5130

Attorneys for Defendant North Central
Regional Library District

THE HONORABLE EDWARD F. SHEA

JUN 19 2007
Karel MANVILLE PLLC

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### AT SPOKANE

SARAH BRADBURN, PEARL
CHERRINGTON, CHARLES HEINLEN,
and the SECOND AMENDMENT
FOUNDATION,

        Plaintiffs,

    v.

NORTH CENTRAL REGIONAL LIBRARY
DISTRICT,

        Defendant.

No.: CV-06-327-EFS

DEFENDANT'S RESPONSES TO
PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS
FOR PRODUCTION

TO:       Sarah Bradburn, Pearl Cherrington, Charles Heinlen, and the Second
             Amendment Foundation, Plaintiffs

AND TO:    Duncan Manville and Robert A. Hyde, Their Attorneys of Record

## GENERAL RESPONSE AND OBJECTION

In accordance with Civil Rules 26, 33 and 34, Defendant North Central Regional

Library District responds to Plaintiffs' First Interrogatories and Requests for Production of

Documents. Defendant objects, to the extent Plaintiffs' Interrogatories and Requests for

Production of Documents seek information not discoverable under the Civil Rules or seek to

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 1

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

ORIGINAL

99

1  impose obligations not expressly provided for under the Civil Rules, specifically including
2  but not limited to the instructions regarding identifying and producing documents protected
3  from disclosure, as well as improper implications that the interrogatories and requests for
4  production are "continuing" to any extent beyond the scope of CR 26(e).

5       The answers herein are based upon information obtained to date.  Defendant
6  expressly reserves the right to supplement or revise its responses, if necessary.

### ANSWERS AND OBJECTIONS

### INTERROGATORIES

### INTERROGATORY NO. 1:

     For each branch library that the <u>NCRL</u> operates, (a) <u>identify</u> the system, product or
service that is presently being used to filter World Wide Web content; (b) state when that
system, product or service was put into use; and (c) <u>identify</u> all systems, products and
services that were previously used to filter World Wide Web content.

### ANSWER:

     Defendant NCRL objects to this interrogatory on the grounds that it seeks information
that is not reasonably calculated to lead to the discovery of admissible evidence.
Specifically, Plaintiffs ask Defendant NCRL to "identify all systems, products and services
that were previously used to filter World Wide Web content."  Defendant NCRL has had the
same filter in place since Plaintiffs' filed this lawsuit, which was installed as part of a
comprehensive global information technology upgrade.  Information regarding the earlier
filtering products and services is irrelevant to the issue raised Plaintiff's Complaint for
Injunctive Relief, namely whether Defendant NCRL's application of the current filter is
constitutional.  Although Defendant NCRL is willing to provide general information about
the prior filter, it would be unduly burdensome for Defendant NRCL to produce all of the
specific and/or technical information requested by Plaintiffs.  Defendant NCRL further

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 2

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

100

objects to this interrogatory to the extent that it seeks proprietary information regarding a given filtering company's systems, products or services.

Subject to, and without waiving these objections, Defendant NCRL responds as follows:

In December 2000, NCRL purchased N2H2 Web Filtering Redirect. At the time, NCRL had Internet access in only seven branch locations, including: Cashmere, Chelan, Ephrata, Moses Lake, Omak, Quincy and Wenatchee. The N2H2 filtering service was utilized in each of these locations. In 2001, NCRL added Internet terminals in Republic and Leavenworth. The next year, it had access at all of its branches. In August 2003, NRCL received an additional public computer for each if its branch locations through a grant from the Bill and Melinda Gates Foundation. NCRL purchased additional licenses from N2H2 throughout 2001-2003 as additional computers were added to the system.

In October 2003, Secure Computing Inc. acquired content–filtering vendor N2H2 and changed its name to Bess Web Filtering Redirect Service. This was a seamless change for the library in that it only affected the name of the company receiving payment.

In December 2004, Secure Computing discontinued Bess and the company "TIES" purchased the rights. Again, this was a seamless change. Initially, NCRL only signed up for a six-month contract as it was looking into in-house filtering solutions.

In May 2005, NCRL purchased five wireless Internet routers from NLE, a SirsiDynix partner. Because Bess did not use a transparent proxy, custom programming had to be completed on the wireless routers. This delayed the project several months. NCRL recommended an in-house filtering product called Fortinet. NCRL could not act immediately, however, as it had already extended its contract with TIES. In February 2006, TIES discontinues using Bess and replaced it with a filter called 8e6.

In the Spring of 2006, NCRL started researching several "in-house" filtering products including Cisco Pix Firewalls, Fortinet/Fotiguard, and a content filtering company based in

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 3

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone 206.292.8930

101

1 Canada. NCRL ultimately chose Fortinet/Fortiguard for several reasons, including: seamless

2 integration with current wireless products; customer service/support; remote hardware

3 management; automatic and daily updates; spam/virus/intrusion protection with VPN

4 capabilities; and a free upgrade to wireless routers.

5       Fortiguard is a product and service of Fortinet. Fortiguard routers are currently

6 installed at all 28 NCRL branch locations. The first router was installed in the Wenatchee

7 branch on August 26, 2006, but due to hardware failure it had to be replaced. NCRL did not

8 go live with that router until September 1, 2006. The last router was installed in the Chelan

9 branch on November 22, 2006.

10 **INTERROGATORY NO. 2:**

11       For each branch library that the NCRL operates and each system, product or service

12 that the NCRL has used to filter World Wide Web content, (a) describe all methods (e.g.,

13 banned word lists, wildcard pattern matching, multi-language pattern matching, URL

14 blocking lists, World Wide Web pattern lists, URL exemption lists, World Wide Web

15 exemption lists, World Wide Web application blocking, category blocking, etc.) that the

16 NCRL has used to filter World Wide Web content; and (b) state the time periods during

17 which each such method has been used.

18 **ANSWER:**

19       NCRL's objections to Interrogatory No. 1 are incorporated by reference. Subject to

20 and without waiving these objections, NCRL answers as follows:

21       The Fortinet/Fortiguard filter (hereinafter "Fortiguard") utilizes URL blocking lists,

22 URL exemption lists and category blocking. Fortiguard has applied these methods for as

23 long as NCRL has used this filter (September 2006 to the present).

24       The methods utilized by N2H2, Bess, TIES or 8e6 are not relevant to the present

25 litigation. The efforts necessary to answer questions related to these products is unduly

26 burdensome.

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 4

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

102

## INTERROGATORY NO. 3:

For, each branch library that the NCRL operates and for each method (e.g., banned word lists, wildcard pattern matching, multi-language pattern matching, URL blocking lists, World Wide Web pattern lists, URL exemption lists, World Wide Web exemption lists, World Wide Web application blocking, category blocking, etc.) that the NCRL has used to filter World Wide Web content, (a) describe how the method has been configured; and (b) if the method was reconfigured at any time, state when, why and by whom the method was reconfigured. For example, if the NCRL has used category blocking to filter World Wide Web content, state what categories of World Wide Web content have been blocked; and state when, why and by whom any revisions to those categories were made.

## ANSWER:

NCRL's objections to Interrogatory No. 1 are incorporated by reference. Subject to and without waiving these objections, NCRL responds as follows.

The Fortinet web filtering services is made up of two major components: (1) the Fortiguard Rating Server; and (2) the Fortigate Antivirus Firewall. In order to explain how the system works and the components interact, consider the following scenario. A NCRL library patron sits down an Internet accessible computer at any branch location and types in a "URL" (for example www.universityofwashington.edu). If the rating for the URL is already cached in the FortiGate Firewall/Router unit ("Forigate Unit"), it is immediately compared with the policy for the user. If the site is allowed, the page is requested and the response is retrieved. If the URL rating is not in the FortiGate cache, the page is requested and a rating request is made simultaneously to the FortiGuard Rating Server. When the rating response is received by the FortiGate Unit from the Rating Server, it is compared with the library's Internet usage policy. The response from the URL/web site is queued by the FortiGate Unit if necessary until the rating is received. If the policy is to allow the page, the Web site

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 5

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

103

1 response is passed to the library patron. Otherwise, a user-definable "blocked" message is
2 sent to the patron and the event is logged in the content filtering log.

3      The Fortiguard Rating Server has 56 web content categories, over 30 million rated
4 domains and more than two billion web pages. There are two individuals at NCRL who
5 evaluate the 56 categories and determine which categories should be blocked, based on
6 NCRL's Internet Usage Policy. Those individuals are Dean Marney and Dan Howard.
7 NCRL's Internet Usage Policy is attached as **Ex. A** to NCRL's responses to Plaintiffs' First
8 Discovery Requests.

9      There have been a few changes to the blocked categories since the Fortinet filter was
10 installed in the first NCRL branch in September 2006. Those changes are documented in
11 correspondence attached as **Ex. B** to NCRL's responses to Plaintiffs' First Discovery
12 Requests. All changes are consistent with the libraries Internet Usage Policy. To that point,
13 where a patron believes that a URL has been improperly blocked, he or she may request that
14 the site be unblocked. If the patron's request is consistent with the libraries Internet Usage
15 Policy, the site is unblocked on all NCRL branch computers.

16

17 **INTERROGATORY NO. 4:**

18      Do you deny that, as alleged in Paragraph 16 of the <u>Complaint</u>, the <u>NCRL</u> will not,
19 upon request, disable the Internet filters that it has installed on its publicly-available
20 computers in order to allow adult library patrons to conduct bona fide research via the
21 Internet or to access the World Wide Web for other lawful purposes? If so, (a) state all facts
22 on which You base <u>your</u> denial; (b) <u>identify</u> every <u>person</u> with knowledge <u>relating to</u> <u>your</u>
23 denial and summarize the knowledge possessed by each such <u>person</u>; and (c) <u>identify</u> every
24 <u>document</u> supporting <u>your</u> denial.

25      **ANSWER:** NCRL objects to this interrogatory on the grounds that it vague and
26 ambiguous. Subject to, and without waiving this objection, NCRL responds as follows.

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 6

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone 206 292 8930

104

NCRL's Internet Usage Policy reads:

> The mission of the North Central Regional Library is to promote reading and lifelong learning. Internet access is offered as one of many information resources supporting that mission. The Internet is currently an unregulated medium. While the Internet offers access to materials that are enriching to users of all ages, the Internet also enables access to some materials that may be offensive, disturbing, or illegal. There is no guarantee that information obtained through the Internet is accurate or that individuals are who they represent themselves to be. The library district recognizes that it cannot fully control the amount of material accessible through the Internet but will take reasonable steps to apply to the Internet the selection criteria stated in the Collection Development Guidelines and Procedures. All Internet access on NCRL library computers is filtered. The library district does not host customer e-mail accounts or provide access to chat rooms. The library district cannot guarantee privacy for individuals using library public access computers to search the Internet and computer screens may be visible to people of all ages, backgrounds, and sensibilities. Customers are requested to exercise appropriate discretion in viewing materials or submitting sensitive personal information. Minors, in particular, are discouraged from sharing personal information online. Hacking and other unlawful online activities are prohibited. The District's director is responsible for establishing procedures to carry out this policy.

Consistent with this policy, NCRL will not completely remove the Internet filter at an adult patrons request. This is because removal would allow an adult patron to view child pornography, obscenity, pornography and other harmful material - all of which is either unprotected or potentially disruptive in a library setting. Unlike some large public libraries (such as the Seattle Public Library), NCRL does not employ a security guard to serve as a "human filter," nor is it clear such measures would comply with the NRCL's legal obligations. The majority of the NCRL branch locations are small, one room libraries staffed by a single librarian. NCRL employs an electronic filter to enforce its stated policy – a policy which is not unlike many of those adopted by libraries across the country which prohibit the viewing of child pornography, pornography, obscenity or material that is harmful to minors. Where occasional errors arise, any patron (child or adult) who believes that a site has been improperly blocked can fill out a "Material Request Form" and request access to a

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 7

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

105

1  given site. Dean Marney and/or Dan Howard will review the request, often within matter of

2  hours, and make a determination as to whether the site was improperly blocked. If so, the

3  filter is removed as to that website on all branch library computers.

4

5  **INTERROGATORY NO. 5**:

6  With regard to each and every affirmative defense alleged in your Answer, (a) state

7  all facts on which you base the defense; (b) identify every person with knowledge relating to

8  the defense and summarize the knowledge possessed by each such person; and (c) identify

9  every document that you believe supports the defense.

10  ANSWER:

11  NCRL objects to this interrogatory on the grounds that it is premature. Discovery is

12  not complete. There may be additional facts, individuals and evidence that NCRL may

13  ultimately offer in support of its affirmative defenses when the discovery period has ended.

14  For this reason, NCRL reserves its right to supplement its answer to this interrogatory.

15  Subject to and without waiving the above stated objection, NCRL answers as follows:

16  NCRL believes that Plaintiffs have: (1) failed to state a claim upon which relief can

17  be granted; (2) that Plaintiffs claims are moot; (3) that Plaintiffs have failed to allege facts

18  constituting a present case or controversy; and (4) that Plaintiffs claims are not well

19  grounded on the basis that the filter that was in use at the time that Plaintiffs filed the action

20  (BESS) was replaced by a new filter (Fortinet/Fortiguard). NCRL has produced substantial

21  evidence regarding this change, both attached hereto and in its Initial Disclosures.

22  Moreover, NCRL believes that one or more Plaintiffs' are now able to access the site

23  or sites, which they alleged were previously blocked. Furthermore, without further discovery

24  it is premature to assume that the sites Plaintiffs claim they cannot access were legal or not

25  otherwise disruptive in a library setting. Plaintiffs have not yet disclosed the specific sites

26  that they were attempting to reach.

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 8

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

106

1    Furthermore, Plaintiffs never asked any NCRL employee to unblock a particular site

2    prior to filing suit, so they never allowed the administration to review the request per its

3    policy. The individuals with relevant knowledge include Dean Marney and Dan Howard, as

4    well as the Plaintiffs themselves. Certain library branch librarians may have additional

5    information on this point.

6    To the extent that Plaintiffs' believe that NCRL is required to completely remove the

7    filter at an adult patron's request for bone fide research or other lawful purposes, NCRL

8    disputes that this belief is consistent with the requirements of the Children's Internet

9    Protection Act.

10    To the extent that Plaintiffs have not been deprived of their rights, privileges, or

11    immunities under the Constitution, Plaintiffs claims are not actionable under 42 U.S.C 1983.

12

13    **INTERROGATORY NO. 6:**

14    For each branch library that the <u>NCRL</u> operates, (a) how many computer terminals

15    with access to the World Wide Web are available for use by members of the public, (b) how

16    are the terminals assigned to users (sign-up, first-come first-served, etc.), and (c) for how

17    much time each day are the computer terminals used?

18    **ANSWER:**

19    Please see **Ex. C** to NCRL's responses to Plaintiff's First Discovery Requests for a

20    chart detailing the number of Internet accessible computers at each branch location.

21    Terminals are assigned to users on a first-come, first-served basis. However, some of the

22    branches will experiment with Internet reservations later this summer.

23    Attached as **Ex. D** is an example of a monthly usage log for May 2007. If Plaintiff

24    seeks the same information for additional months, please advise.

25

26

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST          Page 9          Bullivant|Houser|Bailey PC
INTERROGATORIES AND REQUESTS FOR PRODUCTION

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

107

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Produce all documents relating to (a) the system, product or service that is presently being used to filter World Wide Web content at each branch library that the NCRL operates; (b) when that system, product or service was put into use; and (c) all systems, products and services that were considered or previously used to filter World Wide Web content at each of the NCRL's branch libraries.

### RESPONSE:

NCRL objects to this request for production on the grounds that it is overly broad and unduly burdensome. NCRL further objects on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, particularly with respect to requests for documentation of the "systems, products and services that were considered or previously used to filter World Wide Web content at each of the NCRL's branch libraries." In so much as Plaintiffs' have raised an as-applied challenge and are seeking an order requiring NCRL to remove the current filter at an adult patrons request, NCRL should not be required to research or otherwise produce information on filters that it no longer uses or never used. Furthermore, NCRL objects to the extent that some of the information that Plaintiffs seek is proprietary and, therefore, not discoverable. Subject to and without waiving these objections, NCRL responds as follows:

NCRL provided information about the Fortinet/Fotiguard system and when it was put into use in its Initial Disclosures. NCRL further supplements those disclosures with information responsive to this specific request for production as Ex. E, attached hereto. Additional information may be available at www.fortinet.com.

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 10

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

108

**REQUEST FOR PRODUCTION NO. 2:**

Produce all <u>documents</u> <u>relating to</u> all methods (e.g., banned word lists, wildcard pattern matching, multi-language pattern matching, URL blocking lists, World Wide Web pattern lists, URL exemption lists, World Wide Web exemption lists, World Wide Web application blocking, category blocking, etc.) that the <u>NCRL</u> has used to filter World Wide Web content at each branch library that the <u>NCRL</u> operates.

**RESPONSE:**

NCRL's objections to Request for Production No. 1 are incorporated by reference. Subject to and without waiving these objections, NCRL answers as follows:

Please see **Exs. B and E** attached hereto. Please see documents produced in NCRL's initial disclosures.

**REQUEST FOR PRODUCTION NO. 3:**

Produce all <u>documents</u> <u>relating to</u> the manner in which each method (e.g., banned word lists, wildcard pattern matching, multi-language pattern matching, URL blocking lists, World Wide Web pattern lists, URL exemption lists, World Wide Web exemption lists, World Wide Web application blocking, category blocking, etc.) that the <u>NCRL</u> has used to filter World Wide Web content has been configured at each branch library that the <u>NCRL</u> operates.

**RESPONSE:**

Please see objections and answers to RFP #2 above.

**REQUEST FOR PRODUCTION NO. 4:**

Produce all <u>documents</u> <u>identified</u> or requested to be <u>identified</u> in <u>your</u> answer to Interrogatory No. 4.

