1                               The Honorable Edward F. Shea

2

3   Thomas D. Adams
    Celeste Mountain Monroe

4   KARR TUTTLE CAMPBELL
    1201 Third Avenue, Suite 2900

5   Seattle, Washington 98101-3028

6   (206) 223-1313

7   Attorneys for North Central Regional Library District

8

9               UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF WASHINGTON

10                   AT SPOKANE

11

12

13   SARAH BRADBURN, PEARL        )

14   CHERRINGTON, CHARLES         )
    HEINLEN, and THE SECOND       )   NO. CV-06-327-EFS

15   AMENDMENT FOUNDATION,      )

16                       )   DEFENDANT NORTH CENTRAL
              Plaintiffs,      )   REGIONAL LIBRARY DISTRICT'S

17                       )   STATEMENT OF DISPUTED

18       v.                    )   MATERIAL FACTS IN OPPOSITION

19                       )   TO PLAINTIFFS' MOTION FOR
    NORTH CENTRAL REGIONAL      )   SUMMARY JUDGMENT

20   LIBRARY DISTRICT,          )

21                       )

22             Defendant.      )

23   _____ )

24

25   DEFENDANT NORTH CENTRAL

26   REGIONAL LIBRARY DISTRICT'S
    STATEMENT OF DISPUTED

27   MATERIAL FACTS IN OPPOSITION

28   TO PLAINTIFFS' MOTION FOR
    SUMMARY JUDGMENT - 1
    CV-06-327-EFS
    #658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

1. Contrary to Plaintiffs' **Fact #5**, Plaintiff Sarah Bradburn cannot affirmatively state that NCRL's Internet Filter denied her access to material relating to youth tobacco usage, as opposed to some other technical difficulty. See Ct. Rec. 29, ¶123.

2. Contrary to Plaintiffs' **Fact #9**, Plaintiff Pearl Cherrington cannot affirmatively state that NCRL's Internet filter denied her access to material on art of heath topics, as opposed to some other technical difficulty. See Ct. Rec. 29, ¶130.

3. Contrary to Plaintiffs' **Fact #22**, Plaintiff SAF has no personal knowledge its site, www.womenandguns.com, was blocked by NCRL's Internet Filter. SAF's 30(b)(6) designee, Alan Gottlieb, testified that he heard from some of his members that the site was blocked, but that he had never tried to access the website from an NCRL computer. Plaintiff's Fact #22 is hearsay. See Ct. Rec. 29, ¶116.

4. Contrary to Plaintiffs' **Fact #23**, Plaintiff SAF has no personal knowledge its site, www.womenandguns.com, was blocked by NCRL's filter for the reasons set forth in ¶3 above. Accordingly, Plaintiffs' cannot demonstrate that

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 2
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

1    NCRL's internet filter prevented SAF from communicating with Internet users

2    in North Central Washington as alleged.  Id.

3

4        5. Contrary to Plaintiffs' **Fact #30**, there no factual basis for Plaintiffs'

5    statement that:

6

7            Today it is widely accepted that the primary role of the
             public library is not to serve as a "temple of culture"
8            focusing exclusively on collecting "great literature"
             with the goal of enlightening and uplifting the public,
9            but to be a "locus for the receipt of information" and to
             serve each person in our communities by providing
10           collections that reflect each individuals' face and
             voice, particularly when those faces and voices fall
11           outside the majority's preferred viewpoint.

12

13

14   The above-referenced quote is, in fact, an excerpt from a private letter Ms.

15   Pinnell-Stevens wrote to a Collection Development Specialist for the Tulsa City-

16   County Library, expressing her personal opinion about the role of public

17   libraries in their communities.  There is no foundation for Ms. Pinnell's opinion,

18

19   nor any evidence that her personal belief shares universal acceptance in the

20   public library community.  Moreover, to the extent Plaintiffs have not alleged

21

22   that NCRL's filter operates in such a way as to deny access to minority groups

23

24

25   DEFENDANT NORTH CENTRAL
26   REGIONAL LIBRARY DISTRICT'S
27   STATEMENT OF DISPUTED
     MATERIAL FACTS IN OPPOSITION
28   TO PLAINTIFFS' MOTION FOR
     SUMMARY JUDGMENT - 3
     CV-06-327-EFS
     #658441 v1 / 42703-001

or minority opinions, Plaintiffs' Fact #30 is irrelevant to the issue before the court.

