THE HONORABLE EDWARD F. SHEA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SARAH BRADBURN, PEARL CHERRINGTON, CHARLES HEINLEN, and the SECOND AMENDMENT FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CENTRAL REGIONAL LIBRARY DISTRICT,<br><br>Defendant | No. CV-06-327-EFS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

This reply brief responds to arguments contained in Defendant's Opposition to Plaintiffs's Motion for Summary Judgment (Docket #48, filed February 15) ("DOPSJ"). To avoid unnecessary repetition, this reply brief incorporates by reference the arguments from Plaintiffs' Motion for Summary Judgment (Docket #40, filed February 4) ("PSJ") and Plaintiffs' Opposition to NCRL's Motion for Summary Judgment (filed February 25).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT -- 1

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

## I. NCRL MISREADS <u>AMERICAN LIBRARY ASSOCIATION</u> AND <u>MAINSTREAM LOUDOUN</u>

NCRL places much weight on the plurality opinion from <u>United States v. American Library Ass'n</u>, 539 U.S. 194, 208-09 (2003) ("<u>ALA</u>"), quoting it at length at several points in its opposition brief. Defendant's reliance is unjustified. "The Ninth Circuit has not taken pluralities as being controlling." <u>Jacobsen v. United States Postal Service</u>, 993 F.2d 649, 655 (9th Cir. 1992). Under <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977), the holding of a Supreme Court decision with no majority is the opinion deciding the case on the narrowest grounds. For <u>ALA</u>, the narrowest grounds are found not in the plurality, but in the concurring opinions of Justices Kennedy and Breyer, who said that Congress did not violate the First Amendment by encouraging public libraries to install filtering systems, so long as those systems will be disabled upon the request of an adult. <u>See</u> PSJ at 17 (explaining which portions of <u>ALA</u> are binding and which are not).

A majority of the Court did not agree with the propositions from the plurality that NCRL relies upon here. A majority either expressly rejected or pointedly refrained from endorsing the plurality's unrealistically deferential standard of review, <u>id.</u> at 205, and its idiosyncratic view (which ran counter to the Court's earlier decision in <u>Board of Education v. Pico</u>, 457 U.S. 853 (1982)) that removal of material from the library's collection based on objections to its content is no different than a decision about which material to purchase at the outset, <u>id.</u> at 207-08. This Court should not treat minority views from <u>ALA</u> as if they were binding authority.

NCRL asserts that "complete disabling is not authorized by CIPA," and that "nothing in <u>ALA</u> suggests that [a] library must … have the capacity to completely disable a filter upon request." DOPSJ at 18. No matter how one counts the votes in <u>ALA</u>, these statements are wrong as a matter of law. CIPA says a library receiving e-rate funds "may <u>disable</u> the [filter],

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT -- 2

**AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION**
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

during use by an adult, to enable access for bona fide research or other lawful purpose." 47 U.S.C. § 254(h)(5)(D) (emphasis added). Libraries receiving funds under LSTA "may <u>disable</u> a [filter] to enable access for bona fide research or other lawful purposes," 20 U.S.C. § 9134(f)(3) (emphasis added), whether or not the user is an adult. Even the plurality in <u>ALA</u> adopted as a definitive interpretation of the statute the statement of the Solicitor General at oral argument that a "librarian can, in response to a request from a patron, <u>unblock the filtering mechanism altogether</u>." 539 U.S. at 209 (emphasis added). Disabling the filter is unquestionably authorized. Moreover, the plurality and the concurring opinions envisioned that disabling would actually occur when requested; if it did not, there would have been no reason for the various opinions to lay such emphasis upon it.

A library's willingness to consider site-by-site unblocking requests made while the filter as a whole is locked in place is not an adequate substitute. To begin with, it is not the mechanism envisioned by CIPA, which speaks of "disabling" the filter upon request, not reconfiguring it upon request. <u>ALA</u> is not dispositive on this question, since that case did not call upon the Court to consider a hypothetical library that immediately unblocked sites upon request, while otherwise leaving the filter running. This Court need not decide that question either, because it is undisputed that NCRL does not unblock sites upon request. PSJ 4-5. At most, NCRL will consider requests to unblock individual sites on a permanent basis for all viewers. Even with fully legitimate reasons for an adult to view an adult site, NCRL will not accommodate that site-by-site unblocking request. Instead, it will only make permanent unblocking decisions -- and the only sites that will be permanently unblocked are those the library deems to be appropriate for children. Plaintiffs' Statement of Facts ¶¶ 43-44; Plaintiffs' Counter-Statement of Facts ¶ 13.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT -- 3

