| | |
|---|---|
| | The Honorable Edward F. Shea |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SARAH BRADBURN, PEARL CHERRINGTON, CHARLES HEINLEN, and the SECOND AMENDMENT FOUNDATION,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>NORTH CENTRAL REGIONAL LIBRARY DISTRICT,<br><br>　　　　　　　　　Defendant. | No. CV-06-327-EFS<br><br>**PLAINTIFFS' SUPPLEMENTAL STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs Sarah Bradburn, Pearl Cherrington, Charles Heinlen and the Second Amendment Foundation submit the following Supplemental Statement of Facts in Support of Their Motion for Summary Judgment.

Except in those instances where Plaintiffs expressly agree with factual contentions contained in Defendant's Counterstatement in Opposition, Plaintiffs dispute each and every factual assertion in Defendant's Counterstatement in Opposition – for the reasons stated in Plaintiffs' Statement of Material Facts in Support of Their Motion for Summary Judgment ("Plaintiffs' Statement in Support"); and/or the reasons stated in Plaintiffs' Counterstatement of Facts in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs Counterstatement in Opposition"); and/or the additional reasons stated below.

1. With regard to Plaintiffs' Fact #9, see Plaintiffs' Counterstatement in Opposition, at ¶¶ 37, 45, 46.

2. To Clarify Plaintiffs' Fact #9, Plaintiff Chuck Heinlen attempted to access www.womenandguns.com in November 2006, but was prevented from doing so by NCRL's Internet filter. See Plaintiffs' Counterstatement in Opposition at ¶ 39.

3. With regard to Plaintiffs' Fact #22, contrary to Defendant's Fact #3, Plaintiffs can establish that NCRL's Internet filter prevented SAF from communicating with Internet users North Central Washington. See ¶ 2 above.

4. With regard to Plaintiffs' Fact #30, contrary to Defendant's Fact #5:

As outlined in her curriculum vitae (Ct. Rec. 41 at 540-48), Plaintiffs' expert witness June Pinnell-Stephens was a librarian for 35 years. Id. at 540-41. She received a Master of Library Science degree from the University of Washington in 1972. Id. at 543. From 1988 to 2006 she served as the Collection Services Manager for the Fairbanks North Star Borough Public Library in Fairbanks, Alaska. Id. at 540. In that capacity her responsibilities included developing and implementing goals, objectives and procedures for the library's Collection Services Department; directing the acquisition of library materials; developing, maintaining and implementing the library's Collection Development Plan; and representing the library in local, statewide and regional collection development activities. Id. She has authored dozens of publications and papers, and given dozens of presentations on library topics ranging from the role of libraries to collection development and censorship. Id. at 544-48. She currently serves on the executive board of the American Library Association ("ALA"). Id. at 548. She chaired the Intellectual Freedom Subcommittee of the ALA's Presidential Advisory Committee from 2003 to 2005, and served on the ALA's Intellectual Freedom Committee from 1994 to 1996, 1998 to 2002 and 2004 to 2005. Id. She served as President of the Freedom to Read Foundation from 1995 to 1998, as President/Vide President of the Pacific Northwest Library Association from 1991 to 1993, as President/Vice-President of the Alaska

Library Association from 1985 to 1987, and as President of the Alaska Collection Development Steering Committee from 1990 to 1992 and from 1996 to 2000. Id. Ms. Pinnell-Stephens is abundantly qualified by education, training and experience to testify regarding the role of libraries in our society, and the importance of providing library patrons with ready and uncensored access to information reflecting a diversity of viewpoints.

As for NCRL's contention that Plaintiffs' Fact #30 is irrelevant, it bears noting that in implementing and maintaining its filtering policy, NCRL and its executive staff are endeavoring to reflect what they believe to be the preference of the majority of their constituents. See Deposition Upon Oral Examination of Dean Marney ("Marney Dep.") at 101:21-102:22 (Ct. Rec. 41 at 253). As Dean Marney testified at deposition, "there is an expectation that we support cultural things that are traditional." Id. at 102:11-12 (Ct. Rec. 41 at 253). Based on Mr. Marney's deposition testimony, the voices of the content providers whose Web sites are purposely blocked by NCRL's filter – including the thousands of providers whose sites contain protected speech – fall outside the viewpoint of the majority of NCRL's constituents. As Ms. Pinnell-Stephens explained in her expert report, the role of the public library in our society is not to censor those voices, but to ensure that they are heard. Ct. Rec. 41 at 528. Thus, not only is Plaintiffs' Fact #30 supported by an adequate foundation, it is highly relevant to the issues before this Court.

