The Honorable Edward F. Shea

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

9

10

SARAH BRADBURN, PEARL
CHERRINGTON, CHARLES
HEINLEN, and the SECOND
AMENDMENT FOUNDATION,

No. CV-06-327-EFS

**JOINT STATEMENT OF
UNCONTROVERTED FACTS**

Plaintiffs,

v.

NORTH CENTRAL REGIONAL
LIBRARY DISTRICT,

Defendant.

Plaintiffs Sarah Bradburn, Pearl Cherrington, Charles Heinlen and the
Second Amendment Foundation, and Defendant North Central Regional Library
District submit this Joint Statement of Uncontroverted Facts pursuant to ¶ 4 of
the Court's November 6, 2007 Scheduling Order and Fed. R. Civ. Pro. 56(d).

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 1

#664190 v1 / 42703-001

# I. THE PARTIES.

## A. Plaintiffs.

1. Plaintiffs Sarah Bradburn, Pearl Cherrington and Charles Heinlen are patrons of Defendant North Central Regional Library District ("NCRL"). (Ct. Rec. 41, pg. 1-2.) Each uses, or has used, computers made available to the public by NCRL to access the Internet. <u>(Ct. Rec. 41, pg. 2.)</u>

2. Sarah Bradburn is a resident of Republic, Washington. (Ct. Rec. 41, pg. 2.) She primarily uses NCRL's Republic branch for Internet access and other purposes. <u>Id.</u>

3. In October or November 2003 Ms. Bradburn attempted to conduct Internet research regarding alcohol and drug-addiction topics in connection with academic assignments. (Ct. Rec. 41, pg. 2.) Ms. Bradburn was unable to access certain Web sites relating to youth tobacco usage, although she cannot recall the sites specifically. (Ct. Rec. 41, pg. 2-3.) She believes access was blocked by NCRL's Internet filter. (Ct. Rec. 41, pg. 2-3; Ct. Rec. 57, pg. 21.) Ms. Bradburn completed her research in Spokane where she was attending school. (Ct. Rec. 41, pg. 3.)

4. Ms. Bradburn did not tell NCRL staff of her access difficulties when the issues arose or at any other time prior to filing suit. (Ct. Rec. 49, pg 32.) NCRL has had no opportunity to confirm that access in fact was blocked and, if so, whether access was blocked by the Internet filter, a transient network problem, or some other cause. <u>Id.</u>

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 2

#664190 v1 / 42703-001

5.     Ms. Bradburn wishes to be able to have, on request, unfiltered Internet access for lawful purposes at her local NCRL branch.  (Ct. Rec. 57, pg. 21.)

6.     Pearl Cherrington is a resident of Twisp, Washington.  (Ct. Rec. 41, pg. 3.)  She primarily uses NCRL's Twisp branch.  Id.

7.     Ms. Cherrington attempted to conduct Internet research in the summer of 2005 through NCRL's network using a computer in the Twisp branch on art and health-related topics.  (Ct. Rec. 41, pg. 3; Ct. Rec. 57, pg. 21-22.) Ms. Cherrington cannot recall the specific Web sites that she attempted to access at that time other than a site maintained by an Idaho art gallery.  Id.  After the filing of Plaintiffs' Complaint for Declaratory and Injunctive Relief ("Complaint") in this case, Ms. Cherrington also attempted to access the YouTube Web site.  Id.

8.     NCRL's Internet filter denied Ms. Cherrington access to the Idaho art gallery Web site and a site containing health information.  (Ct. Rec. 41, pg. 3; Ct. Rec. 57, pg. 21-22.)  NCRL's current filter denied Ms. Cherrington access to YouTube.  Id.  NCRL no longer blocks access to YouTube.  (Ct. Rec. 29, pg. 33.)

9.     Ms. Cherrington wishes to be able to have, on request, unfiltered Internet access for lawful purposes at her local NCRL branch.  (Ct. Rec. 57, pg. 22.)

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 3

10. Charles Heinlen is a resident of Okanogan County, Washington. Mr. Heinlen primarily uses NCRL's Omak and Okanogan branches. (Ct. Rec. 41, pg. 3.)