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 11

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

109

1     **RESPONSE:**

2     NCRL's objections to Request for Production No. 1 are incorporated by reference.

3 Subject to and without waiving these objections, NCRL answers as follows:

4     Please see **Exs. A, B and E** attached hereto.

5

6     **REQUEST FOR PRODUCTION NO. 5:**

7     Produce all <u>documents</u> <u>identified</u> or requested to be <u>identified</u> in <u>your</u> answer to

8 Interrogatory No. 5.

9     **RESPONSE:**

10     Please see Initial Disclosures and **Exs. A-I.**

11

12     **REQUEST FOR PRODUCTION NO. 6:** Produce the following <u>documents</u>:

13     (a)    All internal and external memoranda and correspondence (whether with

14 members of the public, with vendors, among library staff, or otherwise) <u>relating to</u> the

15 filtering of World Wide Web content.

16     (b)    All policies, instructions, and directions <u>relating to</u> the configuration or use of

17 each system, product or service that the <u>NCRL</u> has used to filter World Wide Web content at

18 each branch library that the <u>NCRL</u> operates.

19     (c)    Minutes of all meetings where the filtering of World Wide Web content was

20 discussed.

21     (d)    Any logs showing times when any system, product or service that the <u>NCRL</u>

22 has used to filter World Wide Web content has been disabled, or showing requests to disable

23 such system, product or service.

24     (e)    Any list of World Wide Web sites access to which has been blocked by any

25 system, product or service that the <u>NCRL</u> has used to filter World Wide Web content, and all

26

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 12

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

110

1 documents (including without limitation messages or correspondence from patrons of the
2 NCRL) indicating that access to any World Wide Web site has been blocked.

3     (f)    User's manuals for each system, product or service that the NCRL has used to
4 filter World Wide Web content at each branch library that the NCRL operates.

5     (g)    The actual configuration file used by the NCRL in configuring each system,
6 product or service that the NCRL has used to filter World Wide Web content at each branch
7 library that the NCRL operates.

8 **RESPONSE:**

9     NCRL's objections to Request for Production No. 1 are incorporated by reference.
10 NCRL also objects to the extent that these requests seek materials that are protected by
11 attorney client privilege or the work product doctrine. Subject to and without waiving these
12 objections, NCRL answers as follows:

13     (a) NCRL produced information responsive to this request in its Initial Disclosures.
14 To the extent that NCRL has obtained new information, generated new material or has
15 become aware of Plaintiffs' desire for additional materials, NCRL has included information
16 responsive to these requests as **Ex. F**, attached hereto.

17     (b) NCRL objects to the extent that this question is overly broad and unduly
18 burdensome, seeking information

19     (c) All meeting minutes have been produced or are otherwise supplemented by
20 **Ex. G**.

21     (d) Prior to this lawsuit, NCRL did not maintain logs that detail when the filter has
22 been disabled. Requests to have particular sites removed are included in **Ex. F**.

23     (e) NCRL does not currently maintain a log of sites that have been blocked by its
24 filter, except to the extent that there is a log that tracks spam and viruses blocked by the
25 filter. If Plaintiff would like an example of this log, please advise.

26

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST     Page 13      Bullivant|Houser|Bailey PC
INTERROGATORIES AND REQUESTS FOR PRODUCTION

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone 206 292 8930

111

1       (g) NCRL objects to this interrogatory on the grounds that it seeks proprietary

2 information. The requested "configuration file" is a combination of hardware, software and

3 proprietary information that cannot be produced. NCRL has produced the current categorical

4 configuration and definitions of each category. To the extent that Plaintiffs are seeking this

5 information for the purposes of performing a test of the filter, we will work with Plaintiff to

6 the extent that it is reasonably possible or permissible.

7 **REQUEST FOR PRODUCTION NO. 7:**

8       Produce all grant applications and grant contracts <u>relating to</u> Internet service that the

9 <u>NCRL</u> has submitted to or entered into with the Gates Foundation or other finders (including

10 without limitation the Institute of Museum and Library Services, the Federal

11 Communications Commission, and any state agencies).

12 **RESPONSE:**

13       NCRL produced information responsive to this request in its Initial Disclosures,

14 including its E-Rate applications. To the extent that the Gates Grant Application is

15 responsive to this request, NCRL has attached it as **Ex. G** to these responses.

16

17 **REQUEST FOR PRODUCTION NO. 8:**

18       Produce all contracts between the <u>NCRL</u> and any Internet service provider.

19 **RESPONSE:**

20       Please see **Ex. H**.

21

22 **REQUEST FOR PRODUCTION NO. 9:**

23       Produce a list of all employees of the <u>NCRL</u> and a chart showing how the <u>NCRL</u> is

24 organized.

25

26

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 14

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

112

RESPONSE:

Information responsive to this request was provided in our Initial Disclosures. Individual Branch Librarians Managers are also identified on the NCRL website. To the extent that you wish you to contact these individuals, we ask that you do so through Tom Adams at Bullivant Houser Bailey, PC, 1601 5th Ave, Seattle, WA 98101.

If, despite the information already provided, Plaintiffs' counsel seeks the identities of any additional full/part time employees, we invite counsel to contact defense counsel to discuss the same.

**REQUEST FOR PRODUCTION NO. 10:**

Produce every other <u>document</u>, not produced in response to one of the foregoing requests for production, <u>relating to</u> any of the facts or allegations set forth in the <u>Complaint</u>, or to any of <u>your</u> denials, defenses, contentions or allegations in this litigation.

RESPONSE:

At this time, NRCL believes that it has complied with the Initial Disclosure Requirements set forth in the Federal Rules and that it has done its due diligence to produce documents responsive to Plaintiffs' First Interrogatories and Requests for Production. NCRL will continue to supplement its responses as discovery continues.

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 15

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1618
Telephone: 206.292.8930

113

## CERTIFICATION

ANSWERS DATED this 18th day of June, 2007 in accordance with CR 26(g).

BULLIVANT HOUSER BAILEY PC

By _Celeste M._
Thomas D. Adams, WSBA #18470
E-mail: tom.adams@bullivant.com
Celeste Mountain Monroe, WSBA #35843
E-mail: celeste.monroe@bullivant.com

Attorneys for Defendant North Central Regional
Library District

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST
INTERROGATORIES AND REQUESTS FOR PRODUCTION

Page 16

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

114

1

2　　　　　　　　　　　　**VERIFICATION**

3

4　STATE OF WASHINGTON　　　　）
　　　　　　　　　　　　　　　　　　　）
5　COUNTY OF_____）

6　　　　_____, being first duly sworn on oath, deposes and says:

7　　　That I am the _____ of the North Central Regional Library District in the
　above cause of action; that I have read the foregoing answers to discovery and know the
8　contents thereof, and I declare under penalty of perjury under the laws of the State of
　Washington that the answers are true and complete, to the best of my information and belief.

9　　　DATED this _____ day of June, 2007, at _____, Washington.

10

11　　　　　　　　　　　　　　　　　By: _____

12　　　　　　　　　　　　　　　　　(Print Name) _____

13　　　　　　　　　　　　　　　　　Its: _____

14

15　　　SUBSCRIBED AND SWORN TO before me this ____ day of June, 2007.

16

17　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　NOTARY PUBLIC in and for the
18　　　　　　　　　　　　　　　　　State of Washington, residing at _____
　　　　　　　　　　　　　　　　　_____
19　　　　　　　　　　　　　　　　　My commission expires: _____

20　3530310.1

21

22

23

24

25

26

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST　　　　Page 17　　Bullivant|Houser|Bailey PC
INTERROGATORIES AND REQUESTS FOR PRODUCTION

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

## VERIFICATION

2

3

STATE OF WASHINGTON )

4

COUNTY OF_____Chelan_____ )

5

_____Dean C. Marney_____, being first duly sworn on oath, deposes and says:

6

That I am the _____Director_____ of the North Central Regional Library District in the
7 above cause of action; that I have read the foregoing answers to discovery and know the
contents thereof, and I declare under penalty of perjury under the laws of the State of
8 Washington that the answers are true and complete, to the best of my information and belief.

9

DATED this _18th_ day of June, 2007, at _Wenatchee_____, Washington.

10

11

By: _Dean C. Marney_

12

(Print Name) _Dean C. Marney_____

13

Its: _____Director_____

14

15

SUBSCRIBED AND SWORN TO before me this _18th_ day of June, 2007.

16

17

_Susan R. DeWitt_

NOTARY PUBLIC in and for the
18 State of Washington, residing at _Wenatchee,_

_Chelan County_
19 My commission expires: _10/07/09_

3530310.1

20

21

22

23

24

25

26

DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST          Page 17      Bullivant|Houser|Bailey PC
INTERROGATORIES AND REQUESTS FOR PRODUCTION

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

116

# Exhibit B

## FortiGuard Web Filtering

| | HTTP | HTTPS |
|---|---|---|
| Enable FortiGuard Web Filtering | ☑ | ☑ |
| Enable FortiGuard Web Filtering Overrides | ☐ | ☐ |
| Provide details for blocked HTTP 4xx and 5xx errors | ☐ | |
| Rate images by URL (blocked images will be replaced with blanks) | ☑ | |
| Allow websites when a rating error occurs | ☑ | ☑ |
| Strict Blocking | ☐ | ☐ |
| Rate URLs by domain and IP address | ☐ | ☐ |

| Category | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| ▼ Potentially Liable | ○ | ○ | ☐ | ☐ |
| Drug Abuse | ◉ | ○ | ☐ | ☐ |
| Occult | ◉ | ○ | ☐ | ☐ |
| Hacking | ○ | ◉ | ☐ | ☐ |
| Illegal or Unethical | ◉ | ○ | ☐ | ☐ |
| Racism and Hate | ◉ | ○ | ☐ | ☐ |
| Violence | ◉ | ○ | ☐ | ☐ |
| Marijuana | ◉ | ○ | ☐ | ☐ |
| Folklore | ◉ | ○ | ☐ | ☐ |
| Proxy Avoidance | ○ | ◉ | ☐ | ☐ |
| Web Translation | ◉ | ○ | ☐ | ☐ |
| Phishing | ○ | ◉ | ☐ | ☐ |
| Plagiarism | ◉ | ○ | ☐ | ☐ |

| Category | Allow | Block | ☐ | ☐ |
|---|---|---|---|---|
| **▼ Controversial** | ○ | ○ | ☐ | ☐ |
| Abortion | ● | ○ | ☐ | ☐ |
| Adult Materials | ○ | ● | ☐ | ☐ |
| Advocacy Organizations | ● | ○ | ☐ | ☐ |
| Gambling | ○ | ● | ☐ | ☐ |
| Extremist Groups | ● | ○ | ☐ | ☐ |
| Nudity and Risque | ○ | ● | ☐ | ☐ |
| Pornography | ○ | ● | ☐ | ☐ |
| Tasteless | ● | ○ | ☐ | ☐ |
| Weapons | ● | ○ | ☐ | ☐ |
| Sex Education | ● | ○ | ☐ | ☐ |
| Alcohol | ● | ○ | ☐ | ☐ |
| Tobacco | ● | ○ | ☐ | ☐ |
| Lingerie and Swimsuit | ● | ○ | ☐ | ☐ |
| Sports Hunting and War Games | ● | ○ | ☐ | ☐ |
| **▼ Potentially Non-productive** | ○ | ○ | ☐ | ☐ |
| Advertising | ● | ○ | ☐ | ☐ |
| Brokerage and Trading | ● | ○ | ☐ | ☐ |
| Freeware Downloads | ● | ○ | ☐ | ☐ |
| Games | ● | ○ | ☐ | ☐ |
| Web-based Email | ● | ○ | ☐ | ☐ |
| Web Chat | ○ | ● | ☐ | ☐ |
| Instant Messaging | ○ | ● | ☐ | ☐ |
| Newsgroups and Message Boards | ● | ○ | ☐ | ☐ |
| Digital Postcards | ● | ○ | ☐ | ☐ |

| | | | | |
|---|---|---|---|---|
| ▼ Potentially Bandwidth Consuming | ⦿ | ○ | □ | □ |
| Peer-to-peer File Sharing | ⦿ | ○ | □ | □ |
| Personal Storage | ⦿ | ○ | □ | □ |
| Multimedia Download | ⦿ | ○ | □ | □ |
| Internet Radio and TV | ⦿ | ○ | □ | □ |
| Internet Telephony | ⦿ | ○ | □ | □ |
| ▼ Potential Security Violating | ○ | ⦿ | □ | □ |
| Malware | ○ | ⦿ | □ | □ |
| Spyware | ○ | ⦿ | □ | □ |

| General Interest | ○ | ○ | ☐ | ☐ |
|---|---|---|---|---|
| Arts and Entertainment | ◉ | ○ | ☐ | ☐ |
| Culture | ◉ | ○ | ☐ | ☐ |
| Education | ◉ | ○ | ☐ | ☐ |
| Finance and Banking | ◉ | ○ | ☐ | ☐ |
| Homosexuality | ◉ | ○ | ☐ | ☐ |
| Health and Wellness | ◉ | ○ | ☐ | ☐ |
| Job Search | ◉ | ○ | ☐ | ☐ |
| Medicine | ◉ | ○ | ☐ | ☐ |
| News and Media | ◉ | ○ | ☐ | ☐ |
| Personal Relationships | ○ | ◉ | ☐ | ☐ |
| Political Organizations | ◉ | ○ | ☐ | ☐ |
| Reference | ◉ | ○ | ☐ | ☐ |
| Religion | ◉ | ○ | ☐ | ☐ |
| Search Engines | ◉ | ○ | ☐ | ☐ |
| Shopping and Auction | ◉ | ○ | ☐ | ☐ |
| General Organizations | ◉ | ○ | ☐ | ☐ |
| Society and Lifestyles | ◉ | ○ | ☐ | ☐ |
| Sports | ◉ | ○ | ☐ | ☐ |
| Travel | ◉ | ○ | ☐ | ☐ |
| Personal Vehicles | ◉ | ○ | ☐ | ☐ |
| Child Education | ◉ | ○ | ☐ | ☐ |
| Real Estate | ◉ | ○ | ☐ | ☐ |
| Restaurant and Dining | ◉ | ○ | ☐ | ☐ |
| Personal Websites | ◉ | ○ | ☐ | ☐ |

| | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| ▼ Business Oriented | ● | ○ | ☐ | ☐ |
| Business | ● | ○ | ☐ | ☐ |
| Information and Computer Security | ● | ○ | ☐ | ☐ |
| Government and Legal Organizations | ● | ○ | ☐ | ☐ |
| Information Technology | ● | ○ | ☐ | ☐ |
| Armed Forces | ● | ○ | ☐ | ☐ |
| ▼ Others | ● | ○ | ☐ | ☐ |
| Dynamic Content | ● | ○ | ☐ | ☐ |
| Miscellaneous | ● | ○ | ☐ | ☐ |
| Web Hosting | ● | ○ | ☐ | ☐ |
| Secure Websites | ● | ○ | ☐ | ☐ |
| Content Servers | ● | ○ | ☐ | ☐ |
| Unrated | ● | ○ | ☐ | ☐ |

| Classification | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| Cached Content | ● | ○ | ☐ | ☐ |
| Multimedia Search | ● | ○ | ☐ | ☐ |
| Image Search | ○ | ● | ☐ | ☐ |
| Audio Search | ● | ○ | ☐ | ☐ |
| Video Search | ○ | ● | ☐ | ☐ |
| Spam URL | ○ | ● | ☐ | ☐ |

**Dan Howard** 

---

| | |
|---|---|
| **From:** | Dean Marney [dmarney@ncrl.org] |
| **Sent:** | Wednesday, May 16, 2007 2:48 PM |
| **To:** | Dan Howard |
| **Cc:** | Barbara Walters; Chad Roseburg |
| **Subject:** | Re: MySpace |

Dan:

Thanks Dan. Let's go ahead and block "Personal Relationships" and see if that will solve the problem.