6. Contrary to Plaintiffs' **Fact #42,** Dean Marney was not solely responsible for developing NCRL's filtering policy. Howard Purcell, NCRL's IT Manager from 1986 to 2001, drafted the original filtering policy. Mr. Marney was responsible for the final edits and he presented the policy to the Board for consideration and approval. See Supplemental Declaration of Dean Marney, attached hereto as Ex. A; ¶3.

7. To clarify Plaintiffs' **Fact #44**, a request to block or unblock a site at the request of an adult patron is evaluated in terms of whether a given website is consistent with NCRL's mission to promote reading and lifelong learning, its collection development policy, and NCRL's duty to comply with CIPA – all of which are incorporated into NCRL's Internet Usage Policy, either expressly or impliedly. See Ct. Rec. 29; ¶¶58, 60.

8. Contrary to the suggestion made in Plaintiffs' **Fact #47**, NCRL's decision to adopt an automated site review request procedure was not, in any way,

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 4
CV-06-327-EFS
#658441 v1 / 42703-001

Law Offices
KARR TUTTLE CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

influenced by NCRL administrators' pending depositions.  Plaintiffs' statement, although presented as fact, is argumentative.

9.   To clarify Plaintiffs' **Fact #49**, of the 81 automated requests NCRL has received since October 2007, 65 have been evaluated within 24 hours.  The remaining 16 requests were typically made over a weekend or holiday. Accordingly, decisions could not be made on the same day.  See Ct. Rec. 29,¶59.  NCRL object to Plaintiffs' use of the word "languish" in Fact #49 as argumentative.

Contrary to Plaintiffs' **Fact #50**, Mr. Marney did not testify that, "NCRL's primary stated purpose in filtering Web content at all times is to promote a family-friendly environment and avoid exposing patrons (particularly children) to inappropriate images."  The question posed to Mr. Marney was not: "What is the purpose for filtering web content?"  The questions was: "How does the Internet Public Use Policy contribute to a family-friendly environment?" The cited deposition exchange reads as follows:

> **Mr. Manville**:  Do you support the Internet Public Use Policy?

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 5
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

1     **Mr. Marney**: Absolutely.  It works.

2

3     **Mr. Manville**:  In what way does it work.

4     **Mr. Marney**:  It accomplishes what we do.  We have

5     very few problems, as you found out, and we're views

6     as a family-friendly place.  We promote reading like

7     crazy.  Kids feel comfortable there, and in most part
parents eel comfortable sending their kids to the

8     library alone.

9     **Mr. Manville**:  What is it about the Internet Public

10     Use Policy that you believe contributes to that
environment?

11

12     **Mr. Marney**:  I think that we have – that everything is

13     filtered, that we're doing everything possible – doing
the most possible to avoid situations where kids will

14     see inappropriate images.

15 See Marney Dep 97: 1-16.

16

17     10.  In **Fact #51**, Plaintiffs state "NCRL seeks to shield all library patrons

18 from material that NCRL believes is harmful to minors."  For this fact, Plaintiffs

19
cite to (but do not excerpt) Mr. Howard's deposition at 79:16-21, which reads:

20

21     **Ms. Crump**:  Does the library work to block access to

22     all material that's harmful to minors.

23     **Mr. Howard**:  Yes.  As required by CIPA.

24

25 DEFENDANT NORTH CENTRAL

26 REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED

27 MATERIAL FACTS IN OPPOSITION

28 TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 6

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Instead, Plaintiffs excerpt the following exchange, occurring three pages later:

> **Ms. Crump**: Does the library block access to harmful to minors material even when adults are trying to access that content.
>
> **Mr. Howard**: Yes.

Plaintiffs' selective paraphrasing skews the context of Mr. Howard's testimony which demonstrates that NCRL is only trying to block *specific types of materials* it believes is harmful to minors. Prior to and following both above-referenced portions of the deposition, Mr. Howard is explicitly discussing specific situations where he has concluded a site was harmful to minors, and discussed the federally recognized standards that he uses to evaluate a site to determine if something is harmful to minors – (i.e. whether the requests images depict sexual activity, genitalia or excretory functions in a manner that did not have scientific, artistic or literary merit.) See Howard Dep. p 79, lns. 10-25; p 82 5-22. Plaintiffs also ignore Mr. Howard's testimony that Internet filtering serves collection development purposes as well. (See Ct. Rec 40, p.221-222.)