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

Because ALA was a facial challenge to Congress's authority to enact a statute under the Spending Clause, it necessarily left unanswered many questions that might arise in a constitutional challenge to a specific library's policies. Mainstream Loudoun v. Bd. of Trust. of the Loudoun County Public Library, 24 F. Supp. 2d 552 (E. D. Va. 1998) ("Mainstream Loudoun II") is the only such challenge to result in a published opinion. Like this case, Mainstream Loudoun involved a library that blocked all web sites it considered inappropriate for children and would not disable its filters for adults. The later enactment of CIPA, and the decision in ALA, in no way overruled Mainstream Loudoun. The type of filtering envisioned by CIPA and approved in ALA are factually distinguishable from the filtering systems found in Mainstream Loudoun and in this case. PSJ at 2 n.1. NCRL implies that Mainstream Loudoun was somehow overruled because the later-decided ALA case did not cite it. DOPSJ at 10. Of course, the Supreme Court is never obliged to cite trial court opinions dealing with the same general subject matter, and especially not opinions whose facts are distinguishable and whose outcome is not being overruled. Mainstream Loudoun remains highly persuasive authority.

## II. NCRL'S POLICY IS OVERBROAD

### A. Overbreadth Cases Apply To The Library Setting

NCRL writes that it "has no quarrel with the principle that speech appropriate for adults cannot be completely silenced for the sake of protecting children when less restrictive safeguards are shown to exist." DOPSJ at 9 (citing Ashcroft v. Free Speech Coalition, 535 U.S. 244 (2002)). Nonetheless, NCRL questions whether this rule applies in public libraries. Id. ("Ashcroft, however, does not consider this principle in the context of internet filtering in public libraries . . ."). There is of course no public library exception to the rule against overbroad governmental speech restrictions. Ashcroft is just one example of the rule that government may not "reduce the adult population . . . to reading only what is fit for children." Butler v. Michigan,

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT -- 4

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

352 U.S. 380, 383 (1957); PSJ at 9-10. The Court has applied this rule consistently and in a variety of contexts. See, e.g., Sable Communications v. FCC, 492 U.S. 115, 131 (1989) (invalidating a ban on indecent but not obscene telephone services); Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 74-75 (1983) (striking down a ban on mail advertisements for contraceptives); Erznoznik v. City of Jacksonville, 422 U.S. 205, 217-18 (1975) (striking down a statute that criminalized showing of nudity at drive-in theaters). It would be perverse if the one place where the government could limit adults to childrens' discourse was the public library, an institution dedicated to the dissemination of ideas.

Defendant's urges this Court to disregard the Butler overbreadth principle for libraries because "[t]he issue before this Court are best informed by ALA because of the unique considerations associated with speech rights, public libraries, and legal overlay of CIPA." DOPSJ at 9. But ALA was exceedingly narrow and avoided the questions that would arise in an as-applied challenge: it upheld CIPA on its face because of the disabling provisions. This Court's best recourse is to fall back on other well-established principles of First Amendment jurisprudence. The prohibition on reducing adults to reading what is fit for children is such a principle.

**B.     That NCRL Could Block Even More Material Is Irrelevant**

NCRL asks this Court to "consider the 64 categories NCRL chooses not to block, including, for example, categories pertaining to abortion, extremist groups, sex education, alcohol, tobacco, weapons, and violence." DOPSJ at 9-10. The potential for filtering policies that are even more overbroad does not make the existing overbreadth acceptable. A statute banning all speech about the war in Iraq would not be constitutional simply because it allows the populace to discuss social security, the budget deficit, and nuclear proliferation.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT -- 5

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

### C. Paternalistic Judgments About What Patrons Should Read Cannot Trump Patrons' Own Choices

NCRL attempts to explain away some examples of overblocked web sites by asserting in a paternalistic manner that its patrons have no cause to read them. DOPSJ at 13-14. This argument shows the central problem with overbroad internet filtering technology. There are dozens of reasons why a patron of NCRL may want to view www.acceptpreganancy.org or www.faithchurchofdavis.org, including relatives living in those areas or simply research about what exists in the world outside of North Central Washington. There is nothing wrong with a patron of NCRL ordering tulips from www.tulipflorists.com. "The First Amendment mandates that we presume that speakers, not the government, know best both what they want to say and how to say it." Riley v. National Federation of the Blind, 487 U.S. 781, 790-91 (1988). The same applies to readers, since "the protection afforded [by the free speech clause] is to the communication, to its source and to its recipients both." Virginia Pharmacy Board v. Virginia Consumer Council, 425 U.S. 748, 756 (1976).

It would be one thing if a library in Eastern Washington chose not to spend its limited budget and shelf space on books about pregnancy counseling facilities in Florida or churches in Illinois. But NCRL already bought and paid for that content when it acquired an internet connection (subsidized in part by two federal programs). It takes up no shelf space at all, and does not displace the ability of the library to acquire any other material it considers to be of greater importance. The examples discussed here were not blocked because NCRL found their content objectionable; this type of blockage is an unavoidable artifact of all filtering technology. This means that the blockage serves no governmental interest at all. Searches for information will be particularly prone to overblocking when they involve subjects containing whiffs of generically "adult" content, as when Pearl Cherrington researched Washington State art galleries

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -- 6

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

whose collections include artistic nudes, or when Sarah Bradburn researched tobacco use. A patron who chooses to read this type of material would be wholly justified in seeking disabling of the filter when it generates a frustrating level of censorship. In the absence of that option, a patron would be justified in simply giving up -- which is precisely the harm that the constitution seeks to avoid.