5. With regard to Plaintiffs' Fact #42: Defendant's Fact #6 (and the declaration of Mr. Marney on Defendant's Fact #6 is predicated) directly controverts Mr. Marney's deposition testimony. Mr. Marney testified as follows at deposition:

> Q. What role, Dean, did you play in developing the NCRL's Internet Public Use Policy?
>
> A. Haven't we already covered that or am I having deja vu?
>
> Q. I think we skirted it.
>
> A. My role was –
>
> Q. Yes.

> A. I was liaison to the Board. I was advisory to the Board on that policy.
>
> Q. Do you know who drafted that policy?
>
> A. I probably did the ultimate draft to present to the Board.
>
> Q. So when you say that you were the liaison to the Board with regard to the policy, you meant that you wrote it?
>
> A. Yes.

Marney Dep. at 80:21-81:8 (Ct. Rec. 41 at 247-48).

6. With regard to Plaintiffs' Fact #47: Plaintiffs note that Defendant's Fact #8 does not actually dispute any of the facts set forth in Plaintiffs' Fact #47.

7. With regard to Plaintiffs' Fact #49: Defendant's Fact #9 is objectionable, inaccurate and misleading for the reasons stated in ¶ 13 of Plaintiffs' Counterstatement in Opposition.

8. With regard to Plaintiffs' Fact #50: Although NCRL has put forward a number of justifications for its policy of refusing to disable its Internet filter at the request of adults, NCRL does not deny that it filters Web content in part to promote a family-friendly environment and avoid exposing patrons to images that NCRL deems inappropriate. Plaintiffs' Fact #50 is an accurate summary of Mr. Marney's deposition testimony, which NCRL incompletely quotes at pp. 5-6 of its Counterstatement in Opposition. In fact, Mr. Marney stated at paragraph 41 of his declaration in support of NCRL's Motion for Summary Judgment that NCRL had elected to continue its filtering policy because allowing "access to [inappropriate] materials would create an unacceptable risk for children and could create a hostile atmosphere for families, children and staff in the library," Ct. Rec. 31 at 8 – precisely the reasons highlighted in Plaintiffs' Fact #50.

9. Plaintiffs' Fact #51 is accurate and supported by the cited deposition testimony. Plaintiffs also note that although NCRL appears to contend in its Fact #10 that the only Web content it filters as potentially harmful to minors consists of "images [that] depict sexual activity, genitalia or excretory functions in a manner that [does] not have scientific,

artistic or literary merit," NCRL acknowledges elsewhere in its briefing that it blocks gambling Web sites "because online gambling in some circumstances may be considered harmful to minors under CIPA," Defendant's Motion for Summary Judgment at 16:16-20; and that it also blocks as "harmful to minors" the Adult Materials and Nudity and Risque, id. at 17:8-11 – even though these categories include artistic and other types of Web sites the content of which is not "harmful to minors" as that term is defined in CIPA. See, e.g., sites listed in Plaintiffs' Counterstatement in Opposition at ¶ 11.

10. With regard to Plaintiffs' Fact #60, and contrary to Defendant's Fact #14, Plaintiff Charles Heinlen does not, as NCRL asserts, "explicitly seek[ ] access to pornography." See Plaintiffs' Counterstatement in Opposition at ¶ 52. Since Mr. Heinlen testified at deposition that he does not wish to view pornography on any NCRL computer terminal, Dean Marney cannot reasonably point to Mr. Heinlen's deposition testimony as a justification for Mr. Marney's belief that more people would look at pornography if NCRL's filter were to be disabled.