11. Mr. Heinlen attempted to use NCRL computers to conduct Internet research, communicate with others via email, maintain a MySpace.com blog, obtain information on firearms, and access various dating sites and other Web sites. (Ct. Rec., pg. 3-4; Ct. Rec. 57, pg. 6.)

12. NCRL's Internet filter denied Mr. Heinlen access to images or photographs embedded in commercial emails sent to his Hotmail and Yahoo! Accounts, and to the Web sites listed in his answer to NCRL's Interrogatory No. 5 and his Declaration in Opposition to Defendant's Motion for Summary Judgment. (Ct. Rec. 41, pg. 4; Ct. Rec. 57, pg. 6.)

13. On February 23, 2008, while using an NCRL computer at the Omak branch, Mr. Heinlen found that NCRL's Internet filter blocked access to the following Web sites under the category Nudity and Risque (except www.courting-disaster.com which was blocked under the category Adult Materials):

        www.netnude.com
        aanr.com
        www.artenuda.com/paintings2.asp
        gregfriedler.com
        billbrandt.com
        www.ryoung-art.com
        www.courting-disaster.com
        www.mapplethorpe.org/index.html
        fineartnude.com/webring

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 4

(Ct. Rec. 57, pg. 6.)

14.    Mr. Heinlen also attempted to access the "personals" section of craigslist.org on February 23, 2008 through an NCRL computer. (Ct. Rec. 57, pg. 6.) NCRL's Internet filter denied him access to that portion of craigslist.org. Id. Mr. Heinlen wishes to access the personals section of the Craigslist site in the future. Id.

15.    Mr. Heinlen has requested that NCRL's Internet filter be disabled during his computer sessions at NCRL branches. (Ct. Rec. 29, pg. 10; Ct. Rec. 62, pg. 20.) Mr. Heinlen is the only person to have made such a request to NCRL prior to this lawsuit. Id. Mr. Heinlen maintains that he asked NCRL staff to unblock a specific "personal Web site" in 2004, but his request was denied. (Ct. Rec. 57, pg. 20.)

16.    Ms. Cherrington and Mr. Heinlen deny ever having seen a "Material Selection Review Form" – a form that NCRL made, and still makes, available to patrons requesting the unblocking of specific Web sites. (Ct. Rec. 57, pg. 20.)

17.    Mr. Heinlen wishes to be able to have, on request, unfiltered Internet access for lawful purposes at his local NCRL branch. (Ct. Rec. 57, pg. 23.)

18.    Plaintiff Second Amendment Foundation ("SAF") is a Washington non-profit corporation dedicated to issues associated with the constitutional right to keep and bear firearms. (Ct. Rec. 29, pg. 30-31; Ct. Rec. 41, pg. 4.) SAF is

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 5

headquartered in Bellevue, Washington. (Ct. Rec. 29, pg. 31; Ct. Rec. 41, pg. 4.) SAF has approximately 650,000 contributing members and supporters throughout the United States – including about 1,000 in Chelan, Douglas, Ferry, Grant and Okanogan Counties. (Ct. Rec. 41, pg. 4.)

19. SAF maintains the Web site www.saf.org, and sponsors online publications including Women & Guns ("The World's First Firearms Publication for Women") at www.womenandguns.com. (Ct. Rec. 41, pg. 4-5.)

20. SAF wishes to communicate the contents of its Web site and sponsored publications to Internet users in North Central Washington who may rely on public library computers for Internet access. (Ct. Rec. 41, pg. 5.)

21. SAF was advised by one or more of its members that access to www.womenandguns.com was blocked on NCRL's computers. (Ct. Rec. 29, pg. 31; Ct. Rec. 41, pg. 5; Ct. Rec. 49, pg. 2.) SAF has no personal knowledge or experience confirming that access to the site had in fact been blocked. Id. Plaintifff Heinlen attempted to access www.womenandguns.com in November 2006, but was prevented from doing so by NCRL's Internet filter. (Ct. Rec. 57, pg. 20.)

22. Prior to this lawsuit, NCRL had not received any report that access to www.womenandguns.com was blocked. (Ct. Rec. 29, pg. 31.) Access to www.womenandguns.com is not presently blocked and NCRL does not contend that access to it should be blocked. Id. However, SAF is concerned that NCRL

will block that Web site (or another site sponsored by SAF) in the future. (Ct. Rec. 57, pg. 20.)