Dean


Dean Marney, Director
North Central Regional Library
509-663-1117 x121
dmarney@ncrl.org


On May 16, 2007, at 2:47 PM, Dan Howard wrote:

> Dean,
>
>
> We have heard that some patrons are using proxy avoidance sites to defeat our filter and some are using proxy avoidance to access MySpace.com. While MySpace is currently blocked, we may want to consider a different approach. Chad spoke to a person from Fortinet today and he suggested that we may want to block the category "Personal Relationships" which would block social networking sites such as MySpace, Facebook, and Friendster. "Personal Relationships" is not a currently blocked category.
>
>
> Thank you,
>
> Dan Howard
> Director of Public Services
> North Central Regional Library
> 16 North Columbia Street
> Wenatchee, WA 98801
> (509) 663-1117 Extension 122
> Email: dhoward@ncrl.org

## ▼ FortiGuard Web Filtering

| | HTTP | HTTPS |
|---|---|---|
| Enable FortiGuard Web Filtering | ☑ | ☑ |
| Enable FortiGuard Web Filtering Overrides | ☐ | ☐ |
| Provide details for blocked HTTP 4xx and 5xx errors | ☐ | |
| Rate images by URL (blocked images will be replaced with blanks) | ☑ | |
| Allow websites when a rating error occurs | ☑ | ☑ |
| Strict Blocking | ☐ | ☐ |
| Rate URLs by domain and IP address | ☐ | ☐ |

| Category | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| ▼ Potentially Liable | ○ | ○ | ☐ | ☐ |
| Drug Abuse | ◉ | ○ | ☐ | ☐ |
| Occult | ◉ | ○ | ☐ | ☐ |
| Hacking | ○ | ◉ | ☐ | ☐ |
| Illegal or Unethical | ◉ | ○ | ☐ | ☐ |
| Racism and Hate | ◉ | ○ | ☐ | ☐ |
| Violence | ◉ | ○ | ☐ | ☐ |
| Marijuana | ◉ | ○ | ☐ | ☐ |
| Folklore | ◉ | ○ | ☐ | ☐ |
| Proxy Avoidance | ○ | ◉ | ☐ | ☐ |
| Web Translation | ◉ | ○ | ☐ | ☐ |
| Phishing | ○ | ◉ | ☐ | ☐ |
| Plagiarism | ◉ | ○ | ☐ | ☐ |

| | ○ | ○ | ☐ | ☐ |
|---|---|---|---|---|
| **▼ Controversial** | ○ | ○ | ☐ | ☐ |
| Abortion | ◉ | ○ | ☐ | ☐ |
| Adult Materials | ○ | ◉ | ☐ | ☐ |
| Advocacy Organizations | ◉ | ○ | ☐ | ☐ |
| Gambling | ○ | ◉ | ☐ | ☐ |
| Extremist Groups | ◉ | ○ | ☐ | ☐ |
| Nudity and Risque | ○ | ◉ | ☐ | ☐ |
| Pornography | ○ | ◉ | ☐ | ☐ |
| Tasteless | ◉ | ○ | ☐ | ☐ |
| Weapons | ◉ | ○ | ☐ | ☐ |
| Sex Education | ◉ | ○ | ☐ | ☐ |
| Alcohol | ◉ | ○ | ☐ | ☐ |
| Tobacco | ◉ | ○ | ☐ | ☐ |
| Lingerie and Swimsuit | ◉ | ○ | ☐ | ☐ |
| Sports Hunting and War Games | ◉ | ○ | ☐ | ☐ |
| **▼ Potentially Non-productive** | ○ | ○ | ☐ | ☐ |
| Advertising | ◉ | ○ | ☐ | ☐ |
| Brokerage and Trading | ◉ | ○ | ☐ | ☐ |
| Freeware Downloads | ◉ | ○ | ☐ | ☐ |
| Games | ◉ | ○ | ☐ | ☐ |
| Web-based Email | ◉ | ○ | ☐ | ☐ |
| Web Chat | ○ | ◉ | ☐ | ☐ |
| Instant Messaging | ○ | ◉ | ☐ | ☐ |
| Newsgroups and Message Boards | ◉ | ○ | ☐ | ☐ |
| Digital Postcards | ◉ | ○ | ☐ | ☐ |

| | | | | |
|---|:---:|:---:|:---:|:---:|
| ▼ Potentially Bandwidth Consuming | ⦿ | ○ | ☐ | ☐ |
| Peer-to-peer File Sharing | ⦿ | ○ | ☐ | ☐ |
| Personal Storage | ⦿ | ○ | ☐ | ☐ |
| Multimedia Download | ⦿ | ○ | ☐ | ☐ |
| Internet Radio and TV | ⦿ | ○ | ☐ | ☐ |
| Internet Telephony | ⦿ | ○ | ☐ | ☐ |
| ▼ Potential Security Violating | ○ | ⦿ | ☐ | ☐ |
| Malware | ○ | ⦿ | ☐ | ☐ |
| Spyware | ○ | ⦿ | ☐ | ☐ |

| | | | | |
|---|---|---|---|---|
| **General Interest** | ○ | ○ | ☐ | ☐ |
| Arts and Entertainment | ○ | ○ | ☐ | ☐ |
| Culture | ○ | ○ | ☐ | ☐ |
| Education | ○ | ○ | ☐ | ☐ |
| Finance and Banking | ○ | ○ | ☐ | ☐ |
| Homosexuality | ○ | ○ | ☐ | ☐ |
| Health and Wellness | ○ | ○ | ☐ | ☐ |
| Job Search | ○ | ○ | ☐ | ☐ |
| Medicine | ○ | ○ | ☐ | ☐ |
| News and Media | ○ | ○ | ☐ | ☐ |
| Personal Relationships | ○ | ○ | ☐ | ☐ |
| Political Organizations | ○ | ○ | ☐ | ☐ |
| Reference | ○ | ○ | ☐ | ☐ |
| Religion | ○ | ○ | ☐ | ☐ |
| Search Engines | ○ | ○ | ☐ | ☐ |
| Shopping and Auction | ○ | ○ | ☐ | ☐ |
| General Organizations | ○ | ○ | ☐ | ☐ |
| Society and Lifestyles | ○ | ○ | ☐ | ☐ |
| Sports | ○ | ○ | ☐ | ☐ |
| Travel | ○ | ○ | ☐ | ☐ |
| Personal Vehicles | ○ | ○ | ☐ | ☐ |
| Child Education | ○ | ○ | ☐ | ☐ |
| Real Estate | ○ | ○ | ☐ | ☐ |
| Restaurant and Dining | ○ | ○ | ☐ | ☐ |
| Personal Websites | ○ | ○ | ☐ | ☐ |

| Category | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| ▼ Business Oriented | ◉ | ○ | ☐ | ☐ |
| Business | ◉ | ○ | ☐ | ☐ |
| Information and Computer Security | ◉ | ○ | ☐ | ☐ |
| Government and Legal Organizations | ◉ | ○ | ☐ | ☐ |
| Information Technology | ◉ | ○ | ☐ | ☐ |
| Armed Forces | ◉ | ○ | ☐ | ☐ |
| ▼ Others | ◉ | ○ | ☐ | ☐ |
| Dynamic Content | ◉ | ○ | ☐ | ☐ |
| Miscellaneous | ◉ | ○ | ☐ | ☐ |
| Web Hosting | ◉ | ○ | ☐ | ☐ |
| Secure Websites | ◉ | ○ | ☐ | ☐ |
| Content Servers | ◉ | ○ | ☐ | ☐ |
| Unrated | ◉ | ○ | ☐ | ☐ |

| Classification | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| Cached Content | ◉ | ○ | ☐ | ☐ |
| Multimedia Search | ◉ | ○ | ☐ | ☐ |
| Image Search | ○ | ◉ | ☐ | ☐ |
| Audio Search | ◉ | ○ | ☐ | ☐ |
| Video Search | ○ | ◉ | ☐ | ☐ |
| Spam URL | ○ | ◉ | ☐ | ☐ |



NORTH CENTRAL REGIONAL LIBRARY

# Memo

| | |
|---|---|
| Date: | March 14, 2007 |
| To: | Dean Marney |
| From: | Dan Howard |
| RE: | Review of Plagiarism |

As you and I discussed, "Plagiarism" is a blocked category that we will unblock immediately.

DH

COPY

| | | | |
|---|---|---|---|
| Web Content Block | ☐ | | -- None -- ▾ |
| Web Content Exempt | ☐ | | Threshold: 10 |
| Web URL Filter | ☑ | ☑ | -- None -- ▾ |
| ActiveX Filter | ☐ | | defined-urlfilter ▾ |
| Cookie Filter | ☐ | | |
| Java Applet Filter | ☐ | | |
| Web Resume Download Block | ☑ | | |
| Block invalid URLs | | ☐ | |
| ▾ FortiGuard Web Filtering | | | |

| | HTTP | HTTPS |
|---|---|---|
| Enable FortiGuard Web Filtering | ☑ | ☑ |
| Enable FortiGuard Web Filtering Overrides | ☐ | ☐ |
| Provide details for blocked HTTP 4xx and 5xx errors | ☐ | |
| Rate images by URL (blocked images will be replaced with blanks) | ☑ | |
| Allow websites when a rating error occurs | ☑ | ☑ |
| Strict Blocking | ☐ | ☐ |
| Rate URLs by domain and IP address | ☐ | ☐ |

| Category | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| ▾ Potentially Liable | ○ | ○ | ☐ | ☐ |
| Drug Abuse | ● | ○ | ☐ | ☐ |
| Occult | ○ | ● | ☐ | ☐ |
| Hacking | ○ | ● | ☐ | ☐ |
| Illegal or Unethical | ● | ○ | ☐ | ☐ |
| Racism and Hate | ● | ○ | ☐ | ☐ |
| Violence | ● | ○ | ☐ | ☐ |
| Marijuana | ● | ○ | ☐ | ☐ |
| Folklore | ● | ○ | ☐ | ☐ |
| Proxy Avoidance | ○ | ● | ☐ | ☐ |
| Web Translation | ● | ○ | ☐ | ☐ |
| Phishing | ○ | ● | ☐ | ☐ |
| Plagiarism | ● | ○ | ☐ | ☐ |
| ▾ Controversial | ○ | ○ | ☐ | ☐ |
| Abortion | ● | ○ | ☐ | ☐ |
| Adult Materials | ○ | ● | ☐ | ☐ |
| Advocacy Organizations | ● | ○ | ☐ | ☐ |
| Gambling | ○ | ● | ☐ | ☐ |
| Extremist Groups | ● | ○ | ☐ | ☐ |
| Nudity and Risque | ○ | ● | ☐ | ☐ |
| Pornography | ○ | ● | ☐ | ☐ |
| Tasteless | ● | ○ | ☐ | ☐ |
| Weapons | ● | ○ | ☐ | ☐ |
| Sex Education | ● | ○ | ☐ | ☐ |
| Alcohol | ● | ○ | ☐ | ☐ |
| Tobacco | ● | ○ | ☐ | ☐ |
| Lingerie and Swimsuit | ● | ○ | ☐ | ☐ |
| Sports Hunting and War Games | ● | ○ | ☐ | ☐ |

| | | | | |
|---|---|---|---|---|
| ▼ Potentially Non-productive | ○ | ○ | ☐ | ☐ |
| Advertising | ⦿ | ○ | ☐ | ☐ |
| Brokerage and Trading | ⦿ | ○ | ☐ | ☐ |
| Freeware Downloads | ⦿ | ○ | ☐ | ☐ |
| Games | ⦿ | ○ | ☐ | ☐ |
| Web-based Email | ⦿ | ○ | ☐ | ☐ |
| Web Chat | ○ | ⦿ | ☐ | ☐ |
| Instant Messaging | ○ | ⦿ | ☐ | ☐ |
| Newsgroups and Message Boards | ⦿ | ○ | ☐ | ☐ |
| Digital Postcards | ⦿ | ○ | ☐ | ☐ |
| ▼ Potentially Bandwidth Consuming | ⦿ | ○ | ☑ | ☐ |
| Peer-to-peer File Sharing | ⦿ | ○ | ☑ | ☐ |
| Personal Storage | ⦿ | ○ | ☑ | ☐ |
| Multimedia Download | ⦿ | ○ | ☑ | ☐ |
| Internet Radio and TV | ⦿ | ○ | ☑ | ☐ |
| Internet Telephony | ⦿ | ○ | ☑ | ☐ |
| ▼ Potential Security Violating | ○ | ⦿ | ☐ | ☐ |
| Malware | ○ | ⦿ | ☐ | ☐ |
| Spyware | ○ | ⦿ | ☐ | ☐ |

| | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| ▼ General Interest | ● | ○ | ☐ | ☐ |
| Arts and Entertainment | ● | ○ | ☐ | ☐ |
| Culture | ● | ○ | ☐ | ☐ |
| Education | ● | ○ | ☐ | ☐ |
| Finance and Banking | ● | ○ | ☐ | ☐ |
| Homosexuality | ● | ○ | ☐ | ☐ |
| Health and Wellness | ● | ○ | ☐ | ☐ |
| Job Search | ● | ○ | ☐ | ☐ |
| Medicine | ● | ○ | ☐ | ☐ |
| News and Media | ● | ○ | ☐ | ☐ |
| Personal Relationships | ● | ○ | ☐ | ☐ |
| Political Organizations | ● | ○ | ☐ | ☐ |
| Reference | ● | ○ | ☐ | ☐ |
| Religion | ● | ○ | ☐ | ☐ |
| Search Engines | ● | ○ | ☐ | ☐ |
| Shopping and Auction | ● | ○ | ☐ | ☐ |
| General Organizations | ● | ○ | ☐ | ☐ |
| Society and Lifestyles | ● | ○ | ☐ | ☐ |
| Sports | ● | ○ | ☐ | ☐ |
| Travel | ● | ○ | ☐ | ☐ |
| Personal Vehicles | ● | ○ | ☐ | ☐ |
| Child Education | ● | ○ | ☐ | ☐ |
| Real Estate | ● | ○ | ☐ | ☐ |
| Restaurant and Dining | ● | ○ | ☐ | ☐ |
| Personal Websites | ● | ○ | ☐ | ☐ |
| ▼ Business Oriented | ● | ○ | ☐ | ☐ |
| Business | ● | ○ | ☐ | ☐ |
| Information and Computer Security | ● | ○ | ☐ | ☐ |
| Government and Legal Organizations | ● | ○ | ☐ | ☐ |
| Information Technology | ● | ○ | ☐ | ☐ |
| Armed Forces | ● | ○ | ☐ | ☐ |
| ▼ Others | ● | ○ | ☐ | ☐ |
| Dynamic Content | ● | ○ | ☐ | ☐ |
| Miscellaneous | ● | ○ | ☐ | ☐ |
| Web Hosting | ● | ○ | ☐ | ☐ |
| Secure Websites | ● | ○ | ☐ | ☐ |
| Content Servers | ● | ○ | ☐ | ☐ |
| Unrated | ● | ○ | ☐ | ☐ |

| Classification | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| Cached Content | ● | ○ | ☐ | ☐ |
| Multimedia Search | ● | ○ | ☐ | ☐ |
| Image Search | ○ | ● | ☐ | ☐ |
| Audio Search | ● | ○ | ☐ | ☐ |
| Video Search | ○ | ● | ☐ | ☐ |
| Spam URL | ○ | ● | ☐ | ☐ |

COPY



NORTH CENTRAL REGIONAL LIBRARY

# Memo

| | |
|---|---|
| **Date:** | March 6, 2007 |
| **To:** | Dean Marney |
| **From:** | Dan Howard |
| **RE:** | Review of Web Translation |

---

As you and I discussed, I reviewed a Material Selection Review Form regarding an employee's inability to connect with web translation sites such as translate.google.com and ets.freetranslation.com. "Web Translation" was a blocked category that Barbara unblocked today.

DH



North Central Regional Library

MATERIAL SELECTION REVIEW FORM

Name: _Carla @ WPL_____ Date: _3/7/07_____
Address: _( Carla Loveto - NCRL Employee )_ Branch: _Wenatchee_
Phone: _6062-5021_____

I request a re-evaluation of: (Please give title and author or website)
google languague tools
Freetranslation.com
worldlingo.com
Comments:

There are already working.

Thank you.

_____Carla @ WPL_____
Signature of Patron

<u>Note to Patron:</u> This completed form will be submitted to the Library Director for review and action. As a result of your request the material in question may be retained, withdrawn or reclassified.

16 N Columbia Street, Wenatchee, WA 98801-8103 • Tel: 509-663-1117 • www.ncrl.org

ATT. Barb

 FortiGuard Web Filtering


REAL TIME NETWORK PROTECTION

## Web Page Blocked

You have tried to access a web page which is in violation of your internet usage policy.

URL: ets.freetranslation.com/
Category: Web Translation

To have the rating of this web page re-evaluated please click here.

---

Powered by FortiGuard.

From: Carla @ WPL

 

REAL TIME NETWORK PROTECTION

## Web Page Blocked

You have tried to access a web page which is in violation of your internet usage policy.

URL: translate.google.com/translate_t
Category: Web Translation

To have the rating of this web page re-evaluated please click here.

---

Powered by FortiGuard.

 

REAL TIME NETWORK PROTECTION

## Web Page Blocked

You have tried to access a web page which is in violation of your internet usage policy.

URL: www.google.com/language_tools
Category: Web Translation

To have the rating of this web page re-evaluated please click here.