11. Contrary to Plaintiffs' **Fact #54**, NCRL has meaningful standards in place for determining whether a particular website should be blocked given the

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 7
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

configuration of the library's Internet filter.  <u>See</u> ¶10 above; <u>See also</u> Ct. Rec 29, ¶58; 60.

12.  Contrary to Plaintiffs' **Fact #55**, nothing supports Plaintiffs' contention that NCRL decision makers "are incapable of reach consistent conclusions regarding whether particular Web sites or categories or classifications of web site should be blocked."  In fact, Mr. Howard and Mr. Marney testified that they look to CIPA, as well as NCRL's mission statement, their collection development policy/practices and their Internet policy for guidance.  <u>See</u> Ct. Rec 29, ¶¶25-26,58, 60; <u>See also</u> Marney Dep at 85:18-86:1 cited by Plaintiffs at Fact #54.

13.  Contrary to Plaintiffs' **Fact #56**, Mr. Howard did not testify that "access by adults to a Web site containing hundreds or thousand of pages of content could be denied if only one page on the site contains an image that NCRL deems harmful to minors."  Mr. Howard expressly testified that the legal, or illegal nature of the content, as well as the size of the website would make a difference. The relevant exchange reads:

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 8
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

**Ms. Crump**: I'd like to talk a little bit about how you decide whether a website contains harmful to minors material. Is it sufficient for a Website to have one harmful to minors image for it to be considered harmful to minors?

**Mr. Howard**: I don't think I've ever – when I've review anything that I thought had images that were potentially harmful to minors I don't remember encountering – ever encountering a site that just had one image.

**Ms. Crump**: If the site only had one image that was harmful to minors, would you recommend blocking access to the whole site?

**Mr. Howard**: If like, for example, it had one image that had child pornography, yes, that would be sufficient to block that site.

**Ms. Crump**: What if it wasn't child pornography?

**Mr. Howard**: Sure. If is was obscene and it had been declared illegal by a court of law, then that would be sufficient as well.

**Mr. Crump**: What if the content wasn't illegal? It was pornographic, but not illegal. A picture of a naked woman, for instance.

**Mr. Howard**: If it was pornographic, then one image would likely be sufficient to block that site.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 9
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

> **Ms. Crump**: Would it matter how big the website was? Whether it had ten pages or a thousand pages, for instance?
>
> **Mr. Howard**: I think our approach to blocking it or allowing access would be affected by how large the site was. I think that Craigslist is a really good example of that. It's a larger site with many different functions. And in that particular case we have tried to allow access to as much as possible as we can that would fit with our approach to the Internet. So, yes, I think that if you're asking if size – the size of the site and the amount of content that would – is within it is part of our decision the, yeah, I think it might affect that decision on how we would approach blocking it.

14. As set forth in Plaintiffs' **Fact #60**, Mr. Marney testified that he believed more people would view pornography, obscenity or child pornography on NCRL computers if the filter were disabled because:

> [l]ibraries have a peculiar problem that we attract a certain element in our communities that isn't always family friendly. Recently there was the gentleman that self-described himself as a pedophile. and in reading the newspaper, he was saying – telling people to go to the library because it was a good place where children hung out. We've had incidents with sex offenders, and my assumption is that would continue to be a problem and might increase.

Marney Dep at 55:3-10.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 10
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Contrary to Plaintiffs' suggestion in **Fact #62**, that Mr. Marney had no further justification for his belief that more people would look at pornography if the filter were disabled, Plaintiff Charles Heinlen explicitly seeks access to pornography. See Ct. Rec 29, ¶141.