NCRL also argues, without citation to any evidence in the record, that some of the blocked sites discovered through the random sample conducted by Plaintiffs' expert could be accessed by typing a different domain extension. DOPSJ at 13. This provides no comfort. A patron curious about the Seattle Womens' Jazz Orchestra might learn from a friend, from a radio program, from another web site, or from any other source that the Orchestra's primary web address is www.swojo.org. A reasonable patron finding that this site is blocked would not respond by trying other variations like www.swojo.com or www.swojo.net. A reasonable patron would instead conclude that NCRL does not allow any access to information about the Seattle Womens' Jazz Orchestra, which is why this sort of purposeless overblocking raises significant constitutional problems.

The foregoing discussion shows why it is NCRL's burden to show that its filtering system is narrowly tailored. Ashcroft v. ACLU, 542 U.S. 656, 665 (2004). Library users should not have to justify why they want to read material made freely available on the internet. NCRL has the burden of showing why it is justified in denying access.

### III. NCRL MISAPPREHENDS PLAINTIFFS' STATE CONSTITUTIONAL ARGUMENT

NCRL's discussion of prior restraints, NCRL Opposition Brief at 18-19, seems to be based upon a misreading of Plaintiff's arguments under the Washington constitution. Although there are certain troubling similarities, Plaintiffs have not argued that the NCRL filter is a

PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT -- 7

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

"classic" prior restraint as found in federal cases like New York Times Co. v. United States, 403 U.S. 713 (1971) (the "Pentagon Papers" case), or Washington cases like JJR, Inc. v. Seattle, 126 Wn.2d 1, 6 (1995) (revocation of nightclub license). Instead, Plaintiffs argue that the speech restriction imposed by NCRL is so overbroad that it triggers Washington's superior protections under Art. I, § 5 for the right of "every person [to] freely speak, write and publish on all subjects." Washington courts often use terminology saying that overbroad speech restrictions "rise to the level of a prior restraint," because overbreadth causes many of the same chilling effects on communication that prior restraints do. "Regulations that sweep too broadly chill protected speech prior to publication, and thus may rise to the level of a prior restraint." O'Day v. King County, 109 Wn.2d 796, 804 (1988), citing State v. Coe, 101 Wn.2d 364, 373 (1984). Accord, Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 117 (1997); Soundgarden v. Eikenberry, 123 Wn.2d 750, 764 (1994). These Washington cases make clear that overbreadth is a favored doctrine under Art. I, § 5, and is not viewed as "strong medicine" to be applied only as a last resort. O'Day, 109 Wn.2d at 804. "The Washington constitution is less tolerant than the First Amendment of overly broad restrictions on speech." Id.

NCRL's briefs do not grapple with Washington's distinctive hostility to overbroad speech restrictions. The briefs also ignore Soundgarden, the Washington case whose facts are most illustrative for present purposes. Soundgarden demonstrates how Art. I, § 5 does not allow a state agency to chill otherwise lawful communication among adults on the grounds that the communication is supposedly harmful to minors. See Plaintiffs' Opening Brief at 19-20. NCRL's filter is if anything more pernicious in its censorship than the statute in Soundgarden, because it does not metaphorically move adult material "behind the counter" (which would be enough to violate Art. I, § 5), but makes it literally unviewable in the library under any circumstances.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -- 8

AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

DATED this 25th day of February, 2008.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION

By: /s/ Aaron H. Caplan
Aaron H. Caplan, WSBA #22525
American Civil Liberties Union of Washington Foundation
705 Second Avenue, Third Floor
Seattle, WA 98103
Tel. (206) 624-2184
Fax (206) 624-2190
caplan@aclu-wa.org

Duncan Manville, WSBA #30304
1629 2nd Avenue W.
Seattle, WA 98119
Tel. (206) 288-9330
Fax (206) 624-2190
duncan.manville@yahoo.com

Catherine Crump, pro hac vice
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 519-7806
ccrump@aclu.org

Counsel for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -- 9

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION**
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2008, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the persons listed below:

> Thomas D. Adams
> Celeste Mountain Monroe
> KARR TUTTLE CAMPBELL
> 1201 Third Avenue, Suite 2900
> Seattle, WA 98101
>
> Attorneys for Defendant

DATED this 25th day of February, 2008.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION

By: /s/ Aaron H. Caplan
Aaron H. Caplan, WSBA #22525
American Civil Liberties Union of Washington Foundation
705 Second Avenue, Third Floor
Seattle, WA 98103
Tel. (206) 624-2184
Fax (206) 624-2190
caplan@aclu-wa.org

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -- 1

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION**
705 Second Avenue, Suite 300
Seattle, Washington 98104-1799
(206) 624-2184