11. With regard to Plaintiffs' Fact #80, and contrary to Defendant's Fact #18, it is clear based on the deposition testimony of Fortinet representative Liam Chasteen, as well as the deposition testimony of Dean Marney, that from a technological standpoint NCRL could disable its FortiGuard filter at the request of adult library patrons. See Plaintiffs' Counterstatement in Opposition, at ¶¶ 20-22. In fact, NCRL does not deny that such disabling could be accomplished – it merely asserts in conclusory fashion that it would have to acquire additional unidentified software and modify its "infrastructure resources" in some unspecified fashion in order to be able to disable the filter at the request of adult patrons and reengage the filter at the end of unfiltered Internet sessions.

12. Plaintiffs' Fact #82 is accurate and supported by the cited deposition testimony. Contrary to Defendant's Fact #19, the fact that Dean Marney may seek input from Dan Howard in making decisions about which categories and classifications of Web sites to

block does not mean that ultimate responsibility for the blocking decision does not rest entirely with Mr. Marney, as Mr. Howard testified at deposition that it did:

> Q. Okay. Is part of your job responsibility deciding or helping to decide what categories should be blocked by the filter?
>
> A. It's not really my responsibility, but I have offered some advice to Dean on that, yes.

Howard Dep. at 44:4-7 (Ct. Rec. 41 at 219).

> Q. Why is gambling blocked?
>
> A. "Why" questions are difficult. And I don't think that I'm the appropriate person to answer that question. If that decision had been my responsibility alone, I think it would be appropriate for me to answer it. So you're asking me kind of to speculate on why that decision has been made. Do – do I understand that right?
>
> Q. Whose decision is it to block gambling?
>
> A. It's – ultimately it's Dean's decision to block gambling.
>
> Q. So Dean decides which categories are blocked, yes?
>
> A. Ultimately he's responsible for all the – ultimately our Board is responsible for all of the categories that are blocked. The Board trusts Dean to make decisions like this. The – the Board has designated Dean to be – to be responsible for the Internet and to make the decisions regarding the filter. The decision's ultimately Dean's. And Dean consults with other folks here at North Central Regional Library including myself.

Id. at 49:25-50:17 (Ct. Rec. 41 at 221). Plaintiffs agree that Mr. Howard is "involved in deciding which specific sites should be blocked or unblocked when requests are made by NCRL patrons," but that is another matter entirely.

13. With regard to Plaintiffs' Fact #86, and to clarify Defendant's Fact #21, Plaintiffs assume Defendant's Fact #21 should read "February 2007."

14. With regard to Plaintiffs' Fact #87: Defendant's Fact #22 is inconsistent with the factual record. NCRL does not dispute that the Personal Relationships category was unblocked in November 2006. See Plaintiffs' Statement of Facts in Support of Motion for Summary Judgment ("Statement of Facts") at ¶ 84. NCRL also does not dispute that it began blocking the Personal Relationships category in May 2007, and stopped blocking the category

some time before October 15, 2007. Id. at ¶ 87. It is unclear how NCRL could have unblocked a category in January 2007 that was not blocked at that time.

15. With regard to Plaintiffs Fact #95, and contrary to Defendant's Fact #23, Plaintiffs note that NCRL does not deny that it might block MySpace again in the future.

16. With regard to Plaintiffs Fact #97, and contrary to Defendant's Fact #24, Plaintiffs did not assert that Web publishers design Web pages with discrete URL pages that can be individually blocked. Plaintiffs merely pointed out the undisputed fact that when NCRL's FortiGuard filter is configured to block access to a particular Web page containing inappropriate content, access to the entire Web site of which the page is a component part is likewise denied – even if other pages on the site contain nothing but constitutionally-protected speech. NCRL's citation of www.craigslist.com as an "example" of an instance in which it is using the FortiGuard filter to block access to only part of a Web site is a distortion of the record, since NCRL has not identified any Web sites other than Craigslist and possibly two or three image search sites that it is currently blocking only in part. See Marney Dep. at 102:23-103:14 (Ct. Rec. 41 at 253); Walters Dep. at 53:25-55:18 (Ct. Rec. 41 at 298); Dep. Ex. Y (Ct. Rec. 41 at 560).