**B. Defendant North Central Regional Library District.**

23. NCRL is an inter-county rural library district established in 1960 by the citizens of Chelan, Douglas, Ferry, Grant and Okanogan Counties. (Ct. Rec. 29, pg. 2; Ct. Rec. 41, pg. 5.) NCRL was formed and operates under RCW 27.12 et. seq. and other statutes applicable to inter-county rural library districts. Id.

24. NCRL's mission is to promote reading and lifelong learning. (Ct. Rec. 29, pg. 6; Ct. Rec. 41, pg. 7.)

25. NCRL also is committed to supporting public education. (Ct. Rec. 29, pg. 4.)

26. Twenty-six school districts operate within NCRL's territorial reach. (Ct. Rec. 29, pg. 4.) In 14 of those districts, NCRL branch libraries serve as the de facto school library for children. Id.

27. NCRL provides library services throughout much of Chelan, Douglas, Ferry, Grant and Okanogan Counties. (Ct. Rec. 29, pg. 2-3; Ct. Rec. 41, pg. 5.) NCRL maintains 28 branches, serving over 220,000 people. Id.

28. NCRL is funded by local property taxes, federal subsidies, and private grants and endowments. (Ct. Rec. 29, pg. 2.)

29. NCRL receives federal assistance through the E-Rate program, which provides for discounted Internet access and other telecommunications

#664190 v1 / 42703-001

services; and the Library Services and Technology Act, which provides for grants to public libraries. (Ct. Rec. 41, pg. 6.)

30. NCRL is managed and controlled by a Board of Trustees ("the Board"), which is responsible for issuing all policies for NCRL. (Ct. Rec. 29, pg. 2.) The Board is comprised of two trustees from each of Chelan and Grant Counties and one trustee from each of Douglas, Ferry, and Okanogan Counties. Id.

31. NCRL's operations are overseen and managed by a Director who is appointed by the Board. (Ct. Rec. 29, pg. 2-3.) The Director also serves as liaison between the Board and library employees. Id.

32. Dean Marney serves as NCRL's Director. (Ct. Rec. 29, pg. 3.) Mr. Marney was appointed Director in 1990. Id. He has been employed by NCRL since 1977. Id.

33. NCRL maintains a collection exceeding 675,000 books and other materials, all of which are available to patrons at any of NCRL's 28 branches or by order placed through NCRL's Web site, www.ncrl.org. (Ct. Rec. 29, pg. 3.)

34. NCRL also offers its patrons access to materials by mail order. (Ct. Rec. 29, pg. 3.) NCRL's mail order service is one of the few remaining mail services in the United States. Id.

35. NCRL's branches vary in physical size. (Ct. Rec. 29, pg. 3.) The largest is the Wenatchee branch which covers about 12,000 square feet of public area. Id. The smallest is the Twisp branch which operates in approximately 701

square feet of public space.  Id.  The average size of an NCRL branch is approximately 2,865 feet.  Id.

36.     There is a designated children's area in every NCRL branch but only one branch has a wall or other partition physically separating the children's section from the rest of the library.  (Ct. Rec. 29, pg. 4.)

37.     Twenty NCRL branches are staffed by one librarian.  (Ct. Rec. 29, pg. 4.)

38.     Sixteen NCRL branches offer only one or two computers for public use in accessing the Internet.  (Ct. Rec. 29, pg. 4.)

## II.   NCRL'S POLICIES.

39.     In furtherance of its mission, and to meet the diverse needs and interests of its patrons, NCRL provides public Internet access at all of its branches.  (Ct. Rec. 41, pg. 7.)

40.     Internet access through the NCRL network is subject to two policies:  the Internet Public Use Policy and the Collection Development Policy.  (Ct. Rec. 29, pg. 6-9.)

41.     NCRL's Director, Dean Marney, and Dan Howard, NCRL's Director of Public Services, interpret and apply the Internet Public Use and Collection Development Policies.  (Ct. Rec. 29, pg. 2-3, 17; Ct. Rec. 41, pg. 9, 15; Ct. Rec. 49, pg. 12-13; Ct. Rec. 57, pg. 1; Ct. Rec. 59, pg. 5-6; Ct. Rec. 62 pg. 2.)