---

Powered by FortiGuard.

terse

# FortiGuard Filtering 3-7-07

COPY

| | HTTP | HTTPS | |
|---|---|---|---|
| Web Content Block | ☐ | | -- None -- ▾ |
| | | | Threshold: 10 |
| Web Content Exempt | ☐ | | -- None -- ▾ |
| Web URL Filter | ☑ | ☑ | defined-urlfilter ▾ |
| ActiveX Filter | ☐ | | |
| Cookie Filter | ☐ | | |
| Java Applet Filter | ☐ | | |
| Web Resume Download Block | ☑ | | |
| Block Invalid URLs | | ☐ | |

**▼ FortiGuard Web Filtering**

| | HTTP | HTTPS |
|---|---|---|
| Enable FortiGuard Web Filtering | ☑ | ☑ |
| Enable FortiGuard Web Filtering Overrides | ☐ | ☐ |
| Provide details for blocked HTTP 4xx and 5xx errors | ☐ | |
| Rate Images by URL (blocked images will be replaced with blanks) | ☑ | |
| Allow websites when a rating error occurs | ☑ | ☑ |
| Strict Blocking | ☐ | ☐ |
| Rate URLs by domain and IP address | ☐ | ☐ |

| Category | Allow | Block | Log | Allow Override |
|---|:---:|:---:|:---:|:---:|
| ▼ Potentially Liable | ○ | ○ | ☐ | ☐ |
| Drug Abuse | ◉ | ○ | ☐ | ☐ |
| Occult | ◉ | ○ | ☐ | ☐ |
| Hacking | ○ | ◉ | ☐ | ☐ |
| Illegal or Unethical | ◉ | ○ | ☐ | ☐ |
| Racism and Hate | ◉ | ○ | ☐ | ☐ |
| Violence | ◉ | ○ | ☐ | ☐ |
| Marijuana | ◉ | ○ | ☐ | ☐ |
| Folklore | ◉ | ○ | ☐ | ☐ |
| Proxy Avoidance | ○ | ◉ | ☐ | ☐ |
| Web Translation | ◉ | ○ | ☐ | ☐ |
| Phishing | ○ | ◉ | ☐ | ☐ |
| Plagiarism | ○ | ◉ | ☐ | ☐ |
| ▼ Controversial | ○ | ○ | ☐ | ☐ |
| Abortion | ◉ | ○ | ☐ | ☐ |
| Adult Materials | ○ | ◉ | ☐ | ☐ |
| Advocacy Organizations | ◉ | ○ | ☐ | ☐ |
| Gambling | ○ | ◉ | ☐ | ☐ |
| Extremist Groups | ◉ | ○ | ☐ | ☐ |
| Nudity and Risque | ○ | ◉ | ☐ | ☐ |
| Pornography | ○ | ◉ | ☐ | ☐ |
| Tasteless | ◉ | ○ | ☐ | ☐ |
| Weapons | ◉ | ○ | ☐ | ☐ |
| Sex Education | ◉ | ○ | ☐ | ☐ |
| Alcohol | ◉ | ○ | ☐ | ☐ |
| Tobacco | ◉ | ○ | ☐ | ☐ |
| Lingerie and Swimsuit | ◉ | ○ | ☐ | ☐ |
| Sports Hunting and War Games | ◉ | ○ | ☐ | ☐ |

| | Col 1 | Col 2 | Col 3 | Col 4 |
|---|---|---|---|---|
| ▼ Potentially Non-productive | ○ | ○ | ☐ | ☐ |
| Advertising | ● | ○ | ☐ | ☐ |
| Brokerage and Trading | ● | ○ | ☐ | ☐ |
| Freeware Downloads | ● | ○ | ☐ | ☐ |
| Games | ● | ○ | ☐ | ☐ |
| Web-based Email | ● | ○ | ☐ | ☐ |
| Web Chat | ○ | ● | ☐ | ☐ |
| Instant Messaging | ○ | ● | ☐ | ☐ |
| Newsgroups and Message Boards | ● | ○ | ☐ | ☐ |
| Digital Postcards | ● | ○ | ☐ | ☐ |
| ▼ Potentially Bandwidth Consuming | ● | ○ | ☑ | ☐ |
| Peer-to-peer File Sharing | ● | ○ | ☑ | ☐ |
| Personal Storage | ● | ○ | ☑ | ☐ |
| Multimedia Download | ● | ○ | ☑ | ☐ |
| Internet Radio and TV | ● | ○ | ☑ | ☐ |
| Internet Telephony | ● | ○ | ☑ | ☐ |
| ▼ Potential Security Violating | ○ | ● | ☐ | ☐ |
| Malware | ○ | ● | ☐ | ☐ |
| Spyware | ○ | ● | ☐ | ☐ |

| General Interest | ⦿ | ○ | ☐ | ☐ |
|---|---|---|---|---|
| Arts and Entertainment | ⦿ | ○ | ☐ | ☐ |
| Culture | ⦿ | ○ | ☐ | ☐ |
| Education | ⦿ | ○ | ☐ | ☐ |
| Finance and Banking | ⦿ | ○ | ☐ | ☐ |
| Homosexuality | ⦿ | ○ | ☐ | ☐ |
| Health and Wellness | ⦿ | ○ | ☐ | ☐ |
| Job Search | ⦿ | ○ | ☐ | ☐ |
| Medicine | ⦿ | ○ | ☐ | ☐ |
| News and Media | ⦿ | ○ | ☐ | ☐ |
| Personal Relationships | ⦿ | ○ | ☐ | ☐ |
| Political Organizations | ⦿ | ○ | ☐ | ☐ |
| Reference | ⦿ | ○ | ☐ | ☐ |
| Religion | ⦿ | ○ | ☐ | ☐ |
| Search Engines | ⦿ | ○ | ☐ | ☐ |
| Shopping and Auction | ⦿ | ○ | ☐ | ☐ |
| General Organizations | ⦿ | ○ | ☐ | ☐ |
| Society and Lifestyles | ⦿ | ○ | ☐ | ☐ |
| Sports | ⦿ | ○ | ☐ | ☐ |
| Travel | ⦿ | ○ | ☐ | ☐ |
| Personal Vehicles | ⦿ | ○ | ☐ | ☐ |
| Child Education | ⦿ | ○ | ☐ | ☐ |
| Real Estate | ⦿ | ○ | ☐ | ☐ |
| Restaurant and Dining | ⦿ | ○ | ☐ | ☐ |
| Personal Websites | ⦿ | ○ | ☐ | ☐ |

| | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| **▼ Business Oriented** | ● | ○ | ☐ | ☐ |
| Business | ● | ○ | ☐ | ☐ |
| Information and Computer Security | ● | ○ | ☐ | ☐ |
| Government and Legal Organizations | ● | ○ | ☐ | ☐ |
| Information Technology | ● | ○ | ☐ | ☐ |
| Armed Forces | ● | ○ | ☐ | ☐ |
| **▼ Others** | ● | ○ | ☐ | ☐ |
| Dynamic Content | ● | ○ | ☐ | ☐ |
| Miscellaneous | ● | ○ | ☐ | ☐ |
| Web Hosting | ● | ○ | ☐ | ☐ |
| Secure Websites | ● | ○ | ☐ | ☐ |
| Content Servers | ● | ○ | ☐ | ☐ |
| **Unrated** | ● | ○ | ☐ | ☐ |

| Classification | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| Cached Content | ● | ○ | ☐ | ☐ |
| Multimedia Search | ● | ○ | ☐ | ☐ |
| Image Search | ○ | ● | ☐ | ☐ |
| Audio Search | ● | ○ | ☐ | ☐ |
| Video Search | ○ | ● | ☐ | ☐ |
| Spam URL | ○ | ● | ☐ | ☐ |



## Edit Protection Profile

**Profile Name:** test

**Comments:**

### ▼ Anti-Virus

|  | HTTP | FTP | IMAP | POP3 | SMTP | IM | NNTP |
|---|---|---|---|---|---|---|---|
| Virus Scan | ☑ | ☑ | ☑ | ☑ | ☑ | ☐ | ☐ |
| File Pattern | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Pass Fragmented Emails |  |  | ☐ | ☐ | ☐ |  |  |
| Comfort Clients | ☐ | ☐ |  |  |  |  |  |
| Interval (1 - 900 seconds) | 10 | 10 |  |  |  |  |  |
| Amount (1 - 10240 bytes) | 1 | 1 |  |  |  |  |  |
| Oversized File/Email | Pass | Pass | Pass | Pass | Pass | Pass | Pass |
| Threshold (1 - 12 MB) | 10 | 10 | 10 | 10 | 10 | 10 | 0 |

Add signature to outgoing emails       ☐ Enable                          (SMTP only

### ▼ Web Filtering

|  | HTTP | HTTPS | Option |
|---|---|---|---|
| Web Content Block | ☐ |  | -- None -- |
|  |  |  | Threshold: 10 |
| Web Content Exempt | ☐ |  | -- None -- |
| Web URL Filter | ☑ | ☑ | defined-urlfilt |
| ActiveX Filter | ☐ |  |  |
| Cookie Filter | ☐ |  |  |
| Java Applet Filter | ☐ |  |  |
| Web Resume Download Block | ☑ |  |  |
| Block Invalid URLs |  | ☐ |  |

### ▼ FortiGuard Web Filtering

|  | HTTP | HTTPS |
|---|---|---|
| Enable FortiGuard Web Filtering | ☑ | ☑ |
| Enable FortiGuard Web Filtering Overrides |  |  |
| Provide details for blocked HTTP 4xx and 5xx errors | ☐ |  |
| Rate images by URL (blocked images will be replaced with blanks) | ☑ |  |
| Allow websites when a rating error occurs | ☐ | ☐ |
| Strict Blocking | ☐ | ☐ |
| Rate URLs by domain and IP address | ☐ | ☐ |

| Category | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| ▼ Potentially Liable | ○ | ○ | ☐ | |
| Drug Abuse | ○ | ● | ☐ | ☐ |
| Occult | ● | ○ | ☐ | |
| Hacking | ○ | ● | ☐ | ☐ |
| Illegal or Unethical | ○ | ● | ☐ | ☐ |
| Racism and Hate | ● | ○ | ☐ | |
| Violence | ● | ○ | ☐ | |
| Marijuana | ● | ○ | ☐ | |
| Folklore | ● | ○ | ☐ | |
| Proxy Avoidance | ○ | ● | ☐ | ☐ |
| Web Translation | ○ | ● | ☐ | ☐ |
| Phishing | ○ | ● | ☐ | ☐ |
| Plagiarism | ○ | ● | ☐ | ☐ |
| ▼ Controversial | ○ | ○ | ☐ | |
| Abortion | ● | ○ | ☐ | |
| Adult Materials | ○ | ● | ☐ | ☐ |
| Advocacy Organizations | ● | ○ | ☐ | |
| Gambling | ○ | ● | ☐ | ☐ |
| Extremist Groups | ● | ○ | ☐ | |
| Nudity and Risque | ○ | ● | ☐ | ☐ |
| Pornography | ○ | ● | ☐ | ☐ |
| Tasteless | ● | ○ | ☐ | |
| Weapons | ● | ○ | ☐ | |
| Sex Education | ● | ○ | ☐ | |
| Alcohol | ● | ○ | ☐ | |
| Tobacco | ● | ○ | ☐ | |
| Lingerie and Swimsuit | ● | ○ | ☐ | |
| Sports Hunting and War Games | ● | ○ | ☐ | |
| ▼ Potentially Non-productive | ○ | ○ | ☐ | |
| Advertising | ● | ○ | ☐ | |
| Brokerage and Trading | ● | ○ | ☐ | |
| Freeware Downloads | ● | ○ | ☐ | |
| Games | ● | ○ | ☐ | |
| Web-based Email | ● | ○ | ☐ | |
| Web Chat | ○ | ● | ☐ | ☐ |
| Instant Messaging | ○ | ● | ☐ | ☐ |

| | ● | ○ | ☐ | |
|---|---|---|---|---|
| Newsgroups and Message Boards | ● | ○ | ☐ | |
| Digital Postcards | ● | ○ | ☐ | |
| ▼ Potentially Bandwidth Consuming | ● | ○ | ☑ | |
| Peer-to-peer File Sharing | ● | ○ | ☑ | |
| Personal Storage | ● | ○ | ☑ | |
| Multimedia Download | ● | ○ | ☑ | |
| Internet Radio and TV | ● | ○ | ☑ | |
| Internet Telephony | ● | ○ | ☑ | |
| ▼ Potential Security Violating | ○ | ● | ☐ | ☐ |
| Malware | ○ | ● | ☐ | ☐ |
| Spyware | ○ | ● | ☐ | ☐ |
| ▼ General Interest | ● | ○ | ☐ | |
| Arts and Entertainment | ● | ○ | ☐ | |
| Culture | ● | ○ | ☐ | |
| Education | ● | ○ | ☐ | |
| Finance and Banking | ● | ○ | ☐ | |
| Homosexuality | ● | ○ | ☐ | |
| Health and Wellness | ● | ○ | ☐ | |
| Job Search | ● | ○ | ☐ | |
| Medicine | ● | ○ | ☐ | |
| News and Media | ● | ○ | ☐ | |
| Personal Relationships | ● | ○ | ☐ | |
| Political Organizations | ● | ○ | ☐ | |
| Reference | ● | ○ | ☐ | |
| Religion | ● | ○ | ☐ | |
| Search Engines | ● | ○ | ☐ | |
| Shopping and Auction | ● | ○ | ☐ | |
| General Organizations | ● | ○ | ☐ | |
| Society and Lifestyles | ● | ○ | ☐ | |
| Sports | ● | ○ | ☐ | |
| Travel | ● | ○ | ☐ | |
| Personal Vehicles | ● | ○ | ☐ | |
| Child Education | ● | ○ | ☐ | |
| Real Estate | ● | ○ | ☐ | |
| Restaurant and Dining | ● | ○ | ☐ | |
| Personal Websites | ● | ○ | ☐ | |
| ▼ Business Oriented | ● | ○ | ☐ | |

| | Allow | Block | Log | |
|---|:---:|:---:|:---:|:---:|
| Business | ◉ | ○ | ☐ | |
| Information and Computer Security | ◉ | ○ | ☐ | |
| Government and Legal Organizations | ◉ | ○ | ☐ | |
| Information Technology | ◉ | ○ | ☐ | |
| Armed Forces | ◉ | ○ | ☐ | |
| ▼ Others | ◉ | ○ | ☐ | |
| Dynamic Content | ◉ | ○ | ☐ | |
| Miscellaneous | ◉ | ○ | ☐ | |
| Web Hosting | ◉ | ○ | ☐ | |
| Secure Websites | ◉ | ○ | ☐ | |
| Content Servers | ◉ | ○ | ☐ | |
| Unrated | ◉ | ○ | ☐ | |

| Classification | Allow | Block | Log | Allow Override |
|---|:---:|:---:|:---:|:---:|
| Cached Content | ◉ | ○ | ☐ | |
| Multimedia Search | ◉ | ○ | ☐ | |
| Image Search | ◉ | ○ | ☐ | |
| Audio Search | ◉ | ○ | ☐ | |
| Video Search | ○ | ◉ | ☐ | ☐ |
| Spam URL | ○ | ◉ | ☐ | ☐ |

▼ **Spam Filtering**

| | ☑ IMAP | ☑ POP3 | ☑ SMTP |
|---|:---:|:---:|:---:|
| **FortiGuard AntiSpam** | | | |
| IP address check | ☑ | ☑ | ☑ |
| URL check | ☑ | ☑ | ☑ |
| E-mail checksum check | ☐ | ☐ | ☐ |
| Spam submission | ☑ | ☑ | ☑ |
| IP address BWL check | ☐ | ☐ | ☐ |
| HELO DNS lookup | | | ☐ |
| E-mail address BWL check | ☐ | ☐ | ☐ |
| Return e-mail DNS check | ☐ | ☐ | ☐ |
| | | | |
| Banned word check | ☐ | ☐ | ☐ |
| | | | |
| Spam Action | Tagged | Tagged | Tagged |
| Append to: | ◉ Subject ○ MIME | ◉ Subject ○ MIME | ◉ Subject ○ |
| Append with: | Spam | Spam | Spam |

▼ **IPS**

| | | Critical | High | Medium |
|---|---|---|---|---|
| IPS Signature | | ☐ | ☐ | ☐ |
| IPS Anomaly | | ☐ | ☐ | ☐ |

**▼ Content Archive**

| | HTTP | HTTPS | FTP | IMAP | POP3 | SMT |
|---|---|---|---|---|---|---|
| Display content meta-information on the system dashboard | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ |
| Archive to FortiAnalyzer | None | None | None | None | None | None |
| Archive SPAMed emails to FortiAnalyzer | | | | | | |

| | AIM | ICQ | MSN |
|---|---|---|---|
| Archive IM to FortiAnalyzer | None | None | None |

**▼ IM / P2P**

| | ☐AIM | ☐ICQ | ☐MSN |
|---|---|---|---|
| Block Login | | | |
| Block File Transfers | | | |
| Block Audio | | | |
| Inspect Non-standard Port | | | |

| | BitTorrent | eDonkey | Gnutella | KaZaa | Skype |
|---|---|---|---|---|---|
| Action | Block | Block | Block | Block | Block |
| Limit (KBytes/s) | 0 | 0 | 0 | 0 | |

**▼ Logging**

| | Log |
|---|---|
| Anti-Virus | |
|    Viruses | ☐ |
|    Blocked Files | ☐ |
|    Oversized Files / E-mails | ☐ |
| Web Filtering | |
|    Content Block | ☐ |
|    URL Filter | ☐ |
|    ActiveX Filter | ☐ |
|    Cookie Filter | ☐ |
|    Java Applet Filter | ☐ |
| FortiGuard Web Filtering | |
|    Rating Errors (HTTP only) | ☐ |
| Spam Filtering | |
|    Log Spam | ☐ |
| IPS | |
|    Log Intrusions | ☐ |

IM / P2P ☐

   Log IM Activity ☐

   Log P2P Activity ☐

( OK )  ( Cancel )



## Edit Protection Profile

**Profile Name:** |NCRL

**Comments:**

▶ **Anti-Virus**

▼ **Web Filtering**

| | HTTP | HTTPS | Option |
|---|---|---|---|
| Web Content Block | ☐ | | -- None -- |
| | | | Threshold: 10 |
| Web Content Exempt | ☐ | | -- None -- |
| Web URL Filter | ☑ | ☑ | defined-urlfilter |
| ActiveX Filter | ☐ | | |
| Cookie Filter | ☐ | | |
| Java Applet Filter | ☐ | | |
| Web Resume Download Block | ☑ | | |
| Block Invalid URLs | | ☐ | |