18.  Contrary to Plaintiffs' **Fact #80**, Ms. Walters did not testify that there was "no technological impediment to disabling the Fortiguard filter at the request of an adult." The relevant exchange reads:

> **Mr. Manville**:  So it's possible to disable the filter for a *particular workstation*, yes?
>
> **Ms. Walters**:  I have never disabled a filter for a particular workstation.  But, yes it would be possible.
>
> **Mr. Manville**:  Yes, I understand that you haven't done it.
>
> **Ms. Walters**: Okay.
>
> **Mr. Manville**:  I was just asking whether it's technically possible.
>
> **Ms. Walters**: Yes.
>
> ***

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 11
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

**Mr. Manville**: Okay. Would it be possible to disable the filter *for a particular patron?*

**Ms. Walters**: Again, I'd have to answer I don't know. I've never tried. I've never created a policy that way. There's a lot involved…

Although Ms. Walters testified that it would be technically possible to disable the filter at a particular work station, she did not testify that the filter could be disabled and re-enabled at the request of an adult patron. Moreover, what is technically possible is not the same as what is practical, affordable, or legally-required. In fact, NCRL currently lacks the software and infrastructure resources to easily disable the filter at a particular computer terminal and then enable it again when the adult patron finishes. (Ct. Rec. 28, ¶¶66-67). In addition, fifty-seven (57%) of NCRL branches have only one or two public use computers. Ct. Rec. 29, ¶17.

19. Contrary to Plaintiffs' **Fact #82**, the decision whether to block a category of sites does not rest entirely within the discretion of NCRL Director Dean Marney. Dan Howard has significant input into such decisions and is also involved in deciding which specific sites should be blocked or unblocked when

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 12
CV-06-327-EFS
#658441 v1 / 42703-001

requests are made by NCRL patrons. See Howard Dep at 44: 4-10; 50:9-17; Ct. Rec. 31, ¶30.

20. To clarify Plaintiffs' **Fact #85**, NCRL stopped blocking Drug Abuse in January 2007; Illegal or Unethical in January 2007; and Web Translation in February 2007. NCRL began blocking the image search class in January 2007. See Supplemental Declaration of Dean Marney, attached hereto as Ex. A; ¶5.

21. To clarify Plaintiffs' **Fact #86**, NCRL stopped blocking the Plagiarism category in February 2008. Id. at ¶6.

22. To clarify Plaintiffs' **Fact #87**, NCRL unblocked personal relationships in January 2007. Id. at ¶7.

23. Contrary to Plaintiffs' **Fact #95**, it is too simplistic to suggest that Dean Marney testified that NCRL "could" block MySpace in the future.

> **Mr. Manville**:  How did the MySpace terms of use change?
>
> **Mr. Marney**:  That they were going to enforce no adult explicit images.  And that they were going after people who were lying about their age.
>
> \*\*\*

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 13
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

**Mr. Manville**: Is it possible that the NCRL will block MySpace again in the future?

**Mr. Marney**: I don't know.

**Mr. Manville**: What would – what could cause the NCRL to block MySpace again?

**Mr. Adams:** (counsel for NCRL): Object to the form of the question. Calls for speculation.

**Mr. Marney**: We would review it again if somebody made a complaint.

**Mr. Manville**: So, if you, let's say you got a complaint from a patron that their kid had accessed a page on MySpace that had adult materials on it, what would you do with that?

**Mr. Marney**: We would talk to the people and find out – investigate it and then discuss it.

**Mr. Manville**: And is it possible that at that point you would decide to block MySpace again.

**Mr. Marney**: I don't know.

24. Contrary to Plaintiffs' **Fact #97**, not all web publishers design website with discrete URL pages that can be individually blocked. With sites that are so designed, NCRL will attempt to restrict access only to web pages that raise

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 14
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

issues under NCRL's policies upon request of a patron.  An example of this approach is NCRL's treatment of www.craigslist.com. See ¶13 above; See also Walters Dep at 54:11-21 as cited by Plaintiffs.

25.  Contrary to Plaintiffs' **Fact #111**, Mr. Resnick's study does, in fact, raise a substantial challenge to the results of Mr. Haselton's test of the Fortiguard filter.  Mr. Resnick conducted a test to estimate Fortinet's tendency to overblock within NCRL's network setting, based on the web sites actually viewed at NCRL branch libraries during the week of August 23-29, 2007.  (Ct. Rec. 29, ¶104).  Prof. Resnick concluded that a test based on URLs actually visited by NCRL patrons was more meaningful than testing a random sample from the universe of all domain names, as with Mr. Haseltons' study, because it allowed for direct assessment of the FortiGuard filter on NCRL patron browsing tendencies.  (Id. at ¶105.)  Moreover, patrons tend to visit more popular web sites than a random sample of sites would account for.  Prof. Resnick theorizes that FortiGuard would make fewer classification errors on more popular sites. (Id.)  Based on his study, Prof. Resnick determined that less than 1/3000 (1/30[th]

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 15
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

of 1%) of patron requests for webpages resulted in incorrect blocks. (Id. at ¶111).