17. With regard to Plaintiffs Fact #111, and contrary to Defendant's Fact #25, Dr. Resnick raises no substantial challenge to the results of Mr. Haselton's test. He only questions the significance of those results. For a discussion of Dr. Resnick's study and conclusions, see ¶¶ 34 and 35 of Plaintiffs' Counterstatement in Opposition, which are incorporated by reference herein.

18. With regard to Plaintiffs' Fact #113, and contrary to Defendant's Fact #26, nothing in Plaintiffs' Fact #113 suggested that NCRL patrons were "permitted to view Internet pornography in NCRL branch libraries." Plaintiffs merely pointed out the undisputed fact that some NCRL patrons have accessed pornography at NCRL branch libraries despite NCRL's filter and policy against viewing pornography online.

19. Plaintiffs' Fact #114 is accurate, supported by the cited deposition testimony, and not rebutted by Defendant's Fact #27 (which is not responsive to, and indeed does not appear to relate to, Plaintiffs' Fact #114).

20. With regard to Plaintiffs' Fact #115 and Defendant's Fact #28: Debating whether NCRL's decision to forego recessed desks was a "cost-saving measure" or was motivated in part by NCRL's "concern about the costs" is a matter of semantics. And Plaintiffs do not dispute (and expressly stated in their Fact #115) that NCRL decided not to buy recessed desks in part because it did not think they would be sufficiently effective.

21. With regard to the first sentence of Defendant's Fact #30, nothing in Plaintiffs Fact #117 suggested that NCRL patrons were "permit[ted] to view on-line pornography." Plaintiffs merely pointed out the undisputed fact that some NCRL patrons have accessed pornography at NCRL branch libraries despite NCRL's filter and its policy against viewing pornography online. The second sentence of Defendant's Fact #30 is incomprehensible.

22. Defendant's Fact #31 has nothing to do with Plaintiffs' Fact #117. Assuming NCRL meant to reference Plaintiffs' Fact #120, Plaintiffs stand by Fact #120, which is accurate and amply supported by the deposition testimony and expert report of June Pinnell-Stephens (cited in ¶¶ 120-123 of Plaintiffs' Statement of Facts and ¶ 57 of Plaintiffs' Counterstatement in Opposition), and by the deposition testimony of Kenton Oliver and Sally Beesley (cited in ¶¶ 124-131 of Plaintiffs' Statement of Facts and ¶ 57 of Plaintiffs' Counterstatement in Opposition).

23. To clarify Plaintiffs' Fact #123 and Defendant's Fact #32, Plaintiffs acknowledge that Ms. Pinnell-Stephens can only testify, based on her personal experience, that the Fairbanks North Star Borough Library received no complaints relating to Web content (for example, other patrons viewing pornography online) between approximately 1995, when Internet access was made available to patrons of the library, and February 2006, when Ms. Pinnell-Stephens left the library's employ. See Pinnell-Stephens Dep. at 13:3-15:19, 71:4-8.

DATED this 25th day of February, 2008.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION


By: /s/ Aaron H. Caplan
Aaron H. Caplan, WSBA #22525
American Civil Liberties Union of Washington Foundation
705 Second Avenue, Third Floor
Seattle, WA 98103
Tel. (206) 624-2184
Fax (206) 624-2190
caplan@aclu-wa.org

Duncan Manville, WSBA #30304
1629 2nd Avenue W.
Seattle, WA 98119
Tel. (206) 288-9330
Fax (206) 624-2190
duncan.manville@yahoo.com

Catherine Crump, pro hac vice
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 519-7806
ccrump@aclu.org

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2008, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the persons listed below:

>Thomas D. Adams
>Celeste Mountain Monroe
>KARR TUTTLE CAMPBELL
>1201 Third Avenue, Suite 2900
>Seattle, WA 98101
>
>Attorneys for Defendant

DATED this 25th day of February, 2008.

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION

By:  /s/ Aaron H. Caplan
Aaron H. Caplan, WSBA #22525
American Civil Liberties Union of Washington Foundation
705 Second Avenue, Third Floor
Seattle, WA 98103
Tel. (206) 624-2184
Fax (206) 624-2190
caplan@aclu-wa.org