42.     NCRL's Collection Development Policy states:

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 9

The North Central Regional Library District's Board of Trustees recognizes that the library was created to serve all of the people within the District's service area, regardless of race, age, creed, or political persuasions. The Board of Trustees further recognizes that within the District's service area there are individuals and groups with widely disparate and diverse interests, cultural backgrounds, and needs. The Board of Trustees, therefore, declares as a matter of policy that:

1. The Collection Development Policy is based on and reflects the District's mission, goals, and values as stated in the current Strategic Plan.

2. Library materials shall be selected and retained in the library on the basis of their value for the interest, information, and enlightenment of all the people of the community in conformance with the District's mission. Some of the factors which will be considered in adding to or removing materials from the library collection shall include: present collection composition, collection development objectives, interest, demand, timeliness, audience, significance of subject, diversity of viewpoint, effective expression, and limitation of budget and facilities.

No library materials shall be excluded because of the race, nationality, political, religious, or social views of the author. Not all materials will be suitable for all members of the community.

The District shall be responsive to public suggestion of titles and subjects to be included in the library collection. Gifts of materials may be accepted with the understanding that the same standards of selection are applied to gifts as to materials acquired by purchase, and that any gifts may be discarded at the District's discretion.

To ensure a vital collection of continuing value to the community, materials that are not well used may be withdrawn.

The Director is responsible to the Board of Trustees for collection development. The Director may delegate collection development activities to members of the staff who are qualified by reason of education and training.

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 10

3. The Board of Trustees believes that reading, listening to, and viewing library materials are individual, private matters. While individuals are free to select or to reject materials for themselves, they cannot restrict the freedom of others to read, view, or inquire. The Board of Trustees recognizes that parents have the primary responsibility to guide and direct the reading and viewing of their own minor children.

The Board of Trustees recognizes the right of individuals to question materials in the District collection. A library customer questioning material in the collection is encouraged to talk with designated members of the staff concerning such material. To formally state his or her opinion and receive a written response, a customer may submit the form provided for that purpose.

(Ct. Rec. 29, pg. 6-8.)

43. NCRL's Internet Public Use Policy states:

The mission of the North Central Regional Library is to promote reading and lifelong learning. Internet access is offered as one of many information resources supporting that mission.

The Internet is currently an unregulated medium. While the Internet offers access to materials that are enriching to users of all ages, the Internet also enables access to some materials that may be offensive, disturbing, or illegal. There is no guarantee that information obtained through the Internet is accurate or that individuals are who they represent themselves to be. The library district recognizes that it cannot fully control the amount of material accessible through the Internet but will take reasonable steps to apply to the Internet the selection criteria stated in the Collection Development Guidelines and Procedures.

All Internet access on NCRL library computers is filtered.

The library district does not host customer e-mail accounts or provide access to chat rooms.

The library district cannot guarantee privacy for individuals using library public access computers to search the Internet and computer screens may be visible to people of all ages, backgrounds, and sensibilities. Customers are requested to exercise appropriate discretion in viewing materials or submitting sensitive personal

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 11

information. Minors, in particular, are discouraged from sharing personal information online.

Hacking and other unlawful online activities are prohibited.

The District's director is responsible for establishing procedures to carry out this policy.

(Ct. Rec. 29, pg. 8-9.)

44.     Public Internet access through the NCRL network is filtered and has been filtered continuously since access was first made available in the late 1990s. (Ct. Rec. 29, pg. 5-6; Ct. Rec. 41, pg. 8.)  NCRL does not and will not disable the filter at the request of an adult patron.  (Ct. Rec. 29, pg. 6; Ct. Rec. 41, pg. 8.)

## III.    INTERNET FILTERING AT NCRL.

### A.     How Filtering is Accomplished.

45.     Prior to October 2006, NCRL had filtered Web content using a software product called SmartFilter, Bess edition. (Ct. Rec. 41, pg. 13.)

46.     In October 2006, as part of a comprehensive network and cataloguing system upgrade, NCRL replaced its SmartFilter product with a web-based filtering solution offered by Fortinet called the FortiGuard Web Filtering Service ("FortiGuard").  (Ct. Rec. 29, pg. 11; Ct. Rec. 41, pg. 13.)