▼ **FortiGuard Web Filtering**

| | HTTP | HTTPS |
|---|---|---|
| Enable FortiGuard Web Filtering | ☑ | ☑ |
| Enable FortiGuard Web Filtering Overrides | | |
| Provide details for blocked HTTP 4xx and 5xx errors | ☐ | |
| Rate images by URL (blocked images will be replaced with blanks) | ☑ | |
| Allow websites when a rating error occurs | ☐ | ☐ |
| Strict Blocking | ☐ | ☐ |
| Rate URLs by domain and IP address | ☐ | ☐ |

| Category | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| ▼ Potentially Liable | ○ | ○ | ☐ | |
| Drug Abuse | ○ | ◉ | ☐ | ☐ |
| Occult | ◉ | ○ | ☐ | |
| Hacking | ○ | ◉ | ☐ | ☐ |
| Illegal or Unethical | ○ | ◉ | ☐ | ☐ |
| Racism and Hate | ◉ | ○ | ☐ | |
| Violence | ◉ | ○ | ☐ | |
| Marijuana | ◉ | ○ | ☐ | |
| Folklore | ◉ | ○ | ☐ | |

| Category | | | | |
|---|---|---|---|---|
| Proxy Avoidance | ○ | ◉ | ☐ | ☐ |
| Web Translation | ○ | ◉ | ☐ | ☐ |
| Phishing | ○ | ◉ | ☐ | ☐ |
| Plagiarism | ○ | ◉ | ☐ | ☐ |
| ▼ Controversial | ○ | ○ | ☐ | |
| Abortion | ◉ | ○ | ☐ | |
| Adult Materials | ○ | ◉ | ☐ | ☐ |
| Advocacy Organizations | ◉ | ○ | ☐ | |
| Gambling | ○ | ◉ | ☐ | ☐ |
| Extremist Groups | ◉ | ○ | ☐ | |
| Nudity and Risque | ○ | ◉ | ☐ | ☐ |
| Pornography | ○ | ◉ | ☐ | ☐ |
| Tasteless | ◉ | ○ | ☐ | |
| Weapons | ◉ | ○ | ☐ | |
| Sex Education | ◉ | ○ | ☐ | |
| Alcohol | ◉ | ○ | ☐ | |
| Tobacco | ◉ | ○ | ☐ | |
| Lingerie and Swimsuit | ◉ | ○ | ☐ | |
| Sports Hunting and War Games | ◉ | ○ | ☐ | |
| ▼ Potentially Non-productive | ○ | ○ | ☐ | |
| Advertising | ◉ | ○ | ☐ | |
| Brokerage and Trading | ◉ | ○ | ☐ | |
| Freeware Downloads | ◉ | ○ | ☐ | |
| Games | ◉ | ○ | ☐ | |
| Web-based Email | ◉ | ○ | ☐ | |
| Web Chat | ○ | ◉ | ☐ | ☐ |
| Instant Messaging | ○ | ◉ | ☐ | ☐ |
| Newsgroups and Message Boards | ◉ | ○ | ☐ | |
| Digital Postcards | ◉ | ○ | ☐ | |
| ▼ Potentially Bandwidth Consuming | ◉ | ○ | ☑ | |
| Peer-to-peer File Sharing | ◉ | ○ | ☑ | |
| Personal Storage | ◉ | ○ | ☑ | |
| Multimedia Download | ◉ | ○ | ☑ | |
| Internet Radio and TV | ◉ | ○ | ☑ | |
| Internet Telephony | ◉ | ○ | ☑ | |
| ▼ Potential Security Violating | ○ | ◉ | ☐ | ☐ |
| Malware | ○ | ◉ | ☐ | ☐ |

| Category | Col1 | Col2 | Col3 | Col4 |
|---|---|---|---|---|
| Spyware | ○ | ◉ | ☐ | ☐ |
| ▼ General Interest | ◉ | ○ | ☐ | |
| Arts and Entertainment | ◉ | ○ | ☐ | |
| Culture | ◉ | ○ | ☐ | |
| Education | ◉ | ○ | ☐ | |
| Finance and Banking | ◉ | ○ | ☐ | |
| Homosexuality | ◉ | ○ | ☐ | |
| Health and Wellness | ◉ | ○ | ☐ | |
| Job Search | ◉ | ○ | ☐ | |
| Medicine | ◉ | ○ | ☐ | |
| News and Media | ◉ | ○ | ☐ | |
| Personal Relationships | ◉ | ○ | ☐ | |
| Political Organizations | ◉ | ○ | ☐ | |
| Reference | ◉ | ○ | ☐ | |
| Religion | ◉ | ○ | ☐ | |
| Search Engines | ◉ | ○ | ☐ | |
| Shopping and Auction | ◉ | ○ | ☐ | |
| General Organizations | ◉ | ○ | ☐ | |
| Society and Lifestyles | ◉ | ○ | ☐ | |
| Sports | ◉ | ○ | ☐ | |
| Travel | ◉ | ○ | ☐ | |
| Personal Vehicles | ◉ | ○ | ☐ | |
| Child Education | ◉ | ○ | ☐ | |
| Real Estate | ◉ | ○ | ☐ | |
| Restaurant and Dining | ◉ | ○ | ☐ | |
| Personal Websites | ◉ | ○ | ☐ | |
| ▼ Business Oriented | ◉ | ○ | ☐ | |
| Business | ◉ | ○ | ☐ | |
| Information and Computer Security | ◉ | ○ | ☐ | |
| Government and Legal Organizations | ◉ | ○ | ☐ | |
| Information Technology | ◉ | ○ | ☐ | |
| Armed Forces | ◉ | ○ | ☐ | |
| ▼ Others | ◉ | ○ | ☐ | |
| Dynamic Content | ◉ | ○ | ☐ | |
| Miscellaneous | ◉ | ○ | ☐ | |
| Web Hosting | ◉ | ○ | ☐ | |
| Secure Websites | ◉ | ○ | ☐ | |

| | Allow | Block | Log | Allow Override |
|---|---|---|---|---|
| Content Servers | ◉ | ○ | ☐ | |
| Unrated | ◉ | ○ | ☐ | |
| **Classification** | **Allow** | **Block** | **Log** | **Allow Override** |
| Cached Content | ◉ | ○ | ☐ | |
| Multimedia Search | ◉ | ○ | ☐ | |
| Image Search | ◉ | ○ | ☐ | |
| Audio Search | ◉ | ○ | ☐ | |
| Video Search | ○ | ◉ | ☐ | ☐ |
| Spam URL | ○ | ◉ | ☐ | ☐ |

▶ **Spam Filtering**

▶ **IPS**

▶ **Content Archive**

▶ **IM / P2P**

▶ **Logging**

( OK )    ( Cancel )

# Exhibit C

## Equipment per branch

| | | |
|---|---|---|
| Brewster –<br>staff: 2<br>catalog: 1<br>public: 1 child: 1 | Leavenworth –<br>staff: 1<br>catalog: 1<br>public: 6 | Republic-<br>staff: 2<br>catalog: 1<br>public: 2 |
| Bridgeport-<br>staff: 1<br>catalog: 1<br>public: 4 | Manson-<br>staff: 1<br>catalog: 1<br>public: 1 (adding 1) | Royal City-<br>staff:1<br>catalog:1<br>public: 1 |
| Cashmere-<br>staff: 1<br>catalog: 1<br>public: 2 | Moses Lake-<br>staff: 6<br>catalog only: 2<br>public: 6<br>Self-check: 1 | Soap Lake-<br>staff: 1<br>catalog: 1<br>public: 4 |
| Chelan<br>staff: 2<br>catalog: 1<br>public: 2 (adding 2) | Okanogan<br>staff: 1<br>catalog: 1<br>public: 2 | Tonasket<br>staff: 2<br>catalog: 2<br>public: 3 |
| Coulee City<br>staff: 1<br>catalog: 1<br>public: 1 (adding 1) | Omak<br>staff: 4<br>catalog: 2<br>public: 4 | Twisp<br>staff: 1<br>catalog: 1<br>public: 1 (adding 1) |
| East Wen<br>staff: 1<br>catalog: 1<br>public: 1 | Oroville<br>staff: 1<br>catalog: 1<br>public: 2 | Warden<br>staff: 1<br>catalog: 1<br>public: 1 |
| Entiat<br>staff: 1<br>catalog: 1<br>public: 1 | Pateros<br>staff: 1<br>catalog: 1<br>public: 1 | Waterville<br>staff: 1<br>catalog: 1<br>public: 1 |
| Ephrata<br>staff: 4<br>catalog: 2<br>public: 4 | Peshastin<br>staff: 1<br>catalog: 1<br>public: 1 | Wenatchee<br>staff: 12<br>catalog: 5<br>public: 8<br>self-check: 3 |
| Grand Coulee<br>staff: 2<br>catalog: 1<br>public: 3 | Quincy<br>staff: 2<br>catalog: 2<br>public: 2 (adding 2) | Winthrop<br>staff: 1<br>catalog: 1<br>public: 1 |
| Mattawa<br>staff: 1<br>catalog: 1<br>public: 2 | Dist Center:<br>Training Laptops: 22<br>Staff: 30 (including staff laptops) | updated 5-23-07 |

# Exhibit H

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

AT SPOKANE

SARAH BRADBURN, PEARL

CHERRINGTON, CHARLES

HEINLEN and the SECOND

AMENDMENT FOUNDATION,

       Plaintiffs,

    vs.              No. CV-06-327-EFS

NORTH CENTRAL REGIONAL

LIBRARY DISTRICT,

       Defendant.

              /

DEPOSITION OF SALLY W. BEESLEY

Taken on behalf of Defendant

Taken before LISA I. KROON

CSR No. 95-0311

January 18, 2008

## Page 2

1    BE IT REMEMBERED THAT, pursuant to the Federal
2  Rules of Civil Procedure, the deposition of SALLY W.
3  BEESLEY, was taken before LISA I. KROON, a Certified
4  Shorthand Reporter for Oregon and a Registered
5  Professional Reporter, on Friday, January 18, 2008,
6  commencing at the hour of 10:58 a.m., the questions
7  being propounded and proceedings reported at the
8  Jefferson County Library, 241 SE 7th Street, Madras,
9  Oregon 97741.
10
11              APPEARANCES
12  MR. DUNCAN MANVILLE
13      1629 2nd Avenue West
14      Seattle, Washington  98119
15      (206) 288-9330
16      Attorney for Plaintiffs
17      Appearing by telephone
18
19  KARR TUTTLE CAMPBELL
20      BY MS. CELESTE MOUNTAIN MONROE
21      1201 Third Avenue, Suite 2900
22      Seattle, Washington  98101
23      (206) 223-1313
24      Attorney for Defendant
25

## Page 3

1              EXAMINATION INDEX
2                          Page
3  Examination by Ms. Monroe          4
4  Examination by Mr. Manville        57
5  Further Examination by Ms. Monroe  61
6
7
8
9              EXHIBIT INDEX
10  No.    Item              Page
11  60   Jefferson County Library's vision
        and mission statement    26
12
      61   Plaintiffs' First Supplement to
13       Initial Disclosures      27
14  62   Computer/Internet Policy    31
15  63   Jefferson County Library District
         Rules of Conduct         37
16
17
18
19              * * *
20
21
22
23
24
25

## Page 4

1              SALLY W. BEESLEY,
2    having sworn to tell the truth, was examined
3              and testified as follows:
4              EXAMINATION
5  BY MS. MONROE:
6    Q.  Ms. Beesley, my name is Celeste Monroe, and I
7  represent North Central Regional Library.
8        We met briefly this morning, and I haven't
9  asked yet, have you ever had your deposition taken?
10    A.  No, I haven't.
11    Q.  Okay.  Let me run you through some of the
12  ground rules just so that you're comfortable, and if
13  you have any questions, as I introduce some of the
14  rules, please let me know.
15        Generally speaking, you've just been sworn in
16  and so your testimony today is the equivalent as if you
17  were in a court of law.
18        Because everything we're saying is being taken
19  down by the court reporter, I'm going to ask that you
20  try and make all your answers audible as opposed to
21  shaking your head or body language which can't
22  otherwise be picked up by the court reporter.
23        This is supposed to be just kind of a
24  conversation and as is typical in conversations, we may
25  tend to speak over each other, so we want to try, to

## Page 5

1  the best extent possible, to let me ask my questions;
2  I'll try and let you answer fully so that we have a
3  clean transcript.
4        You may hear your counsel object to certain
5  questions.  Unless he directs you otherwise, you --
6  they mark the objection for the record, and then you
7  respond to my question.  But certainly any direction
8  you receive from counsel should come through him.
9        Do you have any questions about that?
10    A.  No.
11    Q.  All right.  As I ask my questions, I'm going to
12  assume that you understand what I'm asking unless you
13  tell me otherwise.  Please feel free if you don't
14  understand what I'm getting at or you'd like me to
15  rephrase, I'm happy to do so, so just ask.
16        All right.  What have you done to prepare for
17  today's deposition?
18    A.  I -- well, I had some discussion with Duncan
19  over the phone and I reviewed our Internet policy
20  that's in our policy manual.
21    Q.  Okay.  Can you tell me briefly what you
22  discussed with Duncan?
23    A.  Mostly was logistics of what is in a
24  deposition, you know, how best to answer the questions,
25  that it's best to stick with, you know, what I really

2 (Pages 2 to 5)

58e03572-1282-4f61-bef6-c8174332bd8b

Page 18

1    Q. Do you know what the prior policy was?
2    A. No, uh-uh.
3    Q. How is the administration of the Jefferson
4  County Library set up? Is there a governing board?
5    A. Uh-huh.
6    Q. How many people are on the board?
7    A. There are five people on the board. They are
8  elected.
9    Q. For -- for a term of years?
10    A. Yeah, for two years.
11    Q. Two years. Okay.
12      Who are the current board members?
13    A. The board chair is Stephen Hillis.
14    Q. Uh-huh.
15    A. There's also Susan Stovall; Leslie Weigand,
16  W-e-i-g-a-n-d; Cathy Luther, Cathy with a C; and Marie
17  Glenn. There's two Ns in Glenn.
18    Q. Okay. So Stephen Hillis is the chair?
19    A. Uh-huh.
20    Q. Do the other individuals you've named have
21  titles, for example, secretary or president?
22    A. We have a vice chair. We just changed. I
23  should know this. I'm pretty sure Marie Glenn is the
24  vice chair.
25    Q. And how are they selected?

Page 19

1    A. They're -- they're elected.
2    Q. By whom?
3    A. By the district, by the library district. You
4  know, there's -- you know, there's a vote and people
5  vote for who it's going to be, everybody in the
6  district, so it's on a regular ballot.
7    Q. It's on a ballot?
8    A. Yeah.
9    Q. All four or five individuals are subject to a
10  ballot vote?
11    A. Uh-huh.
12    Q. So do they all live in different parts of the
13  district? Is it geographically based?
14    A. No, uh-uh.
15    Q. Okay. There's just five positions and anyone
16  within the district can run?
17    A. Yeah. Uh-huh.
18    Q. What are the board's duties?
19    A. Their duty is to set policy and to, you know,
20  monitor that the policies that they put in place are
21  being followed, to give direction to the library and --
22  you know, they're on a more broader, more global level.
23    Q. How often does the board meet?
24    A. Once a month.
25    Q. Are you present at those meetings?

Page 20

1    A. Yes.
2    Q. So did the board adopt the current Internet
3  usage policy --
4    A. Yes.
5    Q. -- for Jefferson County?
6    A. Yeah, uh-huh. It's been in place since before
7  I got here and they were the ones that did.
8    Q. So you were not there when they adopt --
9  formally adopted the policy?
10    A. That's right.
11    Q. All right. Do you know roughly when that was,
12  when it was adopted?
13    A. Not off the top of my head, but it's dated in
14  the policy manual. Well -- (reading).
15      It's dated November 6, 2001.
16    Q. So understanding that this -- that the date the
17  policy was adopted predates your employment here, you
18  may not know the answer to this question. Do you have
19  any idea whether or not that policy, the Internet use
20  policy, was adopted unanimously?
21    A. I don't know that.
22    Q. Do you attend -- I may have asked you this. Do
23  you attend the board meetings?
24    A. Uh-huh. Yeah.
25    Q. Do you -- what is your role there? Do you have

Page 21

1  a separate title at the board meeting?
2    A. I'm clerk of the board.
3    Q. And what do your job responsibilities include
4  with respect to that?
5    A. Mostly -- I print up the agenda for the meeting
6  and I prepare any documents that need to be prepared
7  for it, and I usually e-mail those off to the board a
8  week to five days before the meeting and, you know,
9  just assimilate any information that they need at the
10  time.
11      I have been also a person that takes minutes,
12  but I usually have another staff member actually come
13  and take minutes now. It's difficult to do both.
14    Q. It's hard to concentrate --
15    A. Yeah, and write everything down at the same
16  time.
17    Q. -- on what's going on.
18      How many Internet accessible computers are
19  there in the Jefferson County Library?
20    A. Public?
21    Q. Yes.
22    A. Six.
23    Q. And Internet access at all six computers is
24  unfiltered, correct?
25    A. That's correct.

6 (Pages 18 to 21)

## Page 22

1     Q. Is there a staff member who is in charge of
2 collection development or is there collection manager?
3     A. Officially, probably not, but we do have one
4 member that does most of the collection development --
5 well, it's divided up.
6     Q. And how so?
7     A. Well, there's a youth services librarian and
8 she, of course, does for all of the children's and
9 young adult books.
10     And we have a Spanish services coordinator who
11 does all of the collection for our -- our books and
12 materials that are in the Spanish language.
13     And then DeRese Hall is kind of our
14 acquisition's person. She usually decides, you know,
15 what to buy and purchases it, but most of the staff
16 gives her ideas and we also take a lot of suggestions
17 from the public, so...
18     Q. Is there a formal request process for patrons
19 who are seeking materials?
20     A. Yeah, we do have a little form that they can
21 fill out and, I think, request that we can purchase.
22     Q. And is that for all materials, books, videos,
23 periodicals?
24     A. Yes.
25     Q. Anything that that does not apply to, the form?

## Page 23

1     A. Well, it applies to everything.
2     Q. Do you get a lot of -- "a lot" is kind of
3 hard -- vague.
4     Do you have frequent requests for materials,
5 for example, on a monthly basis?
6     A. I would say not. We maybe get -- maybe a
7 couple a week, if that, which I don't think is
8 excessive or a lot.
9     Q. How do you determine whether or not to purchase
10 an item?
11     A. An item? It is -- we do have a policy on that.
12 We do try to get things that are on the top ten list,
13 Publishers Weekly list, you know, things that -- you
14 know, as far as nonfiction goes, things that are going
15 to -- you know, that are really popular. We do that
16 with fiction as well as with nonfiction.
17     Also kind of based on, you know, what the
18 collection -- especially nonfiction, you know, is a
19 certain section, does it need updating, are the books
20 getting too, you know, outdated or is there just not
21 enough on a particular subject so we need to, you know,
22 get that on order. Sometimes if something really good
23 in that particular subject has just been published,
24 we'll get that and probably get rid of something that's
25 not getting used as much.