26. Contrary to suggestions made in Plaintiffs' **Fact ¶113**, NCRL patrons are not permitted to view Internet pornography in NCRL branch libraries. If a patron is observed viewing pornography, the individual is asked to stop. Ct. Rec 29, ¶88. NCRL does not expect NCRL librarians to confront patrons engaging inappropriate behavior facilitated by unrestricted Internet access. Id. NCRL's decision not to implement alternative privacy measures to keep patrons from inadvertently viewing inappropriate materials in based, in part, on the expense and ineffectiveness of the measures, but more importantly on NCRL's belief that the filter works best at carrying out its mission. Id. at ¶77; See also ¶9 above.

27. Contrary to Plaintiffs' **Fact ¶114**, NCRL has articulated additional reasons why it has not installed privacy screen on its public use computers, and why providing unfiltered access is not consistent with its mission, collection development practices, or responsibilities under state or federal law. Ct. Rec. 29, ¶71, 77-81.

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 16
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

28.  Contrary to Plaintiffs' **Fact #115**, NCRL did not forgo recessed desks as a "cost saving measure."  NCRL has expressed concern about the costs, but also found that the recess configuration did not prevent people passing by from viewing the screen.  Moreover, NCRL has an overarching concern that providing access to materials that would create an unacceptable risk for children and could create a hostile atmosphere for families, children and staff in the library.  Ct. Rec. 29, ¶¶79, 82-84.

29.  To clarify Plaintiffs' **Fact #116**, NCRL decision not to substitute a "tap-and-tell" policy was based on its concerns with providing unfiltered access (as articulated in ¶28-29 above), as well as the fact that it did not want to employ a procedure that involved differing and possibly inconsistent view regarding the appropriateness of what people were accessing on the Internet.  Ct. Rec. 29, ¶74.

30.  Contrary to suggestions in Plaintiffs' **Fact #117**, NCRL does not knowingly permit patrons to view on-line pornography.  Awareness of a single incident in which a patron became upset after having been asked to stop viewing pornographic images, ignores instances where other patrons and staff have been

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 17

CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

adversely affected by having to view pornographic content. Ct. Rec. 29, ¶¶86-98.

31. Contrary to Plaintiffs' **Fact #117**, Plaintiffs cannot establish as a matter of fact that "many libraries have found ways to promote a safe, family friendly environment without burdening adult speech through continuous filtering." Ms. Pinnell-Stevens' experience is limited in scope and derives from Fairbanks, Alaska, a library that has not show to be similar to NCRL is size, geographic reach or demographic.

32. Contrary to Plaintiffs' **Fact #123**, Ms. Pinnell-Stevens cannot affirmatively state that Fairbanks, Alaska's library has not received any complaints relating to its Internet. Ms. Pinnell is no longer employed by the library and has not been since February 14, 2006.

//

//

//

//

//

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 18
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

DATED this 15th day of February, 2008.

KARR TUTTLE CAMPBELL

By:/s/ Thomas D. Adams
Thomas D. Adams, WSBA #18470
E-mail – tadams@karrtuttle.com
Celeste Mountain Monroe, WSBA #35843
E-mail – cmonroe@karrtuttle.com
Attorneys for Defendant North Central
Regional Library District
KARR TUTTLE CAMPBELL
1201 Third Ave., Ste. 2900
Seattle, WA 98101
Telephone: 206.233.1313
Facsimile: 206.682.7100

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 19
CV-06-327-EFS
#658441 v1 / 42703-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

Duncan Manville
1629 2nd Ave. W
Seattle, WA 98119

Aaron Caplan
ACLU of Washington
705 Second Ave., Ste. 300
Seattle, WA 98103

Notice has been delivered by U.S. Mail to:

Catherine Crump
American Civil Liberties Union Foundation
125 Broad Street, 17th Floor
New York, NY 10004

KARR TUTTLE CAMPBELL

By: _____
Heather L. White
hwhite@karrtuttle.com

DEFENDANT NORTH CENTRAL
REGIONAL LIBRARY DISTRICT'S
STATEMENT OF DISPUTED
MATERIAL FACTS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT - 20
CV-06-327-EFS
#658441 v1 / 42703-001