47.     The FortiGuard service has two primary components:  the FortiGuard Rating Server and the FortiGate firewall/proxy unit.  (Ct. Rec. 35, pg. 2; Ct. Rec. 41, pg. 13.)

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 12

48.     The server is a database maintained by Fortinet. (Ct. Rec. 35, pg. 2; Ct. Rec. 41, pg. 13.) It catalogues more than 43 million Web sites and over two billion individual Web pages. (Ct. Rec. 29, pg. 11; Ct. Rec. 35, pg. 2.) Using a combination of proprietary algorithms and human review, Fortinet sorts sites and pages into 76 categories based upon their predominant content, and also assigns some Web sites to one of seven classifications based on media types and sources. (Ct. Rec. 29, pg. 11; Ct. Rec. 35, pg. 2-3; Ct. Rec. 41, pg. 12.)

49.     Any one may request that Fortinet review its classification of a particular Web site or page by means of an electronic form available on the Fortinet site. (Ct. Rec. 29, pg. 12.)

50.     The FortiGate unit is an appliance that acts as an intermediary between the browser on the user's computer and the servers with which the browser communicates. (Ct. Rec. 41, pg. 13.)

51.     A FortiGate unit has been installed at each of NCRL's 28 branches. (Ct. Rec. 41, pg. 13.)

52.     All Internet traffic to and from NCRL's public use computers is routed through the FortiGate unit, which filters Web content in accordance with information provided by the Fortinet Rating Server and settings established by NCRL that define which categories and classifications of Web sites to block. (Ct. Rec. 29, pg. 13-15; Ct. Rec. 41, pg. 13-15.)

53.     If access to a Web site or page is denied, the computer user receives a message to that effect. (Ct. Rec. 41, pg. 15.)

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 13

54.    If access to an embedded image is denied, the user receives no message; instead, a blank image is substituted for the blocked image. (Ct. Rec. 41, pg. 15.)

## B.    NCRL's Configuration of FortiGuard.

55.    The categories of Internet sites that NCRL's FortiGuard filter is configured to block – along with category descriptions provided by Fortinet – are listed below.

| | |
|---|---|
| Hacking | Websites that depict illicit activities surrounding the unauthorized modification or access to programs, computers, equipment and websites. |
| Proxy Avoidance | Websites that provide information or tools on how to bypass Internet access controls and browse the Web anonymously, includes anonymous proxy servers. |
| Phishing | Counterfeit web pages that duplicate legitimate business webpages for the purpose of eliciting financial, personal or other private information from the users. |
| Adult Materials | Mature content websites (18+ years and over) that feature or promote sexuality, strip clubs, sex shops, etc. excluding sex education, without the intent to sexually arouse. |
| Gambling | Sites that cater to gambling activities such as betting, lotteries, casinos, including gaming information, instruction, and statistics. |
| Nudity and Risque | Mature content websites (18+ years and over) that depict the human body in full or partial nudity without the intent to sexually arouse. |
| Pornography | Mature content websites (18+ years and over) which present or display sexual acts with the intent to sexually arouse and excite. |

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 14

| Web Chat | Websites that promote Web chat services. |
| --- | --- |
| Instant Messaging | Websites that allow users to communicate in "real-time" over the Internet. |
| Malware | Sites that are infected with destructive or malicious software, specifically designed to damage, disrupt, attack or manipulate computer systems without the user's consent, such as virus or trojan horse. |
| Spyware | Sites that host software that is covertly downloaded to a user's machine, to collect information and monitor user activity, including spyware, adware, etc. |

(Ct. Rec. 41, pg. 16-17.)

56.     NCRL also blocks the Image Search, Video Search and Spam URL classifications of Web sites, as well as certain specific sites, including netvue.com and pixsy.com.  (Ct. Rec. 41, pg. 17.)  NCRL blocks certain pages within websites, including:  ask.com/images,  ask.com/pictures, search.live.com/images,  images.google.com  and  images.search.yahoo.com (image search engines); and craigslist.org/cgi-bin/personals.cgi (a personals site).  Id.