## Page 24

1     Q. Do you recall any instance where someone has
2 made a request to purchase -- or to have you purchase
3 any sort of material, whether it be book, periodical or
4 video, that you elected not to purchase on the grounds
5 that it was inappropriate content?
6     A. No, uh-uh.
7     Q. Is that because you haven't -- aren't aware of
8 such a request or there hasn't been --
9     A. I don't think there's really been a request
10 where there has -- you know, it was for inappropriate
11 content.
12     Q. How is it determined whether or not something
13 will be purchased once one makes the request and, let's
14 say, you decide this is a good idea, this is a book
15 that's on the New York Times Best Seller, we've got a
16 lot of interest, then what happens? What's the
17 process?
18     A. After we decide to get it?
19     Q. Yeah.
20     A. The book is ordered.
21     Q. Is there a budget --
22     A. Yeah.
23     Q. -- specifically for those materials?
24     A. Well, we just have a general budget.
25 Regardless of how the book was chosen, we just have a

## Page 25

1 general budget for all the books.
2     Q. Who would be involved in the decision of
3 whether or not to acquire an item?
4     A. Usually our acquisition's person does that, but
5 if she has questions, she'll either ask me or maybe one
6 of the other staff members who may have more knowledge
7 in that particular area for -- you know, get an
8 opinion, something like that.
9     Q. What is the mission? Is there a formal
10 mission, a written mission, for the Jefferson County
11 Library?
12     A. Uh-huh.
13     Q. And what is that in your own words?
14     A. In our own words, it's basically to provide
15 access to information, to provide educational,
16 recreational opportunities for the public, to, you
17 know, provide I think a gathering place is also part of
18 it, if I remember correctly.
19     Q. And I think I actually saw something online and
20 I wanted to verify --
21     A. Yeah, you saw online.
22     Q. Okay. So I'm going to go ahead and introduce
23 this as an exhibit.
24     Sorry, Duncan, I didn't give you the heads-up
25 on that one, but it is online.

Esquire Depositions
206-624-9099

158

58e03572-1282-4f61-bef6-c8174332bd8b

Page 30

1       MR. MANVILLE: Yeah, that's about right, and
2  also just how the computer terminals have been set up
3  in terms of whether the access is filtered or
4  unfiltered, that sort of thing. We're not -- we
5  wouldn't be looking for Sally to be testifying about
6  any more technical issues.
7       MS. MONROE: Okay. And that's what I thought.
8  BY MS. MONROE:
9       Q. Are you comfortable with that?
10      A. Yeah, yeah. That's fine.
11      Q. The next part of that sentence reads that you
12  would have information regarding how the JCLD's
13  Internet policies and procedures have been implemented.
14      A. Uh-huh. Yeah.
15      Q. You're comfortable with that?
16      A. Yeah.
17      Q. At least to the extent of time that you've been
18  here, correct?
19      A. Yes.
20      Q. All right. The next part of the sentence
21  suggests that you have information regarding your own
22  experience working with Internet policies, procedures
23  and filters.
24       Do you feel comfortable testifying to that?
25      A. Uh-huh. Yes.

Page 31

1       Q. And, finally, that you would have information
2  regarding the consequences, if any, of providing
3  unfiltered Internet access at the JCLD's computers.
4       A. Yes.
5       Q. Yes, you would feel comfortable testifying to
6  that?
7       A. Uh-huh. Yes.
8       Q. Okay. Great.
9        So let's take some of these things
10  individually, and let's start by introducing the actual
11  computer/Internet policy.
12       (DEPOSITION EXHIBIT NO. 62
13        was marked for identification.)
14  BY MS. MONROE:
15      Q. Ms. Beesley, the court reporter has just handed
16  you what is marked Exhibit 62. Please take a minute to
17  review this document and let me know if this is the
18  current computer/Internet policy for the Jefferson
19  County Library District.
20      A. (Reading.) This is our -- our current policy.
21  The only exception -- and we are in the process of
22  updating our policy book -- is on -- under No. 2 where
23  it says they can sign up for a maximum of two one-hour
24  slots per week. We have changed that so they can have
25  one hour per day. That's not -- and there's no limit

Page 32

1  as to two hours per week. That's the only other
2  exception.
3       Q. So point No. 2 is in the process of being
4  changed but has not been formally adopted?
5       A. Well, the -- it's been adopted, but the policy
6  manual itself has not been updated yet.
7       Q. All right. So I think your prior testimony was
8  that this -- as it appears on Exhibit 62, that this
9  policy was adopted in November 2001?
10      A. Uh-huh.
11      Q. Do you have any idea whether or not this -- the
12  current policy in Exhibit 62 has changed in any way
13  since 11 of 2001, meaning was there a prior iteration
14  of this policy?
15      A. Before 2001?
16      Q. Before -- before how it appears in Exhibit 62.
17      A. I don't know.
18      Q. Was this the same policy as when you started
19  three years ago?
20      A. Yes, it is.
21      Q. Okay. And, again, you were not involved in
22  drafting or proposing this policy, correct?
23      A. That's correct.
24      Q. Do you know of the five board members that you
25  previously identified which of those individuals was

Page 33

1  involved in implementing this computer/Internet policy?
2       A. I know that everybody except for Cathy Luther
3  was a board member at that time. I could be wrong.
4  Steve Hillis might have come on later.
5       Q. So based on that answer, then, their terms are
6  two years but they can be -- board members can be --
7       A. Reelected.
8       Q. -- reelected?
9       A. Yes, they can.
10      Q. Is that an indeterminate amount of time? Could
11  they continue to run and be elected for any number of
12  years or is there a limit?
13      A. There's no limit.
14      Q. Okay. So the first paragraph of the policy
15  sets out the -- the terms of use with respect to the --
16  the aspect -- let me strike that.
17       It appears that the first paragraph sets out
18  the rules with respect to filtering.
19      A. Uh-huh.
20      Q. Is that correct?
21      A. Pretty -- yeah, I think that's an accurate
22  assessment.
23      Q. Okay. And my reading of this policy is that --
24  and based on your prior testimony -- is that the
25  library does not monitor the computers and that there

159

58e03572-1282-4f61-bef6-c8174332bd8b

## Page 34

1 is no filter on the computer; is that correct?
2 　　A. Well, that is true. Although the word
3 "monitor" might be interpreted a few different ways or
4 defined different ways.
5 　　Q. So where the policy itself reads in the third
6 line, "The library does not monitor the computers and
7 has no control over information accessed through the
8 Internet," is there some difference in how you are
9 using the word "monitor"?
10 　　A. What we're saying there is, you know, we're
11 not -- we're trying to explain to the people that what
12 they access on the Internet may or may not be accurate.
13 It may or may not be reliable information. You know,
14 we have -- I think it's, you know, saying we don't have
15 control over what's on there, and so -- and I think
16 that's a way they use the word "monitoring" there.
17 　　Q. Okay. Which would be supported by the next
18 sentence which reads, "Valuable information is
19 available through the Internet, but not all sites are
20 accurate, complete, current or free."
21 　　A. Yeah.
22 　　Q. Correct?
23 　　A. Uh-huh.
24 　　Q. Okay. The next sentence reads, "Many sites may
25 carry information some consider inappropriate."

## Page 35

1 Do you have any other document or policy
2 defining the word or term "inappropriate"?
3 　　A. No.
4 　　Q. What does that word mean to you?
5 　　A. Inappropriate?
6 　　Q. Uh-huh.
7 　　A. To me that would mean pornographic sites.
8 　　Q. Does that mean beyond -- strike that.
9 　　　　Does that include child pornography?
10 　　A. Yes.
11 　　Q. And other pornography not involving children?
12 　　A. That's correct.
13 　　Q. Is there any other content beyond pornographic
14 content that you would personally consider
15 inappropriate for this library setting?
16 　　A. I personally would consider inappropriate?
17 　　Q. (Nods head.)
18 　　A. I would also consider inappropriate language,
19 foul language, as inappropriate for a library setting.
20 　　Q. What about content depicting extreme violence?
21 　　A. Written or --
22 　　Q. Visual.
23 　　A. -- visual?
24 　　Q. Visual depictions.
25 　　A. That's a good point. But that's a tough one.

## Page 36

1 　　There's -- you know, if somebody's looking on
2 information on the war in Iraq, they're going to get
3 violent pictures. If -- you know, but on the other
4 hand, if somebody's just looking for something very
5 sadistic, you know, there's -- so how -- it would
6 depend, you know, on how -- I don't know if you could
7 say purpose, you know. I could see where some violent
8 content might be -- you know, that's a tough one to
9 answer because if they are looking for something
10 legitimately, information on the Iraqi war or if they,
11 you know, wanted to see -- you know, if there's an
12 earthquake somewhere and they wanted to see what's
13 going on, is that appropriate for a library or not, I
14 would guess it would probably be considered
15 appropriate.
16 　　Q. Okay. So is it your testimony, then, it would
17 depend on the nature of the site and/or the intent of
18 the user?
19 　　A. In my personal opinion, yes.
20 　　Q. The last line of the policy reads, "Anyone who
21 violates the computer/Internet policy can be asked to
22 leave and/or forfeit library privileges. The library
23 will decide duration of the disciplinary action."
24 　　　　Is it fair to say that if you or your staff
25 observe someone viewing something that you think is

## Page 37

1 inappropriate, they can be asked to leave?
2 　　A. That's correct.
3 　　Q. Do you have specific instances where that has
4 happened?
5 　　A. Where people have been asked to leave? Yes.
6 Not very often. Usually what we do is tell them that
7 the sites that their vision -- that they are viewing
8 aren't appropriate for a library setting and ask them
9 to stop. And as long as they, you know, stop whatever
10 they're doing, they're allowed to stay on. If it's an
11 ongoing problem or they refuse to, then we would ask
12 them to leave, but that rarely happens.
13 　　Q. Is it -- is it fair to say that whether or not
14 something is inappropriate or appropriate for a library
15 setting is based also in part on your -- the library's
16 rules of conduct policy? Are those to be read
17 together?
18 　　A. Yeah, they -- I would say that would be an
19 appropriate answer.
20 　　Q. Okay.
21 　　A. There's --
22 　　　　MS. MONROE: Let's introduce that, rules of
23 conduct.
24 　　　　(DEPOSITION EXHIBIT NO. 63
25 　　　　was marked for identification.)

10 (Pages 34 to 37)

## Page 38

1  BY MS. MONROE:
2      Q.  You've been handed Exhibit 63.  Please review
3  that briefly and let me know if this is the current
4  Jefferson County Library rules of conduct policy.
5      A.  Yes, this is our current rules of conduct.
6      Q.  Okay.  So we've just discussed how the
7  computer/Internet policy and the rules of conduct
8  policy may be read together to potentially inform the
9  staff or yourself on what is or is not appropriate.
10     A.  Uh-huh.
11     Q.  Can you point out specific paragraphs within
12 the rules of conduct policy that you think you might
13 point to if an individual was, for example, in the
14 library viewing pornography?
15     A.  Well, under 1, the second item where it says
16 "displaying obscene materials" would be one.
17     I think that's the one most directly --
18     Q.  Would you consider someone viewing pornography
19 at the library at a personal computer to be potentially
20 disturbing other library users who might be seated next
21 to them?
22     A.  Yeah.
23     Q.  Okay.  So in that respect, would also under
24 rules of conduct policy 1(a)(i), willfully disturbing
25 other users, might that be another --

## Page 39

1      A.  In a general sense, yeah, it could.
2      Q.  In the first paragraph, I noted that -- there's
3  a sentence that reads, "Persons not engaged in normal
4  library activities may be asked to leave the building."
5      Can you explain to me what that sentence means
6  to you, "normal library activities," that phrase?
7      A.  Normal library activities would be, you know,
8  involved with -- you know, looking for books or reading
9  or, you know, other materials or using the public
10 computers.  Studying would be approp- -- wouldn't be a
11 normal activity.
12     Q.  Or would be?
13     A.  It would be, yeah.
14     Q.  Okay.  What would not be a normal library
15 activity?
16     A.  A normal library activity -- would be loud
17 conversations, eating or just loitering; sleeping would
18 be not -- would not be one.
19     Q.  Okay.
20     A.  And certainly any illegal activities on a
21 public computer would not be considered a normal
22 library activity.
23     Q.  So do you -- when you say "any illegal
24 activity," do you personally believe that that includes
25 the viewing of child pornography?

## Page 40

1      A.  Yes, as defined by Oregon law.
2      Q.  And what about the viewing of obscenity?
3      A.  Yeah, if -- you know, anything that's, you
4  know, contradicting anything that's in the state or
5  federal law, of course, would not be considered
6  appropriate library activity.
7      Q.  Although I can see the computers from where I'm
8  sitting, for the record --
9      A.  For the record.
10     Q.  -- I want to make sure that we understand how
11 the computers are configured.
12     So you said there's six library computers?
13     A.  Uh-huh.
14     Q.  Can you explain generally where those computers
15 are in the building relative to the circulation desk.
16     A.  Okay.  As you're facing the circulation desk,
17 they are just off to the right.  They're in a -- very
18 public area.  They're just in a row side by side.  We
19 are limited for space, so we do have them fairly close
20 together.
21     Q.  Do you utilize any -- strike that.
22     Do you take any special precautions with
23 respect to patron's privacy?  For example, do you use
24 recessed desks?
25     A.  No, we don't.

## Page 41

1      Q.  Do you use privacy screens?
2      A.  No, we don't use that either.
3      Q.  Okay.  So is it possible if I walk by the
4  computers just casually as they sit in this environment
5  to see what anyone would be looking at on the Internet?
6      A.  That's correct.
7      Q.  Okay.  What is your opinion with respect to the
8  level of privacy afforded a patron in a public library?
9      A.  There's very little privacy in this particular
10 library.  It is -- as -- since libraries are public
11 buildings and pretty much anybody can go anywhere, I
12 would say there's not a lot of privacy in a public
13 library.
14     Q.  Okay.  So you haven't taken extra steps to, for
15 example, install recessed desks or privacy screens to
16 ensure that only the individual sitting -- or attempt
17 to ensure that only the individual seated at the
18 computer can see the content on the screen?
19     A.  That's correct.
20     Q.  Okay.  Is it common practice for staff to
21 occasionally walk by to monitor what is -- what patrons
22 are viewing on the Internet?
23     A.  Not formally or -- you know, we don't have
24 anything that says we are going to check every 15
25 minutes or so, but in the course of their other duties,

11 (Pages 38 to 41)

58e03572-1282-4f61-bef6-c8174332bd8b

1  they do occasionally check to see what, you know -- or
2  just glance to see if there's any inappropriate content
3  at all.  We, of course, don't get close enough to
4  actually read text.  You practically have to lean over
5  their shoulder to do that which would -- which would
6  not be a best way to do things.
7      Or if we have reason to suspect that something
8  is going on, if -- or if there's a gathering of people
9  around a particular computer and it's getting a little
10  noisy or boisterous, often somebody will go over and
11  ask them to break up or, you know, ask them to be
12  quiet, and in the process of doing that they may also,
13  you know, notice what is on the screen at that time.
14  Q.  Okay.  With respect to general experience with
15  the Internet computers here, how typically are concerns
16  about inappropriate content brought to the attention of
17  staff?
18  A.  There are a couple ways.  Staff will often
19  notice it as they're in the course of their other
20  duties, and on occasion some of the volunteers who are
21  here will mention to a staff member that they saw
22  something they judge to be inappropriate on a computer.
23  Sometimes -- although not very often -- a person
24  sitting next to somebody might come to the desk and
25  report something.

1  Q.  How frequent are complaints about patrons
2  viewing inappropriate content on the public use
3  computers?
4  A.  I'd say they're infrequent.
5  Q.  Okay.  And what does that number -- can you --
6  A.  Maybe a few a year.
7  Q.  And is that inclusive of staff noticing it,
8  volunteers noticing it and patron complaint?
9  A.  I'd say that's patron complaint.  Staff or
10  volunteers noticing things would probably be a little
11  bit more common.  Still I would say it's not real
12  often.
13  Q.  Once a month?
14  A.  Every other month maybe.  Yeah, once a month,
15  every other month.
16  Q.  Are you personally comfortable with the
17  Jefferson County Library District's Internet policy of
18  not filtering?
19  A.  I'm comfortable with it.  I think that the --
20  the way we're working with it now works, I think.  But
21  I would also like to say that I think that providing
22  filtered computers for those parents who would prefer
23  that their children have filtered access is worth
24  looking into, similar to what Deschutes County is
25  doing.

1  Q.  Do you know if your staff shares your opinion?
2  A.  There are varied opinions within the staff.
3  Q.  And what are those varied opinions?
4  A.  Some opinions -- some of the staff are very
5  much supportive of unfiltered access.  Others would
6  prefer filtered access.
7  Q.  And do you know why they would prefer that?
8  A.  The ones who would prefer filtered access feel
9  that way because then inappropriate content is
10  filtered, for the most part, and it -- it kind of does
11  their job for them.  They don't have to go to people
12  and say that's not an appropriate site for this library
13  setting.
14      Those who do want unfiltered access, their
15  philosophy -- or, you know, the people -- is that the
16  filters often filter out things that, inadvertently,
17  that really don't need to be filtered.  For example,
18  often medical things will get filtered out due to, you
19  know, wording or nudity involved with it which wouldn't
20  be pornographic but might still deny -- you know,
21  create it so they can't get access to it.  And staff
22  members who just have a -- generally a more liberal
23  view that if these are -- you know, this is what the
24  patron is looking for, that's their business.
25  Q.  So the staff has varied -- by your own words --

1  varying views on the subject?
2  A.  Yeah.  There are those that are definitely
3  either for or against.
4  Q.  So the ones who are for it, is it your
5  testimony that it's -- you had said because it helps
6  them do their job.  Is that also because it limits
7  confrontation with patrons?
8  A.  Yes.
9  Q.  You had said that you might be a proponent of
10  providing filtering for kids similar to how Deschutes
11  County operates their filter.
12      Do you have any opposition to filtering for
13  adults on any level?
14  A.  Do I personally have?
15  Q.  (Nods head.)
16  A.  I don't have any opposition to it, no.  You
17  know, I've worked in libraries where it's been both
18  ways, and there are ways to make it work either way.
19  Q.  Okay.  So would you be opposed to a filter, for
20  example, that blocked pornographic images for all
21  users?
22  A.  I wouldn't be opposed to that, no.
23  Q.  Okay.  Do you know, did the Jefferson County
24  Library District ever consider a filter?
25  A.  Not that I'm aware of.