57.     Since it implemented the FortiGuard filter, NCRL has blocked and unblocked the YouTube, MySpace and Craigslist Web sites.  Currently, NCRL overrides its filter to allow access to those sites (excluding the personals section of the Craigslist site).  (Ct. Rec. 29, pg. 33; Ct. Rec. 41, pg. 17-18.)

**C.     Accessibility of Blocked Internet Sites.**

58.     If an NCRL patron wishes to access a Web site or Web page that is blocked by FortiGuard, the patron may ask NCRL to manually override the

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 15

filter. (Ct. Rec. 29, pg. 17; Ct. Rec. 41, pg. 8-9.) NCRL has implemented a process whereby if Internet content is blocked, a patron can immediately send an e-mail to NCRL administrators for review. (Ct. Rec. 29, pg. 17.)

59. When a request is submitted, the Web site or page at issue is reviewed to determine whether allowing access to it would be consistent with NCRL's mission, its Collection Development Policy and Internet Public Use Policy, and the requirements of CIPA. (Ct. Rec. 29, pg. 17; Ct. Rec. 41, pg. 8; Ct. Rec. 49, pg. 4, 8.) If the request is approved, access is allowed on all public computers in all branches. (Ct. Rec. 41, pg. 8.) If NCRL deems the request to be inconsistent with its mission, its Collection Development Policy, its Internet Public Use Policy, or CIPA, the request will be denied. (Ct. Rec. 29, pg. 17; Ct. Rec. 41, pg. 8; Ct. Rec. 49, pg. 4, 8.)

60. NCRL received 92 requests to unblock access to Web sites (including 90 automated requests) between October 1, 2007 and February 20, 2008. (Ct. Rec. 57, pg. 7.) Of those 90 automated requests, NCRL responded to 25 requests more than 24 hours after they were received. Id. In five instances, it took NCRL more than three days to respond. Id. Of the remaining 65 automated requests, NCRL responded to 29 requests the day after they were received and responded to 27 requests the same day they were received, with eight of those responses taking less than one hour. Id. There is no evidence in the record that addresses NCRL's response, if any, to the remaining 11 requests. Id.

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 16

#664190 v1 / 42703-001

61. NCRL has unblocked sites at the request of patrons on 12 occasions since October 1, 2007. (Ct. Rec. 57, pg. 7.) Examples of sites unblocked at a patron's request include: www.keyartpromotions.com, artbyjohndan.com (described by the requestor as "non-offensive, mostly abstract art"), www.pcthandbook.com (erroneously blocked as "Pornography"), www.firstthings1st.com (described by the requestor as a nonprofit ministry but erroneously blocked as "Gambling"), and www.ourfamily-web.com (erroneously blocked as Malware). (Ct. Rec. 57, pg. 7-8.) FortiGuard also blocked access to the Kalispel tribe's Web site under the "Gambling" category, even though the site did not itself allow any online gambling. (Ct. Rec. 57-3, pg. 210-13.) At the request of a patron who was researching employment opportunities, NCRL unblocked access to the site while the patron remained in the library. (Ct. Rec. 57-3, pg. 213.)

**D.    The FortiGuard Filter's Error Rates.**

62. Like all Internet filters, the FortiGuard filter makes mistakes. (Ct. Rec. 41, pg. 18.)

63. There have been some instances where patrons of NCRL have been able to obtain pornographic, sexually explicit, child pornographic or obscene materials online at NCRL branch libraries. (Ct. Rec. 29, pg. 23; Ct. Rec. 41, pg. 18.)

64. The FortiGuard filter also overblocks – meaning that it erroneously blocks Web sites that should not be blocked. (Ct. Rec. 41, pg. 18-19.)

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 17

65.    Plaintiffs' expert Bennett Haselton tested the accuracy of the FortiGuard filter, describing the methodology and results of his study in an expert report. (Ct. Rec. 41, pg. 19.)

66.    Mr. Haselton determined that of 100,000 randomly-selected .com domains, FortiGuard blocked 536 "real" Web pages as Pornography or Adult Materials, and that of those blocked sites 64 were blocked in error, for an error rate of 11.9%. (Ct. Rec. 41, pg. 19.)