12  (Pages 42 to 45)

58e03572-1282-4f61-bef6-c8174332bd8b

Page 58

1 confrontation --
2    Q.  Okay.
3    A.  -- for them.  Not from unfiltered.
4    Q.  Okay.  Are you aware of any instances at the
5 JCLD in which there has been a confrontation between
6 library staff and an adult patron who was viewing
7 material online that was inappropriate under the
8 library's rules of conduct policy?
9    A.  There have been occasions where staff member
10 has gone -- has gone to a -- a person and said you need
11 to, you know, leave that site; it's not appropriate for
12 the library setting or, you know, whatever wording they
13 used.  And as far as I know, everyone that they've ever
14 asked, you know, to stop viewing the site that they
15 were on or asked them, you know, to take that site off
16 the screen have, you know, gone along with it and, you
17 know, done what the staff member asked them to do
18 without any incident.
19    Q.  Okay.
20    A.  So, I mean, there's -- you know, so if you're
21 calling that a confrontation, yes, staff has had to say
22 to people, you know, you can't -- you know, that's not
23 appropriate; an inappropriate site.  So in that sense
24 it's a confrontation, but did it become an issue, no,
25 uh-uh.  In just about every case that I can think of

Page 59

1 the person said, oh, okay, fine, and immediately left
2 the site and did something else.
3    Q.  So your testimony earlier, that some of the
4 librarians would prefer to not have to go up to a
5 patron and say could you please stop looking at that
6 material?
7    A.  That's true.  And if they're filtered, the
8 likelihood that they were looking at inappropriate
9 material would be less.
10    Q.  Okay.  You also testified, I believe -- and
11 correct me if I'm misstating this -- but that in
12 general it would be helpful to know something about the
13 North Central Regional Library District's policy and
14 community to testify in this case.  Is that what you
15 said?
16    A.  I think what I thought I said was if I knew
17 things like that -- what did I say?  I can't really
18 remember.  It just --
19    Q.  Well, I guess -- let me ask you this:  Do you
20 think that you need to know anything about the NCRL's
21 policies and community to testify as a fact witness
22 regarding the matters described in Exhibit 61?
23    A.  No, I don't think -- I mean -- boy, that's a
24 tough one.
25       I think I can still give an overall -- what's

Page 60

1 the word -- opinion or statement on what works without
2 knowing their particular policy.
3    Q.  Okay.  So, for example, you would be able to
4 testify regarding alternatives that have been
5 implemented at libraries where you've worked,
6 alternatives to filtering?
7    A.  Yeah, I could testify as to --
8    Q.  That alternatives have been implemented?
9    A.  Yeah, that there are alternatives out there,
10 yes.
11    Q.  Okay.  And you would be able to testify as a
12 fact witness regarding what the JCLD's Internet
13 policies and procedures are, correct?
14    A.  Correct.
15    Q.  And how the JCLD's computer terminals have been
16 configured, right?
17    A.  Yes.
18    Q.  And how the JCLD's Internet policies and
19 procedures have been implemented, correct?
20    A.  Correct.
21    Q.  And what the consequences of the implementation
22 of those policies have been at the JCLD, correct?
23    A.  Yes.
24       MR. MANVILLE:  Okay.  I think those are all the
25 questions I have.  Thanks.

Page 61

1       THE WITNESS:  Okay.
2       MS. MONROE:  Hang one sec.
3          FURTHER EXAMINATION
4 BY MS. MONROE:
5    Q.  Okay.  Really quickly.
6       Do you understand that the lawsuit that was
7 brought by the plaintiffs in this case is what's called
8 a declaratory action, meaning they're asking the court
9 to force NCRL to remove its filter completely at an
10 adult patron's request?  Did you know that?
11    A.  I believe I did.
12    Q.  Okay.
13    A.  It's been awhile since I talked to anybody
14 about it, but I think that I understood that, yeah.
15    Q.  Okay.  And presumably your testimony is, as
16 counsel says, to show an alternative to filtering
17 because you don't have a filter here, correct?
18    A.  Correct.  Yeah, to demonstrate that we are
19 doing -- we're using different tools.
20    Q.  Okay.  And those tools, you know, are
21 presumably effectuating your library district's policy,
22 correct?
23    A.  Uh-huh.
24    Q.  Okay.
25    A.  Yeah.

16  (Pages 58 to 61)

58e03572-1282-4f61-bef6-c8174332bd8b

Page 62

1     Q. Do you have any opinion, as you sit here today,
2  as to whether or not NCRL's policy with respect to
3  filtering is furthering their specific mission?
4     A. I don't know.  I haven't really -- I don't have
5  an answer for that.
6     Q. Okay.  So you don't have an opinion on that?
7     A. Correct.
8        MS. MONROE:  Okay.  I have no further
9  questions.
10        MR. MANVILLE:  Okay.  I have no more questions.
11  I think we're done.
12        (Deposition concluded at 12:42 p.m.)
13             * * *
14
15
16
17
18
19
20
21
22
23
24
25

Page 63

1  STATE OF OREGON       )
2                        )
3  COUNTY OF DESCHUTES   )
4
5     I, LISA I. KROON, do hereby certify:
6     That SALLY W. BEESLEY, in the foregoing deposition
7  named, was present and by me sworn as a witness in the
8  above-entitled action at the time and place therein
9  specified;
10     That said deposition was taken before me at said
11  time and place, and was taken down in shorthand by me,
12  a Certified Shorthand Reporter of the State of Oregon
13  and a Registered Professional Reporter, and was
14  thereafter transcribed into typewriting, and that the
15  foregoing transcript constitutes a full, true and
16  correct report of said deposition and of the
17  proceedings that took place;
18     IN WITNESS WHEREOF, I have hereunder subscribed my
19  hand this 23rd day of January 2008.
20
21
22
23  _____  _____
       LISA I. KROON, CSR No. 95-0311
24       Registered Professional Reporter
25

17 (Pages 62 to 63)

58e03572-1282-4f61-bef6-c8174332bd8b

# Exhibit I

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

AT SPOKANE

---

|  |  |
|---|---|
| SARAH BRADBURN, PEARL CHERRINGTON, CHARLES HEINLEN, and THE SECOND AMENDMENT FOUNDATION, | ) ) ) ) |
| Plaintiffs, | ) NO. ) CV-06-327-EFS |
| vs. | ) ) |
| NORTH CENTRAL REGIONAL LIBRARY DISTRICT, | ) ) ) |
| Defendant. | ) |

---

DEPOSITION UPON ORAL EXAMINATION OF
SARAH MARIA BRADBURN

---

TAKEN ON:    Monday, August 13th, 2007

TAKEN AT:    Omak Library
             30 South Ash
             Omak, Washington

START TIME:  1:42 P.M.

END TIME:    2:55 P.M.

REPORTED BY:  BARBARA J. SCOVILLE, CCR, RPR
              CCR NO. 2124

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

SARAH BRADBURN, PEARL CHERRINGTON,  )
CHARLES HEINLEN, and THE SECOND      )
AMENDMENT FOUNDATION,                )
                                     )
          Plaintiffs,                ) NO.
                                     ) CV-06-327-EFS
     vs.                             )
                                     )
NORTH CENTRAL REGIONAL LIBRARY       )
DISTRICT,                            )
                                     )
          Defendant.                 )

DEPOSITION UPON ORAL EXAMINATION OF
SARAH MARIA BRADBURN

TAKEN ON:   Monday, August 13th, 2007
TAKEN AT:   Omak Library
            30 South Ash
            Omak, Washington
START TIME: 1:42 P.M.
END TIME:   2:55 P.M.

REPORTED BY:  BARBARA J. SCOVILLE, CCR, RPR
              CCR NO. 2124

## Page 2

1   APPEARANCES:
2   FOR THE PLAINTIFFS:
3       MR. DUNCAN MANVILLE, ESQ.
        RAFEL MANVILLE, PLLC
4       Attorneys at Law
        999 3rd Avenue
5       Suite 1600
        Seattle, Washington 98104
6       (206) 838-2660
7
8   FOR THE DEFENDANT:
9       MR. THOMAS D. ADAMS, ESQ.
        KARR TUTTLE CAMPBELL
10      Attorneys at Law
        1201 Third Avenue
11      Suite 2900
        Seattle, Washington 98101
12      (206) 223-1313
13
14
15
16  ALSO PRESENT:  MR. DEAN MARNEY
                   MR. DAN HOWARD
17
18
19
20
21
22
23
24
25

## Page 3

1              I N D E X
2   In re:  SARAH BRADBURN vs. NORTH CENTRAL REGIONAL LIBRARY
        Case No.: CV-06-327-EFS
3   Date:  August 13th, 2007
4
5
6
7         T E S T I M O N Y
8   EXAMINATION                    PAGE NUMBER
9   By Mr. Adams                   4
10
11
12
13
14         E X H I B I T S
15  14   Notice of Deposition of Mrs. Sarah      38
         Bradburn
16
    15   Sarah Bradburn's Objections, Answers    38
17       and Responses to Defendant's First
         Interrogatories and Requests for
18       Production
19
20
21
22
23
24
25

## Page 4

1        BE IT REMEMBERED that on Monday,
2   August 13th, 2007, at 1:42 p.m., at Omak Library,
3   30 South Ash, Omak, Washington, the testimony of
4   MRS. SARAH MARIA BRADBURN was taken before Barbara
5   J. Scoville, Certified Court Reporter and Notary
6   Public.  The following proceedings took place:
7
8   SARAH M. BRADBURN,      being first duly sworn to
9                           tell the truth, the whole
10                          truth and nothing but the
11                          truth, testified as
12                          follows:
13
14          EXAMINATION
15  BY MR. ADAMS:
16  Q.  Would you state your full name, please.
17  A.  Sarah Maria Bradburn.
18  Q.  Okay.  Mrs. Bradburn or Ms. Bradburn?
19  A.  Mrs.
20  Q.  Mrs. Bradburn, my name is Tom Adams, and we had a
21      chance to meet just a moment ago.  And I'm the
22      lawyer that's representing North Central Regional
23      Library District in this lawsuit that has been
24      brought by you and others here in Federal Court for
25      the State of Washington.  And we're here today to

Page 5

1    find out a little bit about your particular role in
2    that lawsuit and maybe find out a little bit more
3    about the facts that support your particular claims.
4    Okay?
5    A. Okay.
6    Q. Have you ever had your deposition taken before?
7    A. No.
8    Q. Okay. Let me try to dispel some of the mystery, if
9    I can, just a bit. As you can see, we're going to
10   have a little bit of a discussion through a
11   question-and-answer dialogue. And our court
12   reporter over here is going to take down everything
13   that is said, both my questions and your answers.
14   And you have been put under oath, you realize;
15   correct?
16   A. Correct.
17   Q. Okay. And it's important for you to understand that
18   that oath has the same meaning, the same import,
19   here in this conference room as it would in a
20   federal district courthouse in some other location.
21   Okay?
22   A. Okay.
23   Q. Okay. A couple of other ground rules to remember to
24   make this process work as smoothly as it should and
25   it usually does, please remember to answer audibly

Page 6

1    when you're answering a question. A nod of the head
2    or a "uh-huh" or a "huh-uh" is difficult for our
3    court reporter to interpret. And it's human nature.
4    Everybody falls back on some of those nonverbal
5    responses sometimes. And if I prompt you now and
6    then, it's not because I'm being rude. It's just to
7    help make a better record. Okay?
8    A. Okay.
9    Q. Okay. If I ask a question that you don't
10   understand, please tell me, and I'll rephrase my
11   question in some way that's perhaps more helpful to
12   you. Okay?
13   A. Okay.
14   Q. A couple other things: I will be sure not to
15   interrupt your answer before I ask another question.
16   And by the same token, I would ask you not to
17   interrupt a question before I am finished asking it.
18   Fair enough?
19   A. Fair enough.
20   Q. That way the court reporter doesn't have to figure
21   out who said what when and it makes for a more
22   streamlined record. Okay?
23   A. Okay.
24   Q. If you want to speak privately to your lawyer,
25   Mr. Manville, you're welcome to do that. I would

Page 7

1    only ask that you wait until there's not a question
2    pending before you ask for that break. And if
3    that's the case, then I'm happy to provide you a
4    break as often as you want it. Okay?
5    A. Okay.
6    Q. All right. Have you ever been a party to civil
7    litigation before at any time?
8    A. No.
9    Q. Okay. How about criminal litigation?
10   A. No.
11   Q. And you've given us your full name. Do you have any
12   other names that you've gone by previously, any
13   aliases or other legal names?
14   A. My maiden name.
15   Q. Okay. What was that?
16   A. Kulotta.
17   Q. How do you spell that?
18   A. K-u-l-o-t-t-a.
19   Q. Okay. Are you married now?
20   A. Yes.
21   Q. Okay. How long have you been married?
22   A. Five years.
23   Q. Congratulations. And your husband's name?
24   A. Steve.
25   Q. Okay. And were you married before that?

Page 8

1    A. No.
2    Q. Okay. So this is your first marriage?
3    A. Correct.
4    Q. Okay. And what is your date of birth?
5    A. 4/5/50.
6    Q. Okay. And your address, please.
7    A. 26 Heron Loop, Republic, Washington 99166.
8    Q. How long have you lived there?
9    A. October of 2000. What does that make it, seven
10   years? Almost seven years. Not quite seven year.
11   Q. Okay. Prior to that, where did you live?
12   A. 71 McKeen, Republic, Washington.
13   Q. Okay. Approximately from when to when?
14   A. From '98 to 2000.
15   Q. Okay. And before '98? You don't have to have the
16   street address, just the town if it's a different
17   town.
18   A. No, same town.
19   Q. Okay. You've been a long-time resident of Republic,
20   it sounds like.
21   A. I came to northern Washington in '90 but not
22   Republic.
23   Q. Okay.
24   A. The Okanogan Valley.
25   Q. Okay. Do you have any children?

2 (Pages 5 to 8)

83248208-50f2-4d78-a09c-0058f44c8d7d

Page 9

1  A. No.
2  Q. Okay. I asked you about other legal names that
3     you've had over time; and you've provided your name,
4     of course, as well as your maiden name. Do you have
5     any screen names or online pseudonyms that you use
6     on the Internet?
7  A. No.
8  Q. Okay. Have you ever posted to a blog?
9  A. No.
10 Q. Do you know what a blog is?
11 A. I think I understand those now.
12 Q. Okay. Do you use e-mail?
13 A. I do.
14 Q. Okay. What's you're e-mail name?
15 A. It was smbradburn@fccs1.org.
16 Q. Okay. Do you have a new one?
17 A. I don't have any at this time.
18 Q. Okay. Do you have a computer at home?
19 A. No. Yes, but it's just to write my papers at
20    school. It's not connected. It's a word processor.
21 Q. Okay. So you don't have Internet access at home.
22 A. No Internet access.
23 Q. We'll come back to that in a minute. Tell me
24    a little bit about your educational background.
25 A. I have a BA in communications visual arts, four

Page 10

1     quarters toward a master's in final arts, and
2     44 credits toward a chemical dependency professional
3     certification at EWU.
4  Q. Where did you get your BA in visual arts?
5  A. UCSD.
6  Q. And where did you do your study toward your
7     master's?
8  A. UCSD.
9  Q. Did you ever put your art background or your art
10    training to work?
11 A. Not exactly.
12 Q. Okay. In any sense?
13 A. Not yet.
14 Q. Okay. What kind of artistic training or orientation
15    do you have? Was it photography? Painting? Some
16    other type?
17 A. The mediums I used in school were video and
18    photography and performance.
19 Q. Have you been an artist of any kind since you've
20    lived in the State of Washington?
21 A. Fiber art.
22 Q. What is that? Tell me what that means.
23 A. I dyed the yarn for this bag. And my dog died
24    March 5th and I dyed the yarn and knitted and felted
25    it. And then I moved on to Shibori work with silk

Page 11

1     and have been dying things.
2  Q. Very pretty.
3  A. Thank you.
4  Q. And you are studying now toward a certification
5     through Eastern Washington University in, what,
6     counseling others for chemical dependency; is that
7     right?
8  A. That was four years ago.
9  Q. Okay. So you're not still engaged in that course of
10    study?
11 A. No.
12 Q. I'm sorry, do you have that certification?
13 A. I don't.
14 Q. Are you intending to get it?
15 A. I am uncertain at this point.
16 Q. Okay. How far from obtaining that credential are
17    you?
18 A. One credit.
19 Q. One credit, okay. Other than what you've described,
20    have you taken any kind of a postgraduate course of
21    study anywhere?
22 A. No.
23 Q. Did you attend high school in the San Diego area?
24 A. No.
25 Q. Where did you attend high school?

Page 12

1  A. Baltimore, Maryland.
2  Q. Okay. What year did you graduate?
3  A. '68.
4  Q. What year did you get your degree from UCSD, your
5     BA?
6  A. I believe it was 1980.
7  Q. Do you hold any kind of professional credential that
8     we haven't already talked about?
9  A. No.
10 Q. Do you have a Washington driver's license?
11 A. Yes.
12 Q. Okay. Do you have an NCRL library card?
13 A. Yes.
14 Q. Okay. When did you get the library card by the way?
15 A. When they started giving them out.
16 Q. Four or five years ago, something like that?
17 A. Something like that.
18 Q. Okay. Are you currently employed?
19 A. No.
20 Q. Okay. When were you last employed, if at all?
21 A. July 31st.
22 Q. Last month?
23 A. Correct.
24 Q. Okay. What were you doing at that time?
25 A. Chemical dependency treatment.