67.    Mr. Haselton determined that of 100,000 randomly-selected .org domains, FortiGuard blocked 207 "real" Web pages as Pornography or Adult Materials, and that of those blocked sites 49 were blocked in error, for an error rate of 23.6%. (Ct. Rec. 41, pg. 19.)

68.    NCRL's expert, Paul Resnick, conducted his own study based on the URLs that were actually visited or requested at NCRL branch libraries during the week of August 23-29, 2007.  (Ct. Rec. 29, pg. 28; Ct. Rec. 57, pg. 17.)   Dr. Resnick determined that approximately 60,000 URLs had been visited or requested during that week. (Ct. Rec. 29, pg. 29.)

69.    Dr. Resnick found that of the 60,000 URLs that were visited or requested during the week of August 23-29, 2007, 2,180 URLs were blocked by the FortiGuard filter under NCRL's filtering policy; and that of those 2,180 URLs:

- 289 complete Web pages were blocked, with 20 of those blocked in error;

- 1,406 "helper images" (that is, "little images that are parts of web pages") were blocked, with 744 of those blocked in error;

- 194 "other images" were blocked, with 24 of those blocked in error; and

- 110 URLs were not "ratable" – meaning that Dr. Resnick could not determine whether they had been correctly blocked.

(Ct. Rec. 57, pg. 17-19; Ct. Rec. 62, pg. 17-18.)

## IV.  FILTERING ALTERNATIVES.

70.    NCRL installed privacy screens on terminals in its Wenatchee branch when Internet access was first provided in approximately 1999, but removed the screens shortly thereafter.  (Ct. Rec. 41, pg. 20; Ct. Rec. 49, pg. 16.) Since then NCRL has not installed privacy screens on any of its computers.  Id.

71.    NCRL has not purchased recessed desks.  (Ct. Rec. 41, pg. 21; Ct. Rec. 49, pg. 17.)

72.    NCRL has decided not to substitute a tap-and-tell policy for its current Internet filtering policy, and has not hired security guards for its branches.  (Ct. Rec. 41, pg. 21; Ct. Rec. 49, pg. 17.)

73.    NCRL has not considered any other alternatives to full-time Internet filtering.  (Ct. Rec. 41, pg. 21.)

74.    NCRL patrons are not permitted to view Internet pornography in NCRL branch libraries.  (Ct. Rec. 49, pg. 16.)   NCRL expects branch librarians to monitor and respond to complaints of inappropriate use of public use computers.  (Ct. Rec. 29, pg. 23.)

#664190 v1 / 42703-001

DATED this 24th day of March, 2008.

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION


By:    /s/ Duncan Manville
Duncan Manville, WSBA #30304
1629 2nd Avenue W.
Seattle, WA 98119
Tel. (206) 288-9330
Fax (206) 624-2190
duncan.manville@yahoo.com

Aaron H. Caplan, WSBA #22525
American Civil Liberties Union of
Washington Foundation
705 Second Avenue, Third Floor
Seattle, WA 98103
Tel. (206) 624-2184
Fax (206) 624-2190
caplan@aclu-wa.org
Catherine Crump, pro hac vice
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 519-7806
ccrump@aclu.org

Counsel for Plaintiffs

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 20

KARR TUTTLE CAMPBELL

By: /s/ Thomas D. Adams
Thomas D. Adams, WSBA #18470
E-Mail – tadams@karrtuttle.com
Celeste M. Monroe, WSBA #35843
E-mail – cmonroe@karrtuttle.com
Attorneys for Defendant North Central
Regional Library District
KARR TUTTLE CAMPBELL
1201 Third Ave., Ste. 2900
Seattle, WA 98101
Telephone: 206.223.1313
Facsimile: 206.682.7100

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2008, I electronically filed the foregoing with the Clerk of the Court

using the CM/ECF system which will send notification of such filing to the persons listed below:

Duncan Manville
1629 2nd Ave. W
Seattle, WA 98119

Catherine Crump
American Civil Liberties Union
Foundation
125 Broad Street, 17th Floor
New York, NY 10004

Aaron Caplan
ACLU of Washington
705 Second Ave., Ste. 300
Seattle, WA 98103

KARR TUTTLE CAMPBELL

By: _____
Heather L. White
hwhite@karrtuttle.com

JOINT STATEMENT OF UNCONTROVERTED
FACTS – Page 21