3 (Pages 9 to 12)

83248208-50f2-4d78-a09c-0058f44c8d7d

Page 17

1 marked previously in another deposition. This is
2 Deposition Exhibit 6. Tell me if that letter looks
3 familiar to you, Mrs. Bradburn.
4 A. I don't remember this letter in particular. I would
5 doubt that I saw this letter.
6 Q. Why is that?
7 A. It's dated October 31st, 2000. I met my husband in
8 November 4th of 2000, and he is actually probably
9 the only one as -- listed as an ACLU member. I
10 don't know that I am. I may be.
11 Q. Okay.
12 A. But that was previous to my husband, and I wasn't
13 getting letters from the ACLU at that time.
14 Q. Okay. But you do remember seeing letters addressed
15 to you from ACLU?
16 A. My husband received a card --
17 Q. Okay.
18 A. -- and I responded to that.
19 Q. Okay. Is your membership in ACLU -- Well, I guess
20 I'm a little confused. Are you a member or is your
21 husband a member or do you know?
22 A. I really don't know.
23 Q. Okay.
24 A. We get mail and some of it is addressed to both of
25 us and some is just addressed to him and some, you

Page 18

1 know, obviously just to me.
2 Q. Okay.
3 A. I consider myself part of the ACLU as his wife. I
4 mean, I support the ACLU.
5 Q. Uh-huh.
6 A. Did I sign a card to say I'm an ACLU card-carrying
7 member? I don't know. I probably didn't.
8 Q. I bet you could at any time if you wanted. How did
9 you become involved in this lawsuit?
10 A. My husband received a card in the mail. It was a
11 little postcard. It was not that letter. It was a
12 little postcard that said, "Have you ever had any
13 trouble with the filters on the library?"
14     And he said, "I haven't. Have you?"
15     And I said, "You know, I think I have."
16     And I filled it out and here we are.
17 Q. Okay. When did those postcards come around to the
18 best of your knowledge?
19 A. That's what I was saying. I think it was 2004 or
20 five.
21 Q. Okay. All right.
22 A. It just -- My head for dates, specific dates and
23 times, is a little fuzzy. I'm sorry, but I don't
24 carry one of those little date calculators around in
25 my head, and time flows quickly.

Page 19

1 Q. It all blurs together. Do you belong to any other
2 organizations besides ACLU?
3 A. I'm a member of Alcoholics Anonymous.
4 Q. Okay. Anything else?
5 A. I have a membership to the gun club in Republic.
6 Q. Okay. Are you a member of the Second Amendment
7 Foundation?
8 A. No, I'm not.
9 Q. Okay. Are you familiar with Pearl Cherrington?
10 A. No.
11 Q. Charles Heinlen?
12 A. I vaguely recognize the names. But, no, I don't
13 know them.
14 Q. Okay. You mentioned a moment ago your husband
15 showed you the postcard. And you indicated in
16 response or as part of a conversation with him that,
17 yeah, you had had "a problem," quote unquote, with
18 the Internet filtering at the NCRL branch in
19 Republic; is that right?
20 A. Uh-huh.
21 Q. Is that "yes"?
22 A. Yes. Oh, sorry. Yes.
23 Q. Okay. Tell me about that. What specifically did
24 you encounter that you characterize as "a problem"?
25 A. When I was a student for the year that I went to

Page 20

1 Eastern, I commuted. I went to Eastern for the week
2 and commuted back to Republic on weekends. So some
3 of the assignments that I had, it was important for
4 me to do as much as I could over the weekend as well
5 as during the week. I went to the library to find
6 the research I needed on a particular paper. It was
7 a prevention class on teenage use of tobacco. And I
8 typed in "tobacco use by teenagers" or "teenage use
9 of" -- you know, "teenage tobacco use" or
10 "adolescent tobacco use," some particular form of
11 those words or maybe many of those and got nothing.
12 And I -- I didn't have enough computer savvy to know
13 why I got nothing. I didn't know that the Internet
14 was the same here as there, so I just concluded that
15 I couldn't do my work in Republic. And when I went
16 back to Spokane during the week, I went to the
17 Spokane library and got oodles of information.
18 Q. Typing in the same search?
19 A. Yes.
20 Q. Exactly the same search?
21 A. Yes.
22 Q. When you say you "got nothing," what do you mean?
23 A. No articles. Nothing came up. I got nothing.
24 Q. What showed on the screen?
25 A. I don't recall.

5 (Pages 17 to 20)

83248208-50f2-4d78-a09c-0058f44c8d7d

Page 21

1  Q. Did anything pop up indicating to you that you were
2     being blocked?
3  A. Not that I recall. I just really had no idea why I
4     got no information. I thought it a little odd, but
5     I just waited until I went to Spokane and did the
6     research there.
7        And it didn't -- it didn't ever -- you know, I
8     didn't dwell on that. I didn't think about that at
9     all until this card came, and I went -- then it kind
10    of connected in my head, "Oh, that's why I got no
11    information."
12 Q. But you don't recall seeing anything indicating that
13    the sites that you were attempting to access were
14    blocked or --
15 A. I don't recall that, no.
16 Q. Okay. You're talking about a search that you may
17    have entered on Google or some other search
18    engine -- is that right? -- or a particular Web site
19    address?
20 A. No particular Web site address. I didn't have one.
21 Q. Okay. You were just doing a search.
22 A. A search.
23 Q. Okay. Did you ask the librarian at the Republic
24    branch about what you were encountering?
25 A. No, I didn't.

Page 22

1  Q. Okay. Did you think -- did you think about doing
2     that, or did you just not think about it?
3  A. No, I just didn't do it.
4  Q. Okay.
5  A. I didn't think about doing it, and I -- it never
6     occurred to me.
7  Q. Okay. Are we talking about a single occasion when
8     this occurred?
9  A. Yes.
10 Q. Okay. Apart from that, have you ever had any other
11    instance of not being able to get from the Internet
12    what you thought you should be able to get at the
13    Republic branch?
14 A. No.
15 Q. Okay. Have you been to other branches within the
16    NCRL system?
17 A. Ever?
18 Q. Uh-huh.
19 A. Yes.
20 Q. To use the Internet, I mean.
21 A. Probably not.
22 Q. Okay. So your experience with the Internet, the
23    NCRL's Internet services, have been at the Republic
24    branch.
25 A. Correct.

Page 23

1  Q. Are you familiar with the NCRL Internet Use Policy?
2  A. Not specifically.
3  Q. Let me show you a document that we have marked in a
4     previous deposition as Exhibit 3. Take a look at
5     that, Mrs. Bradburn, and let me know when you've had
6     a chance to review it generally.
7  A. Okay.
8  Q. Have you seen this document before?
9  A. I believe it might be posted at our library.
10 Q. Okay. In Republic?
11 A. Uh-huh.
12 Q. Okay. And you think you might have seen it near the
13    computer terminal or somewhere in the library?
14 A. Somewhere in the library.
15 Q. Okay. So you've read this before today.
16 A. I think I have.
17 Q. Okay. Is it fair to say that you were aware that
18    the Internet was being filtered when you sat down to
19    use it?
20 A. I think I understood that, but I didn't understand
21    the extent of it.
22 Q. When you sit down at a terminal and you log on, are
23    there screens that you have to go through?
24 A. Yes.
25 Q. What do those screens say? What do they tell you or

Page 24

1     ask of you? Do you have to enter information, who
2     you are or your password or anything like that?
3  A. Yes. I think you have to enter the last four digits
4     of your phone number.
5  Q. Okay. Are there any other statements or permissions
6     that you have to accept or agree to, to proceed?
7  A. Gosh, I can't remember.
8  Q. You just kind of click through them and off you go?
9  A. Yes, I guess.
10 Q. Are you aware of NCRL's procedures,
11    mechanisms, that a patron is free to invoke if the
12    patron runs across a Web site that is blocked
13    because of the Internet policy?
14 A. I've heard that you can fill out a request card now
15    requesting that you be allowed access to a site.
16 Q. Okay. Have you ever taken that step?
17 A. No.
18 Q. Okay. Have you ever seen the form that you're
19    describing?
20 A. No.
21 Q. Let me show you a document that we marked in an
22    earlier deposition that as Exhibit Number 2. Take a
23    look at that if you would, please.
24 A. Okay.
25 Q. So have you seen a document similar to Exhibit 2

6 (Pages 21 to 24)

83248208-50f2-4d78-a09c-0058f44c8d7d

Page 33

1  software?
2  A. No.
3  Q. Okay. Or what categories were filtered by NCRL
4     using that software?
5  A. No.
6  Q. Do you know anything about how Fortinet classifies
7     particular Web sites within certain topical areas or
8     other topical areas?
9  A. No.
10 Q. Okay. Having been a substitute librarian for a time
11    in Republic, do you have a thought about how
12    libraries -- how NCRL goes about making
13    content-based decisions in determining what is in or
14    not in its collections?
15 A. No, I don't.
16 Q. Have you ever -- Were you ever a part of any
17    collection decisions?
18 A. No.
19 Q. Okay. Are you familiar with NCRL's mission
20    statement, Mrs. Bradburn?
21 A. Off the top of my head, no.
22 Q. Let me show you a document that we've marked
23    previously as Exhibit 4. You're free to look at it
24    in its entirety, but I'm really only interested in
25    asking you a question or two about the mission

Page 34

1  statement that's articulated in the first paragraph.
2  A. I think it was reiterated also on your second
3     document.
4  Q. Okay. The Internet Usage Policy?
5  A. Yes.
6  Q. Okay. So the mission statement as articulated by
7     NCRL is "to promote reading and lifelong learning."
8     Correct?
9  A. Uh-huh.
10 Q. Okay. Is that "yes"?
11 A. Yes, sorry.
12 Q. Okay. And is that in your view as a former
13    substitute librarian an appropriate encapsulation of
14    NCRL's mission?
15 A. Yes.
16 Q. And is NCRL's further stated goal of "creating a
17    safe place for children to come and learn" an
18    appropriate objective for the library to strive for?
19 A. Yes.
20 Q. Okay. Would you agree that the library exists to
21    serve the needs of all its patrons of any age?
22 A. Yes.
23 Q. Okay. Young kids and adults alike?
24 A. Yes.
25 Q. Okay. Would you also agree that in serving the

Page 35

1  diverse needs of the patrons the library has to
2  balance what is necessary and appropriate for the
3  needs of one group versus the other?
4  A. Yes.
5  Q. It's all about balance, isn't it?
6  A. Yes.
7  Q. Now, in your Complaint, Mrs. Bradburn, the central
8     tenant of the complaint seems to be that you and the
9     other plaintiffs are disputing the NCRL's policy of
10    not disabling the Internet filter upon the request
11    of an adult patron; is that right?
12 A. Yes.
13 Q. Okay. But you do agree, as you just testified, that
14    filtering in some instances is appropriate; is that
15    correct?
16 A. Yes.
17 Q. Okay. So is it reasonable in your view for NCRL to
18    balance those things, those thoughts, by undertaking
19    a site-by-site review of a blocked Web site when
20    that occurs in the course of a patron's use of the
21    Internet?
22       MR. MANVILLE: Object to the form.
23       THE WITNESS: I didn't really follow that
24    completely.
25 Q. (By Mr. Adams) Okay, sure. Well, your Complaint

Page 36

1  states NCRL's got a policy of not disabling the
2  Internet filter entirely when an adult requests that
3  occur. Yet you've also testified that you believe
4  it is appropriate to maintain a filter for some
5  topics, some categories of information -- illegal
6  activity, pornography, spyware. We talked about
7  some things; right?
8  A. Yes.
9  Q. Okay. So with those thoughts in mind, do you think
10    that it's an appropriate compromise, in addition to
11    that, the goal of furthering the interests of
12    children and adults alike? So with all of those
13    goals in mind and thoughts in mind, is it
14    appropriate in your view for the NCRL to say, "You
15    know what? We'll leave this Internet filter in
16    place; and if an adult patron runs into a book,
17    we'll undertake a site-by-site review and maybe
18    unblock it"?
19       MR. MANVILLE: Object to the form.
20       THE WITNESS: I can see how that could
21    work in some instances but not in others.
22 Q. (By Mr. Adams) Okay. Give me an example of an
23    instance where it would not work.
24 A. For instance, in writing my paper that was due that
25    week and I was only home for two days Saturday and

9 (Pages 33 to 36)

83248208-50f2-4d78-a09c-0058f44c8d7d

Page 37

1  Sunday and then returning to Spokane on Monday,
2  there wasn't time to on Saturday fill out a form and
3  have that information back before I had to go, you
4  know, commute.
5  Q. Uh-huh. Would you feel differently if you had
6  undertaken your research for your school paper two
7  weeks ahead of time or three weeks? I mean, it's
8  your need that makes the policy unworkable; is that
9  correct?
10 A. Yes, but I don't know that I always had that
11 information that far in advance.
12 Q. Okay. By analogy if you were working at the library
13 on a term paper and you had no computer access and
14 the book that you needed to complete your term paper
15 was in Twisp, would you blame the library if the
16 library couldn't get it to you before your term
17 paper deadline?
18 A. No.
19 Q. Okay.
20        MR. DEAN MARNEY: Tom, can we take a
21 break so I can ask you a question?
22        MR. ADAMS: Sure, let's take a little
23 break.
24
25        (A BRIEF RECESS WAS TAKEN.)

Page 38

1        MR. ADAMS: Why don't we go ahead and
2  mark this.
3
4        (EXHIBIT 14 WAS MARKED AND
5         EXHIBIT 15 WAS MARKED.)
6
7  Q. (By Mr. Adams) Mrs. Bradburn, I've handed you a
8  document that we've marked as Deposition Exhibit 15,
9  and it constitutes -- it's a multi-page document
10 consisting of your "Objections, Answers and
11 Responses to Interrogatories and Requests for
12 Production." I suspect you've had a chance to
13 review this earlier in the afternoon, but feel free
14 to take another look through it if you would like.
15 A. Yes.
16 Q. Is that your signature on page 11?
17 A. Yes.
18 Q. In your answer to Interrogatory Number 5 on page 4
19 and extending on to the top of page 5, I'm a little
20 confused by that. In the third sentence, I believe,
21 you write, "The computer responded that no links
22 were accessible for these queries." Do you see
23 that?
24 A. Yes.
25 Q. Now, I understood from your testimony earlier that

Page 39

1  you don't recall getting any response at all. Did I
2  understand that right?
3  A. Yes.
4  Q. So there wasn't an affirmative response, was there,
5  saying, "No links are accessible"?
6  A. I don't -- I don't recall what came up.
7  Q. Was it a blank screen?
8  A. There was no information. The information I was
9  trying to find, you know, I don't remember whether
10 it said it was "Filtered," whether it said, "There
11 is no information, no matches, to your search." I
12 don't remember specifically what happened, but I got
13 no information.
14 Q. Is it possible that the screen went blank because of
15 a technical difficulty?
16 A. I have -- I haven't any idea.
17 Q. Okay. Do you recall whether the screen was blank?
18 A. No.
19 Q. You just don't recall.
20 A. I don't.
21 Q. It sounds like you packed up and went to Spokane at
22 that point --
23 A. Yes.
24 Q. -- not literally but figuratively.
25 A. Yes.

Page 40

1  Q. Now, Interrogatory Number 11 on page 6 asks whether
2  you have accessed or attempted to access the
3  Internet since the Complaint was filed at an NCRL
4  branch. And you have amended your answer to say
5  "yes"; is that right?
6  A. Yes.
7  Q. Okay. And then in Number 12, you say you don't
8  remember the specific Web sites for which you claim
9  access was denied; is that correct?
10 A. Yes.
11 Q. Okay. Are you sure that access was denied?
12 A. No.
13 Q. Okay. Tell me about that a little bit. I
14 understand that you don't recall the specific
15 Web sites that you were trying to enter. Or perhaps
16 this was an Internet query. Which was it?
17 A. This was similar to the work that I did when I was
18 in school. I just went back and did the same kind
19 of search, "adolescent tobacco use." And I did
20 receive some information. At that point, I would
21 have been able to do my research.
22 Q. We're talking now about the occasion after
23 the Complaint was filed.
24 A. Yes.
25 Q. Okay. And on that occasion, you, again, went to a

10 (Pages 37 to 40)

83248208-50f2-4d78-a09c-0058f44c8d7d

Page 45

1      MR. ADAMS: Very good.
2      THE WITNESS: Thanks.
3
4      (DEPOSITION CONCLUDED AT 2:55 P.M.)
5      (SIGNATURE RESERVED)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 46

1   IN RE: SARAH BRADBURN vs. NORTH CENTRAL REGIONAL LIBRARY
    NO. CV-06-327-EFS
2
3      CORRECTION SHEET
4   CHANGES IN FORM AND SUBSTANCE REQUESTED BE MADE IN THE
   FOREGOING ORAL EXAMINATION TRANSCRIPT:
5
   PAGE   LINE       CORRECTION AND REASON
6
7
8
9
10
11
12
13
14
15
16
17   I hereby certify that this is a true and correct copy of my
    testimony, with the exception of the corrections noted above.
18
19      SARAH MARIA BRADBURN
      Date
20
21      Notary Public in and for the state
      of Washington residing at
22      Subscribed and sworn to before me on
      this     day of    , 2007.
23      My commission expires on    .
24
    See: Wash. Reports 34A, Rule 30 (e)
25   USCA 28, Rule 30 (e)

Page 47

1       C E R T I F I C A T E
2   STATE OF WASHINGTON)
              ) ss.
3   COUNTY OF CHELAN   )
4
5      THIS IS TO CERTIFY that I, Barbara J. Scoville,
6   Notary Public in and for the State of Washington, residing
7   at Entiat, reported the within and foregoing testimony; said
8   testimony being taken before me as a Notary Public on the
9   date herein set forth; that the witness was first by me duly
10   sworn; that said examination was taken by me in shorthand
11   and thereafter under my supervision transcribed, and that
12   same is a full, true and correct record of the testimony of
13   said witness, including all questions, answers and
14   objections, if any, of counsel, to the best of my ability.
15      I further certify that I am not a relative, employee,
16   attorney, counsel of any of the parties; nor am I
17   financially interested in the outcome of the cause.
18      Transcribed notes will be destroyed three years from
19   the affixed date unless requested by counsel to retain them.
20      IN WITNESS WHEREOF, I have hereunto set my hand and
21   affixed my official seal this _____ day of
22   _____, 2007.
23
24      Barbara J. Scoville, CCR, RPR
      CCR NO. 2124
25

SCOVILLE COURT REPORTING
(509) 884-1712

174

83248208-50f2-4d78-a09c-0058f44c8d7d